UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-00153-RBW |
| | : | |
| DANIEL GOODWYN, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S PRETRIAL RELEASE

On July 27, 2021, Pretrial Services Agency ("PSA") filed its Pretrial Violation Report (ECF Doc. No. 21) recommending the defendant Daniel Goodwyn be removed from PSA courtesy supervision in the Eastern District of Texas.

### BACKGROUND

The defendant was initially charged by Complaint on January 15, 2021, with violating Title 18, U.S.C. §§ 1752(a)(1) and (a)(2) (knowingly entering or remaining in any restricted building or grounds without lawful authority) and Title 40, §§ 5104(e)(2)(D) and (G) (violent entry or disorderly conduct), misdemeanors concerning his presence and actions during the January 6, 2021 riots at the United States Capitol. (Doc. No. 1, Complaint).

The defendant was arrested on January 29, 2021, in Corinth, Texas at his parents' residence. (Doc. No. 5 at 1, Returned Arrest Warrant). During the arrest, the Federal Bureau of Investigation ("FBI") entered the residence to execute the search warrant (4:21-MJ-84), issued in the Eastern District of Texas. During the execution of the search warrant, FBI learned that at least one individual in the residence believed they had COVID-19. When FBI asked the defendant if he was positive for COVID-19, the defendant refused to answer the question. The

1

defendant additionally refused to take a COVID-19 test and refused to wear any personal protective equipment.

When FBI placed a mask on the defendant's face after his arrest, the defendant attempted to chew through the mask and spit the mask out. During the defendant's arrest, FBI used approximately five masks on the defendant. FBI then drove the defendant to a facility approximately 90 minutes from his residence that was willing to quarantine him. After arriving at the facility, the defendant continued to refuse to comply with mask-wearing and the Court's Standing Order on the wearing of personal protective equipment in the courthouse. The defendant's actions resulted in him remaining at the facility until he agreed to don a mask for his initial appearance. (Doc. No. 5 at 10, Docket Report from the Eastern District of Texas).

On February 3, 2021, at the defendant's initial appearance, the government moved for detention, in part due to concern regarding the defendant's obstructionist behavior and whether the defendant would be able to comply with conditions of release. *Id*. On February 12, 2021, the Court released the defendant to home confinement and electronic monitoring. *Id.* Following the defendant's initial appearance in the District of Columbia, the defendant has remained on the same conditions. (Doc. No. 12, Conditions of Release).

On February 24, 2021, a federal grand jury indicted the defendant on the four misdemeanors as well as a felony violation under Title 18, U.S.C. § 1512(c)(2) for Obstruction of an Official Proceeding (Doc. No. 6, Indictment).

The PSA's July 27, 2021 Report (Doc. No. 21, Violation Report) cites multiple violations to support the request to remove the defendant from supervision. According to the report, whenever PSA has provided instructions to the defendant, the defendant challenges the instructions, using word games and becoming easily frustrated, angry, and negative. *Id.* at 3.

On June 21, 2021, the defendant refused to wear a mask in PSA's Office. *Id.* at 3. Even after the Office's Deputy Chief spoke to the defendant, the defendant continued to refuse to wear a mask, demanding to see a copy of the Court's Standing Order on the wearing of personal protective equipment. *Id.* After PSA provided the defendant a copy of the Standing Order, the defendant left PSA without ever entering the Office or attending his meeting. *Id.*

On July 2, 2021, the defendant refused to add a future meeting with PSA on his location monitoring schedule adjustment, telling PSA that since he was being "forced" to go to an in-person meeting, he refused to add that adjustment himself. *Id.* Pretrial Services Officer ("PSO") Lorene Dudley informed the undersigned attorney that the defendant further told her that she would need to manually adjust his schedule if she required him to attend meetings. According to the Violation Report, the defendant then became agitated and refused to allow PSO Dudley to speak. (Doc. No. 21 at 3, Violation Report).

On July 20, 201, the defendant again refused to add a meeting with PSA to his location monitoring schedule adjustment, forcing PSO Dudley to adjust the defendant's schedule again. (Doc. No. 21-1 at 1-2, Supplement to Violation Report). The defendant has repeatedly requested virtual meetings with PSA, despite PSO Dudley informing him that PSA is no longer conducting virtual meetings. *Id.*

## **ARGUMENT AND LAW**

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Specifically, "[t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds under § 3148(b)(1) that there is -- . . . (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear

and convincing evidence that the person has violated any other condition of release; and (b)(2) finds that … (B) the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

The Government respectfully requests that the Court revoke the defendant's release pending trial.

The defendant's multiple violations appear to be centered primarily around one issue: the defendant's petulant and insolent behavior. In the months since the defendant's arrest, the defendant's behavior has not changed. In lieu of complying with the Court's conditions, the defendant has flouted the conditions, making clear that he does not appreciate the privilege of pretrial release provided to him by the Court. The defendant has failed to even comply with the Court's Standing Order in the Eastern District of Texas. Despite remaining in prison for several days in early February, the defendant continues to refuse to wear a mask, defying the Order and jeopardizing the health and safety of individuals working within PSA's Office.

The defendant also failed to attend meetings with PSA and failed to properly fill out his location monitoring schedule adjustment report as directed. He insists on PSO Dudley filling out portions of his schedule that he does not wish to fill out. On multiple occasions, the defendant disrespected PSO Dudley's authority, mocking her instructions with word games and even refusing to let her speak during a phone conversation. Further, the defendant has apparently insisted on virtual meetings, despite being told that PSA is no longer holding virtual meetings.

The defendant does not seem to understand the importance of complying with his conditions of release. In addition, the defendant seems to believe that PSA should work on a schedule and under circumstances that is most convenient for him. The defendant has had an opportunity to preserve his pretrial release status but has made the conscious decision to fail to

meet his obligations and flout PSA's rules in a manner designed to obstruct and annoy. Given the defendant's behavior, the defendant does not appear to be able to comply with even the most basic conditions of release. Accordingly, the government moves for the defendant's revocation of his pre-trial release status pursuant to the provisions of 18 U.S.C. § 3148(b).

In the alternative, should the Court decline to revoke the defendant's bail, the government requests that the defendant be ordered to home incarceration with continued location monitoring. It is the government's understanding that PSA is now able to do home visits instead of visits to PSA's Office. According to PSO Dudley, PSA would be able to do monthly home visits. Moreover, home incarceration would alleviate many of the issues for PSA and PSO Dudley presently concerning the defendant.

Respectfully submitted,

CHANNING PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:     */s/ Lucy Sun*
Lucy Sun
Assistant United States Attorney
Massachusetts Bar Number 691766
United States Attorney's Office
Detailee – Federal Major Crimes
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: (617) 590-9468
Email: lucy.sun@usdoj.gov