## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-153-RBW** |
| | : | |
| | : | |
| **DANIEL GOODWYN** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S NOTICE AND MOTION TO ADMIT EVIDENCE AS INTRINSIC EVIDENCE OR, IN THE ALTERNATIVE, AS "OTHER ACTS" EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The United States of America hereby moves this Court to permit the government to introduce, during its case-in-chief at trial, intrinsic act evidence inextricably intertwined with the charged offenses: 1) Goodwyn's participation in and social media posts related to the November 14, 2020, protest in Washington, D.C.; 2) Goodwyn's participation in and social media posts related to the November 21, 2020, protest in Atlanta, Georgia; and 3) Goodwyn's social media posts and text messages after November 3, 2020, regarding the 2020 election. In the alternative, the government also hereby provides notice of its intent to introduce this "other acts" evidence to prove Daniel Goodwyn's (hereinafter, "defendant" or "Goodwyn") intent, knowledge, and lack of mistake or accident in his actions during the riot at the U.S. Capitol on January 6, 2021. *See* Fed. R. Evid. 404(b)(2).[1]

---

[1] Although the government is providing certain descriptions and specific examples of such evidence in this notice, this filing is intended to satisfy the government's obligation under Rule 404(b) to provide notice of the "general nature" of the crimes, wrongs, or other acts evidence that the government intends to admit at trial and is not an exhaustive list of the specific pieces of evidence that the government may offer in support of these areas of activity. Fed. R. Evid. 404(b)(2)(A). Rather, any information produced to the defense in discovery, to the extent it satisfies the rationales discussed in this motion, may be offered in the trial of this case as either intrinsic evidence or under Rule 404(b). Further, because the government continues to investigate

## I.    FACTUAL BACKGROUND

At trial in this case, the United States expects the evidence to show the following:

### A.  Defendant's protests, group chats, and social media prior to January 6, 2021

1.    On or between November 3 and 7, 2020, defendant posted two images to social media:

 

2.    On November 7, 2020, defendant posted a picture on Twitter of the Proud Boys logo and stated, "Stand back and stand by! Show up at your state Capitol at noon today local time. Await orders from our Commander in Chief. #StopTheSteal! StopTheSteal.US."

3.    On November 14, 2020, defendant took part in the "Million MAGA March" to "Stand Up and Fight Against the Fraudulent Election and Make Your Voices Count."

---

Goodwyn's charged crimes and uncover possible additional evidence and witnesses, it reserves the right to supplement and amend this notice as pre-trial investigatory developments dictate.

4.      On or about November 21, 2020, defendant traveled to the Georgia State Capitol building in Atlanta, Georgia to protest Georgia's certification of their state vote for the 2020 Presidential election. Goodwyn gave an interview at the protest and stated he was "Daniel Goodwyn. I was just at the million MAGA march in Washington, D.C. I came from San Francisco, I drove . . . across the country." The protest at the Georgia State Capitol did not result in protestors breaching the Georgia State Capitol.

5.      In the days after the protest, Goodwyn described his actions at the protest on his Parlor social media account. He stated:



After the protest, Goodwyn posted a story to his social media account showing the Atlanta, Georgia protest with the Beatles song "Revolution" playing over the video. The words he selected to play over the video stated, "You say you want a Revolution . . . ."

6. On November 28, 2020, the Goodwyn posted to Twitter stating, "#FightForTrump" and "#StopTheSteal." He also linked a GiveSendGo account where he was soliciting donations to fund his trip to Washington, D.C. on January 6, 2021.

7. On December 15, 2020, Goodwyn participated in a group text message discussing the 2020 election. In this group message, he shared a link to a press release by former President Donald Trump legal team titled "Trump Legal Team Statement on Safe Harbor Deadline." The Safe Harbor deadline is the deadline for the states to certify their election results. Later that day, Goodwyn wrote in the same group message, "The electoral votes will be counted on January 6th by congress, overseen by US Senate president Mike Pence."

8. On January 2, 2021, Goodwyn shared a news article to the group message titled, "GOP Senators, led by Cruz, to object to Electoral College Certification, demand emergency audit."

**B. The Attack at the U.S. Capitol on January 6, 2021**

9. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

10. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

11.     On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

12.     As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

13.     At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

14.     At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

15.     Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### C.  Goodwyn's Participation in the January 6, 2021, Capitol Riot

16.     On or about January 1, 2021, Goodwyn traveled from San Francisco, California to Washington, D.C. The purpose of the Goodwyn's trip was to stop Congress' certification of the Electoral College.

17.     On January 6, 2021, Goodwyn attended the "Stop the Steal" rally and then marched with other protestors to the Capitol.

18.     Between 1 p.m. and 4 p.m., Goodwyn was a part of the mob that had gathered on the Lower West Terrace on the restricted grounds of the Capitol. While there, Goodwyn utilized a bullhorn to encourage other rioters to enter the Capitol. Goodwyn stated, "Behind me, the door is

open . . . The door is open, we need you to push forward, forward . . . for this to work. Go behind me and go in."

19.     Between 1 p.m. and 4 p.m., Goodwyn entered the Capitol and made his way to Senate Wing, just outside of the United States Senate. While inside the Capitol, Goodwyn identified himself on a video as "Daniel Goodwyn" and was told to leave the building by a police officer. As Goodwyn left he told fellow rioters that the officer was an "Oathbreaker" and to get his badge number.

20.     On January 6, Goodwyn sent and received a number of text messages. For example, at 3:39 p.m., he was asked by Christopher Goodwyn, "Hey where are you?" Goodwyn responded, "Capitol" and "I went inside." Christopher Goodwyn replied, "Inside where?" Goodwyn responded, "The capitol building." Christopher Goodwyn asked, "Why?" Goodwyn responded with a news article about Vice President Pence and the electoral college certification and stated, "That's what we were doing." At 4:03 p.m., Goodwyn messaged Laura McGregor, "Patriots rushed the Capitol."

21.     On January 6, at 9:41 p.m., Goodwyn posted on Twitter, "They WANT a revolution. They're proving our point. They don't represent us. They hate us. (link to twitter user DrewHLive's status, now unavailable)."

22.     On January 6, 2021 at 10:26 p.m., Goodwyn sent a message to Laura McGregor stating, "People are saying antifa dressed up and did stuff today. Not true. Today was patriots who were fed up. I know them. I saw them. I went in the Capitol. Trump supporters weren't violent. Nobody got hurt by them. Nothing set on fire. No Nikes looted. Just a few windows broken of the Capitol building."

### D.  Goodwyn's Arrest and Indictment

23.     Goodwyn was arrested on January 29, 2021. On February 24, a grand jury returned a five-count indictment charging the Goodwyn with violations of:   18 U.S.C. §§ 1512(c)(2), 2 (obstruction of an official proceeding) (Count One); 18 U.S.C. §§ 1752(a)(1) and (2) (entering and remaining in a restricted building or grounds, and disorderly and disruptive conduct in a restricted building or grounds) (Counts Two and Three); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) (disorderly and disruptive conduct, and parading, demonstrating, or picking in a capitol building) (Counts Four and Five). *See* ECF No. 6. On November 10, 2021, the grand jury returned a superseding indictment that updated the charging language of certain counts but made no other substantive changes. *See* ECF No. 34.

24.     Goodwyn pleaded not guilty, and trial is scheduled for February 28, 2023.

## II.     ARGUMENT

Through this Notice and Motion, the Government provides notice of its intent to admit evidence of: 1) Goodwyn's participation in and social media posts related to the November 14, 2020, protest in Washington, D.C.; 2) Goodwyn's participation in and social media posts related to the November 21, 2020, protest in Atlanta, Georgia; and 3) Goodwyn's social media posts and text messages after November 3, 2020, regarding the 2020 election. These categories of evidence are intrinsic to the crimes charged in the superseding indictment and also serve to establish, among other things, Goodwyn's intent, knowledge, and lack of mistake or accident.

### A.     Evidence of Goodwyn's Intent to Obstruct the Certification of the Election is Intrinsic Evidence of his Crimes

Direct evidence of a fact in issue is considered intrinsic to the offense and is admissible at trial. *See United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003); *United States v. McGill*, 815 F.3d 846, 883 (D.C. Cir. 2016) ("Intrinsic evidence is limited to acts that are 'part of the

charged offense' itself or that are 'performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'") (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C.Cir.2000)). Such intrinsic evidence is distinguishable from character evidence, which is, of course, not properly admitted to prove that a person acted in accordance with that character. Federal Rule of Evidence 404(a)(1), 404(b)(1).

Here, Goodwyn is charged with, among other things, Obstruction of an Official Proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2. The elements of this offense are: 1) Goodwyn attempted to or did obstruct or impede an official proceeding; 2) Goodwyn acted with the intent to obstruct or impede the official proceeding; 3) Goodwyn acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and 4) Goodwyn acted corruptly. *See United States v. Reffitt*, No. 1:21-cr-32, 2022 WL 712844 (D.D.C.), Final Jury Instructions at 25, ECF No. 119; *United States v. Robertson*, No. 1:21-cr-34, 2022 WL 1101660 (D.D.C.), Final Jury Instructions at 12, ECF No. 86; *United States v. Hale-Cusanelli*, No. 1:21cr37, 2022 WL 1731979 (D.D.C.), Final Jury Instructions at 24, ECF No. 84 (language slightly different); *United States v. Bledsoe*, No. 1:21-cr-204, Final Jury Instructions at 6-7, ECF No. 215; United States v. Williams, No. 1:21-cr-377, Final Jury Instructions at 6-7, ECF No. 112 (language slightly different).

To establish the second and fourth elements, the Government will have to prove that Goodwyn's conduct on January 6, 2021, was part of an intentional and wrongful effort obstruct the certification, or to aid and abet others to do so. In other words, for this particular charge, the Government will have to show that Goodwyn's participation in the Capitol riot were part of an intentional and wrongful effort by defendant and other rioters to get inside the Capitol to stop or delay the certification.

Goodwyn's participation in protests regarding the 2020 election, messages, and his social media posts leading up to the certification of the electoral college vote on January 6, 2021, are direct evidence of his motive and intent on January 6, 2021. They make up part of Goodwyn's on-going efforts, starting shortly after the election and culminating on January 6, to obstruct the Congressional certification of the 2020 Electoral College vote. These actions prior to January 6, 2021, show he was aware of the certification of the electoral college vote that day, that he believed the election to be stolen, and that his intent was to stop the certification of the vote. This evidence is thus relevant and admissible as intrinsic evidence of two elements of the Section 1512(c)(2) offense: Goodwyn's intent to obstruct the certification of the electoral college vote on January 6, 2021; and that Goodwyn acted corruptly. *But see United States v. Fitzsimons*, No. 21-CR-158, 2022 WL 1658846, at *3 (D.D.C. May 24, 2022) (finding the "connection between Fitzsimons's calls and Facebook post and his actions of attempting to forcibly storm the Capitol is not so direct as to" be intrinsic evidence and "therefore more appropriately considered under Rule 404(b).").

### B.    Other Acts Evidence is Admissible to Prove Intent and Absence of Mistake or Accident

In the event that the Court determines that evidence of Goodwyn's participation in prior protests contesting the legitimacy of the 2020 election, his social media posts, and his text messages is not intrinsic, that evidence is admissible under Fed. R. Evid. 404(b) as probative of of:  1) his motive and intent; 2) his knowledge that his presence inside the Capitol and on Capitol

grounds was unlawful; and 3) the absence of mistake or accident when he entered the Capitol and Capitol grounds.

Evidence of another crime, wrong, or act, is admissible provided it is not used to prove a person's character, to show propensity to commit the crime or act in a certain way. As the D.C. Circuit has summarized:

> Federal Rule of Evidence 404(b) authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided it is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010).

Other acts evidence is properly admissible in the government's case-in-chief to anticipate a defendant's likely defense of lack of intent or knowledge; it need not be reserved for cross-examination or rebuttal. *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

A two-pronged test determines whether evidence of "other acts" is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the

defendant's character or propensity [to commit crime]?"). Second, the evidence is subject to the balancing test of Rule 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Miller*, 895 F.2d at 1435; *see also United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013).

>    1) **Goodwyn's Prior Protests, Social Media Posts, and Messages are Probative of Motive, Intent, Knowledge, and Absence of Mistake or Accident and Not Unduly Prejudicial**

With respect to the first factor, it is significant that, "under Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *Miller*, 895 F.2d at 1436 (emphasis in original). In other words, Rule 404(b) "is a rule of inclusion rather than exclusion" and it is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Douglas*, 482 F.3d at 596; *Bowie*, 232 F.3d at 929-30; *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*); *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005). As the D.C. Circuit has observed, "[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *Miller*, 895 F.2d at 1436 (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[8], at 404-52 (1989)).

The proffered evidence is not offered to prove Goodwyn's bad character, but to show his motive and intent behind his actions on January 6, 2021, his knowledge that the riot and his conduct was unlawful, and his absence of a mistaken belief that his conduct was lawful when he entered the Capitol grounds and Capitol building.

<u>*Motive and Intent*</u>

Goodwyn's participation in and social media posts related to the November 14, 2020, protest in Washington, D.C., his participation in and social media posts related to the November 21, 2020, protest in Atlanta, Georgia, and his social media posts and text messages after November 3, 2020, regarding the 2020 election show his motive and intent on January 6, 2021, was to stop the certification of the electoral vote.

Goodwyn's actions show an escalating frustration with the outcome of the 2020 Presidential election, culminating with him taking part in the January 6, 2021, riot to stop the certification of the electoral college votes. On November 21, 2020, Goodwyn protested the certification of Georgia's electoral college votes and, in the days following, he posted a video to social media of the protest. In that post, Goodwyn made his intentions clear by choosing a song to overlay to his video, he selected the song "Revolution" by the Beatles. The specific words he chose from the song were, "You say you want a revolution . . . ." This was not the last time Goodwyn discussed a revolution in the context of the certification of the electoral votes. After storming the Capitol grounds on January 6, 2021, using a bull horn to encourage others to storm the building, and entering the Capitol, that evening, Goodwyn posted to Twitter stating, "They WANT a revolution. They're proving our point. They don't represent us. They hate us." Goodwyn repeated reference to a revolution shows his intention on January 6, 2021, was to disrupt the legal operation of the Government and stop the certification of the electoral college vote.

Goodwyn's social media posts show he was aware of and was focused on the importance of the certification of the electoral college vote. On December 15, 2020, Goodwyn shared a post by the Trump legal team about the safe harbor deadline, the deadline for the states to certify their election results. That post quoted Justice Ruth Bader Ginsburg and described January 6 as "the date of 'ultimate significance.'" Goodwyn then sent a message in a group chat discussing the 2020

13

election stating, "The electoral votes will be counted on January 6th by congress, overseen by US Senate president Mike Pence." Lastly, on January 6, 2021, Goodwyn made his intentions on that day clear. When Goodwyn told his family member that he went inside the Capitol, he was asked why. He responded with an article about the electoral college certification and stated, "That's what we were doing."

Goodwyn's protests, social media, and group messages will show the jury Goodwyn's motive and intent on "the date of ultimate significance," was to prevent the certification of the electoral college vote.

<u>Knowledge</u>

Goodwyn's participation in and social media posts related to the November 14 and 21, 2020 protests in Washington, D.C. and Atlanta, Georgia, and his social media posts and text messages after November 3, 2020, regarding the 2020 election demonstrates his knowledge of the electoral vote certification, its importance, and his knowledge of how lawful protests at the Capitol occur.

First, Goodwyn's prior protests and social media posts related to November 14 and 21, 2020 protests show Goodwyn was aware of the importance of the electoral votes and their certification on January 6, 2021. The date of the riot was not randomly selected as the protest date. It was picked because it would conclusively determine, as a legal matter, the winner of the 2020 Presidential election. Goodwyn's protests to "Stop the Steal" were targeted at the locations where the legal processes for the counting and certifying the votes took place, the Georgia State Capitol. Goodwyn's knowledge of the electoral certification process will show the jury his intent on

January 6 when he told the mob that day on a bull horn "The door is open, we need you to push forward, forward . . . for this to work" was to stop the certification of the electoral college vote.

Additionally, Goodwyn's participation in a previous election protest in Washington D.C. shows his prior knowledge of lawful protests at and around the Capitol. On November 14, 2020, Goodwyn participated in the "Million MAGA March" on November 14, 2020. During this protest in Washington D.C., protestors did not break into the U.S. Capitol, they did not break the Capitol's windows, set off fire alarms, scale the walls of the Capitol, walk across the bloodied Capitol steps, or send elected representative fleeing. Goodwyn's participation in this protest shows his knowledge of where First Amendment activity was allowed around Washington D.C. and near Capitol grounds and what lawful protests looked like.

Second, Goodwyn's social media posts and text messages after the presidential election on November 3, 2020, also show Goodwyn's knowledge of the legal process related to the electoral votes and their importance. After the election, Goodwyn posted multiple times to social media encouraging others to protest at their state capitols to "StopTheSteal" on November 7, 2020. This shows the Goodwyn's knowledge of the electoral process and how each protest, culminating in his participation in a violent riot on January 6, 2021, was focused on the electoral process. As stated above, Goodwyn's group messages on December 15, 2020, discuss the deadlines for states to certify their electoral votes and certification of the electoral vote on January 6, 2021. On January 6, 2021, when asked why Goodwyn went into the Capitol, Goodwyn responded by posting an article about the certification of the election, he stated, "That's what we were doing."

Goodwyn's participation in and social media posts related to the November 14 and 21, 2020 protests in Washington, D.C. and Atlanta, Georgia, and his social media posts and text messages after November 3, 2020 regarding the 2020 election show his knowledge of what was taking place inside the Capitol on January 6, 2021, when he entered and encouraged others "to

push forward . . . for this to work." Additionally, Goodwyn's participation in the November 14, 2020, protest shows his knowledge of where First Amendment activity was allowed around Washington D.C. and near Capitol grounds and what lawful protests looked like.

Absence of Mistake or Accident

At this time, the government does not intend to introduce evidence of Goodwyn's absence of mistake or accident in its case-in-chief unless Goodwyn argues or elicits evidence that he mistakenly believed he had permission to enter Capitol grounds or the Capitol building. However, if Goodwyn argues he mistakenly believed he had permission to enter Capitol grounds or the Capitol building, the government will seek to introduce evidence of Goodwyn's participation in and social media posts related the November 14 and 21, 2020, protests show to show his absence of mistake or accident.

Goodwyn participated in two prior protests related to the 2020 Presidential election, one of which was in Washington D.C., during which protestors did not breach the Capitol building, break windows, or wander the halls of the Capitol while fire alarms were sounding. His participation in those previous protests is relevant to prove the absence of Goodwyn's mistaken belief that he was permitted to enter the Capitol on January 6, 2021. Goodwyn would have understood from participating in those previous, largely peaceful protests, that seeing rioters climbing the walls of the Capitol, breaking windows, and entering a building as fire alarms were going off were signs that they were not allowed onto Capitol grounds and into the Capitol building.

**2) Defendant's Prior Protests, Social Media Posts, and Messages are Not Unduly Prejudicial**

With respect to the second factor, the proffered evidence is not unfairly prejudicial. The D.C. Circuit has emphasized that exclusion of otherwise relevant evidence is not appropriate if the evidence is merely prejudicial; the prejudice must be "unfair." *See United States v. Cassell*, 292

F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotation marks omitted). In close cases, the rule tilts toward admission. *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged.") (internal quotation marks omitted). Unfair prejudice, within the context of Rule 403, means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's notes). The at-issue exhibits do not include anything likely to induce a rational juror to make a decision on an improper emotional basis, for instance, the posts do not make Goodwyn seem either mentally unstable or racist. *Cf. Fitzsimons*, 2022 WL 1658846, at *5 (finding overly prejudicial a phone call and voicemail in which the defendant engaged in aggressive rants about the "deep state," made irrational demands, and expressed racial animus). Unlike the proffered evidence in *Fitzsimons*, the proffered evidence consists of Goodwyn's participation in, and social media posts related to, two protests and his social media posts and group messages after November 3, 2020 related to the 2020 election. There is nothing disturbing or shocking about it, and thus its prejudicial effect does not "substantially outweigh" its probative value.

In any case, any prejudice that may result from introduction of Goodwyn's statements, posts, or actions may be cured by a proper limiting instruction. As this Court has recognized, "[t]he D.C. Circuit has consistently minimized the residual risk of prejudice [from 404(b) evidence] not by exclusion, but by issuing limiting instructions to the jury." *United States v. Young*, No. 12-CR-0042 (BAH), 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) (citing cases). The Court can instruct the jury to consider evidence of the defendant's actions at prior protests only in relation to his motive, intent, knowledge, and lack of mistake or accident. When a clear limiting instruction

is provided to a jury, "'it must be presumed that the jury conscientiously observed it.'" *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367 (1963) (quoting *United States v. Harris*, 211 F.2d 656, 659 (7th Cir. 1954)). Accordingly, the Government submits that the Court should – consistent with the general rule of inclusion in such instances – permit testimony regarding this probative, relevant evidence, and guard against any undue prejudice by providing a limiting instruction.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests the Court to permit the government to introduce, during its case-in-chief at trial, intrinsic act evidence inextricably intertwined with the charged offenses. In the alternative, the Government provides notice of its intent to introduce this "other acts" evidence to prove Goodwyn's intent, knowledge, and lack of mistake or accident in his actions during the riot at the U.S. Capitol on January 6, 2021. *See* Fed. R. Evid. 404(b)(2).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    */s/ Brian Brady*
        Brian Brady
        Trial Attorney, Department of Justice
        DC Bar No. 1674360
        1301 New York Ave. N.W., Suite 800
        Washington, DC 20005
        (202) 834-1916
        Brian.Brady@usdoj.gov