**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No. 1:21-cr-00153 (RBW)** |
| ) | |
| **DANIEL GOODWYN,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT FOR**</u>
<u>**FAILURE TO STATE AN OFFENSE, WITH MEMORANDUM OF LAW**</u>

Comes now the Defendant, Daniel Goodwyn, by and through undersigned counsel, and respectfully moves this honorable Court to dismiss Count One of the indictment, including the accompanying aiding and abetting charge, because the Government failed to state an offense; and the Government is unconstitutionally misapplying the law, creating a void for vagueness statute in application that further implicates Due Process violations, while also violating Equal Protection under the Fifth Amendment to the U.S. Constitution for its use against protected First Amendment speech as a fundamental right. Mr. Goodwyn requests a hearing, and supports his motion as follows:

I.      **INTRODUCTION**

Count One of the Indictment, listed in the overall list of violations as 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding) subsequently reads as follows:
On or about January 6, 2021, within the District of Columbia
and elsewhere, **DANIEL GOODWYN**, attempted to, and did,
corruptly obstruct, influence, and impede an official proceeding,
that is, an official proceeding before Congress, specifically,
Congress's Certification of the Electoral College vote as set out
in the Twelfth Amendment of the Constitution of the United States,
and 3 U.S.C. §§ 15-18.

(Obstruction of an Official Proceeding and Aiding and Abetting, in
violation of Title 18, United States Code, Sections 1512(c)(2) and 2)
1:21-cr-00153 ECF No. 34.

Section 1512(c) falls under Chapter 73 of Title 18, which is "Obstruction of Justice." *See* generally 18 U.S.C. §§ 1501–1521. As the Ninth Circuit has carefully considered and recognized based on the plain language of the statute, an offense under § 1512(c) does not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a hearing before a tribunal. See *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013). Stated differently, § 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress. The counting of the Electoral certificates is not legislative in nature and is mere ceremony, making charges against Mr. Goodwyn outside the reach of § 1512(c). Notably, the Department of Justice (DOJ) has never before used Section 1512(c) for First Amendment protests that disrupted legislative action, hearings, or the Electoral Vote count ceremony. When it comes to Congress, the statute is only being applied (outside of its designed purpose and intent when passed) now for January 6 defendants. This is not mere prosecutorial discretion. It should raise alarm bells regarding DOJ weaponization and misapplication of laws to overcharge Americans who were exercising legal First Amendment speech that opposed the illegal conduct of and irregularities signaling fraud in certain states for the 2020 election. Polls show that over 65% of Americans believe there were irregularities, if not illegalities, that raise questions about the 2020 election and voting security.  Although 18 U.S.C. § 1512 was revised by changes that added § 1512(c) in legislation to address proceedings for corporate fraud; and to make criminal any tampering with documents, the DOJ has contorted words in the statute to make it a felony to protest under the First Amendment.

Count One of the Indictment charges that Mr. Goodwyn obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2) and identifies that "proceeding" as "Congress's certification of the Electoral College vote." Mr. Goodwyn  was exercising protected First Amendment speech,

had nothing to do with any document tampering within the intended design of Section 1512(c), and argues herein that the DOJ is taking § 1512(c)(2) completely out of the context of the parent chapter titled "Witness Tampering," where subsection (c) was designed specifically for document tampering. Section 1512(c) was legislated for one purpose—to prevent a party under subpoena or indictment; or at trial, from altering, tampering, destroying, or otherwise making physical evidence unavailable for a prospective or in-progress proceeding that involves a decision for legal action, dismissal, acquittal, or guilt. None of that is present in the Electoral vote count. None of that is present at general joint sessions of Congress. Congress declared the Electoral vote count to be a joint session, while the Twelfth Amendment says the House and Senate shall merely be present to watch the President of the Senate open certificates and count votes. There is no required number to be present, there is no required quorum, there is no witness, and there is no evidence.

The Government is using §1512(c)(2) as a means of prosecuting felonies where at best a misdemeanor may apply. Mr. Goodwyn's case is an example, where the criminal complaint at ECF No. 1 contained misdemeanors and made no mention of Section 1512. With no new evidence, the Government added § 1512 later to create a felony charge to punish First Amendment speech where a protestor's intent was to have his voice heard. §1512(c)(2) has never been used in this context before or after January 6, 2021 for anyone, including those unlike Mr. Goodwyn who intentionally attempted to or actually disrupted Congressional hearings or proceedings.

Moreover, Mr. Goodwyn was nowhere near the House or Senate chamber, never attempted access to those chambers, and was not inside the Capitol when the ongoing debate related to the electoral count was suspended, Congress was placed in recess by 2:15 p.m., and Congress departed. Nor is there any allegation or evidence that he took any action with respect to a document, record, or another object to corruptly obstruct, impede, or influence anything. The use

of this law in the construct of January 6, 2021, where no criminal intent is shown (as required by the statute) - while peaceful protestors who exercised First Amendment speech in a location that they believed they could lawfully be present - shows an arbitrary interpretation and misapplication of the statute. This is especially so given arbitrary application in relation to a ceremony with the Vice President reading a ceremonial script that is normally as exciting as watching paint dry, and where the ceremony is not normally something people take time out of their day once every four years on January 6 to watch on what was usually only limited television coverage, such as C-Span. January 6, 2021 was different because for unknown reasons, other than publicized protest rallies permitted at the U.S. Capitol, hundreds of reporters, videographers, and photo-journalists were prepositioned inside and outside the U.S. Capitol before 12:30 p.m. on January 6, 2021.

Arbitrariness in application is present because the statute has not been used in this manner outside of January 6 cases, and also because its use is capricious and arbitrary across January 6 cases. For example, one man who walked peacefully into the empty Senate chamber with a Trump flag after the counting and debate session was suspended and Congress departed, and without even knowing he was entering that chamber, was charged with §1512(c)(2), while hundreds who peacefully walked in the Rotunda were not charged; and then others who peacefully entered halls, such as Mr. Goodwyn, were charged with §1512(c)(2), while many others who went throughout the Capitol were not so charged. The DOJ is not meeting Equal Protection standards as it selectively prosecutes, but also selectively dismisses Section 1512 charges to obtain plea deals for just some defendants who are similarly situated to most defendants where DOJ will not dismiss §1512(c)(2) charges for a plea. As an example, a person who carried no flag in the empty Senate chamber had the §1512(c)(2) charge dismissed in plea discussions while people who carried President Trump, Don't Tread on Me, or confederate flags do not have charges dismissed for plea

"bargains." The January 6 defendants' affidavits by the FBI are replete with references to hats, shirts, and flags showing support for President Trump as if that alone is criminal. The affidavits also contain clear pictures with the defendants' faces and affirmation that the FBI confirmed the defendants' identities through phone numbers, driver's licenses, and social media account confirmation that negate any reason to mention or seize clothing and President Trump memorabilia. Home searches involving 15-plus federal agents in tactical gear; armored vehicles; ten plus sedans and SUV's; and SWAT teams conduct pre-dawn raids to seize items depicting support for President Trump that are not on the search warrants and are not evidence of any known crime, where their only potential use is to identify defendants whose identities are not in question. Homes are torn apart looking for T-shirts and hats without merely asking the defendants if they still possess the items and will provide them, assuming there is any need to seize the clothing to begin with. The DOJ and FBI have enacted their own unpublished law that possessing "Make America Great Again" items, hats, and shirts with "Trump" embroidery and printing, and Proud Boys coins for example is a crime where they damage homes and traumatize families and neighbors. It more than appears that the unnecessary search and arrest intimidation tactics used by the FBI, the DOJ combines §1512(c)(2) charges to chill First Amendment protected speech.

The first defendant to be sentenced under a guilty plea for §1512(c)(2) was outright chastised by the Court for demonstrating "loyalty" to President Trump, where it was more than implied that protected First Amendment speech made the defendant guilty and a disloyal American.[1] This arbitrary application and capricious determination of what comprises a violation of § 1512(c)(2) is flatly unconstitutional. It is beyond a reasonable doubt that the January 6 prosecution is targeted at protected political speech and association under the First Amendment for defendants in the

---

[1] See sentencing transcript, 21-CR-00188-RDM at ECF No. 36.

opposition party to the current administration. DOJ and its subordinate FBI have rewritten and internally legislated using the existing Section 1512(c) law to turn it into a Bill of Attainder targeted at specific people who do not politically support the policies of the current administration.

In the context of January 6th related cases, the legislative history and purpose behind Section 1512(c) have been flatly ignored. Short of argument about someone stealing or destroying electoral certificates, should those somehow be construed as "evidence," application of § 1512(c) to January 6th defendants is also unsupported by any prior judicial decision. In essence, § 1512(c) has been reconstructed and its scope widened by DOJ and some judges such that they are legislating. This legislation makes § 1512(c) unrecognizable from the purposes and intent of those who passed the law. § 1512(c) is now misapplied for the specific purpose of dragnetting, capturing, and indicting hundreds of American Citizens who protested under the First Amendment at the United States Capitol on January 6, 2021. Mr. Goodwyn's Count One of the indictment thus violates the U.S. Supreme Court holding that "Due process bars courts from applying a novel construction of a criminal statute that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 268 (1997).

## II.    PROCEDURAL HISTORY

Mr. Goodwyn was arrested in Texas on January 29, 2021 under a complaint (*see* ECF No. 1) alleging that he violated Title 18, U.S.C. §§ 1752(a)(1) and (a)(2) (entering or remaining in any restricted building or grounds without lawful authority and disorderly and disruptive conduct in a restricted building or grounds, respectively) and Title 40, §§ 5104(e)(2)(D) and (G) (disorderly conduct in a Capitol building and demonstrating, picketing or parading in a Capitol building,

respectively). The charges were misdemeanors concerning his presence and alleged actions during the January 6, 2021 events at the United States Capitol.

On February 24, 2021 the Government filed an indictment that included the crimes alleged in the complaint at ECF No.1 and added the felony: 18 U.S.C. §§ 1512(c)(2) (Obstruction of an Official Proceeding). ECF No. 6.

On November 15, 2021 the Government filed a superseding indictment that added the crime of 18 U.S.C. § 2, aiding and abetting, to Count 1. ECF No. 34.

## III.    LEGISLATIVE HISTORY

### A. Section 1512(c)(2)'s Structure and Legislative History

1. § 1512(c) provides:

> "Whoever corruptly (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . .

§1512(c)(2)

2. § 1515 defines the term "official proceeding" as used in Section 1512(c), stating that it means:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B) a proceeding before the Congress;
> (C) a proceeding before a Federal Government agency . . . .

§ 1515(a)(1)

3. Congress subsequently amended § 1515(b) to provide:

> As used in section 1505, the term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

**B.  Section 1512 Falls Under Chapter 73, Obstruction of Justice.**

Section 1512 is titled "Witness Tampering." Section 1512(c) was a change after the Enron scandal and was designed to close a loophole related to acts preventing use of documents as evidence. Many statutes were amended to close loopholes under the overall umbrella of deterring corporate fraud and holding public companies accountable.

**C.  Congress Created Section 1512(c) to Fill a Loophole That Existed at the Time of the Enron Case.**

1. The Senate Report for the Sarbanes-Oxley Act identified the statutory loophole as the requirement that the person damaging documents had to have been directed by defendants.

> Indeed, even in the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107–146, p. 7 (2002).

2. Senator Lott introduced § 1512(c) on July 10, 2002. He said the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives" as happened in the Enron case. 148 Cong. Rec. S6542 (daily ed. July 10, 2002). Then-Senator Joseph Biden referred to the new subsection (c) as "making it a crime for document shredding." *Id*. at S6546. Senator Hatch made similar statements regarding the focus of the proposed new subsection on documents and document shredding, as well as its ties to the then-recent Enron scandal. Senator Hatch said, "the amendment strengthens an existing federal offense that is often used to prosecute document shredding and other forms of obstruction of justice," noting that current law "does not prohibit an act of destruction committed by a defendant acting alone." *Id*. at S6550.

**D.  President Bush Defined *Corruptly* for the Executive Branch in Scienter Terms Upon Signing H.R. 37631; and Indicated that Section 1512(c) Applied to Businesses:**

> To ensure that <u>no infringement on the constitutional right to petition the Government for redress of grievances occurs</u> in the enforcement of section 1512(c) of title 18 of the U.S. Code, enacted by [§ ] 1102 of the Act, which among other things prohibits corruptly influencing any official proceeding, the executive branch shall construe the term "corruptly" in section 1512(c)(2) <u>as requiring proof of a criminal state of mind on the part of the defendant</u>.

GEORGE W. BUSH
THE WHITE HOUSE,
July 30, 2002.[2] (Emphasis added)

   1.  The President stated that the Sarbanes-Oxley Act and sections were to protect investors and improve corporate disclosures related to financial matters. "The Act adopts tough new provisions to deter and punish corporate and accounting fraud and corruption, ensure justice for wrongdoers, and protect the interests of workers and shareholders." *Id*.[3]

   2.  The Congressional debate about the need for passage of the Act with Section 1512(c) to hold corporations accountable and to close loopholes regarding evidence alteration or destruction,[4] combined with President Bush's statements about Section 1512(c) were heavily covered in media because of the Enron case. In addition to legacy news coverage, the topic was covered in opinion pieces and even advertising, "A television commercial for Heineken beer, broadcast during the 2002 holiday season, vilified Enron's document destruction as being

---

[2] Statement issued by the White House Press Secretary on July 30, 2002 and found at https://georgewbush-whitehouse.archives.gov/news/releases/2002/07/20020730-10.html (last visited September 20, 2022).

[3] Refers to the Sarbanes-Oxley Act of 2002 (Public Company Accounting Reform and Investor Protection Act), Pub. L. No. 107-204, 116 Stat. 745 (codified in sections of 15 U.S.C. and 18 U.S.C. including Section 1512(c) changes).

[4] Statements in support of the Sarbanes-Oxley Act of 2002 included "we must crack down on the corporate criminals and rebuild America's confidence in our markets .... [T]he best way to do that is to punish the corporate wrongdoers and to punish them harshly." 148 CONG. REC. H5464 (daily ed. July 25, 2002) (statement of Representative Sensenbrenner).

anathema to having been 'good this year.'"[5] Heineken showed what looked to be snow falling outside an apartment building, and then panned inside a top-level apartment, where men in white shirts were shredding documents and tossing confetti shreds outside. *Id*.[6]

3.  There is no apparent evidence of any intent by the Congress or President Bush in respectively passing and signing § 1512(c) that it would ever serve as a catch-all for interrupting a Congressional hearing, the passage of legislation, or committee work sessions.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

This Memorandum incorporates the preceding sections and puts forth:

## IV.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Before trial, a criminal defendant may move to dismiss a count of the indictment based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). Defects can include "lack of specificity" and "failure to state an offense." *Id*. A "failure to state an offense" argument includes constitutional challenges to the statute creating the charged offenses. *See United States v. Stone*, 394 F.Supp.3d 1, 7 (D.D.C. 2019); *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973).

When considering a motion to dismiss an indictment, a court must assume the truth of the factual allegations in the indictment. *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir.

---

[5] Daniel A. Shtob, "Corruption of a Term: The Problematic Nature of 18 U.S.C. §1512(c), the New Federal Obstruction of Justice Provision," 57 Vanderbilt Law Review 1429, 1432 (2019). Available at: https://scholarship.law.vanderbilt.edu/vlr/vol57/iss4/6
[6] The old 2002 commercial 'Let It Snow' can be found on YouTube: https://www.youtube.com/watch?v=UZ9n1x9YjjY (last visited September 21, 2022).

2015). *See* also *United States v. Gamble*, Criminal No. 19-348 (CKK), at *5 (D.D.C. July 2, 2020). "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859 F.Supp.2d 102, 107 (D.D.C. 2012).

The indictment must be plain, concise, and clear as to the facts of the offense charged. Fed. R. Crim. P. 7(c)(1). The indictment must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he is prosecuted upon facts presented to the Grand Jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C.2017) ((citing *Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960)). In addition, to be sufficient, an indictment must "fairly inform[] [the] defendant of the charge against which he must defend, and [] enable[] [him] to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 135 S.Ct 2551, 2556 (2015)). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes. And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). Notice requires the person to be able to know what acts are criminal.

"[T]he rule of lenity is venerable," *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021)

having arisen to mitigate draconian sentences in England and having been firmly established in

English law by the time of Blackstone. *Id*. at 473. "Under the rule of lenity, courts construe penal

laws strictly and resolve ambiguities in favor of the defendant," *id.*, so long as doing so would not

"conflict with the implied or expressed intent of Congress," *Liparota v. United States*, 471 U.S.

419, 427 (1985). Under current doctrine, the rule of lenity applies to instances of "grievous"

ambiguity, *see Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring)

*See* William Blackstone, Commentaries *88 ("Penal statutes must be construed strictly.").

"It is an elementary principal of criminal pleading, that where the defendant of an offence . . .

includes generic terms, it is not sufficient that the indictment shall charge the offence in the same

generic terms as in the definition; but it must state the species—it must descend to particulars."

*United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

18 U.S.C. Section 1512(c) provides:

> (c) Whoever corruptly— (1) alters, destroys, mutilates, or conceals a
> record, document, or other object, or attempts to do so, with intent
> to impair the object's integrity or availability for use in an official
> proceeding; or (2) otherwise obstructs, influences, or impedes
> any official proceeding or attempts to do so, shall be fined under
> this title or imprisoned not more than 20 years, or both.

The Department of Justice itself recently summarized and stated that § 1512 constitutes "a

broad prohibition against tampering with a witness, victim or informant. It proscribes conduct

intended to illegitimately affect the presentation of evidence in Federal proceedings or the

communication of information to Federal law enforcement officers."[7]

Significantly, the Supreme Court held in *United States v. Aguilar*, 515 U.S. 593, 599 (1995),

"if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he

---

[7] Dep't of Justice, United States Attorneys' Manual, Title 9, Criminal Resource Manual 1729
(2020).

lacks the requisite intent to obstruct." In *Aguilar*, the Court held that a violation of "§ 1503 require[s] ... a 'nexus' between the obstructive act and the proceeding." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-708 (2005). While *Aguilar* analyzed § 1503, the Second Circuit held that "§ 1512(c)(2) incorporates a 'nexus requirement' as articulated in *Aguilar*." *United States v. Reich*, 479 F.3d 179, 186 (2d Cir. 2007). See also *United States  v. Gray*, 642 F.3d 371, 376 (2d Cir. 2011) where **"§ 1512(c)(2), which proscribes corruptly obstructing a judicial proceeding or attempting to do so, requires proof of a nexus between the defendant's conduct and the proceeding".** Consequently, the same logic applies to § 1512(c)(2) as it does to § 1503: a valid charge of obstruction "requires a specific intent to obstruct a federal judicial or grand jury proceeding.... [T]he conduct offered to evince that intent must be conduct that is directed at the court or grand jury and that, in the defendant's mind, has the 'natural and probable effect' of obstructing or interfering with that entity." *United States v. Schwarz*, 283 F.3d 76, 108 -109 (2d Cir. 2002) (Emphasis added).

18 U.S.C. § 1512 includes an express affirmative defense where the defendant bears the burden of proof:

> (e) In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

## V.    ARGUMENT

**A.  Count 1 of the Indictment Fails to State an Offense Because it is Devoid of any Specific Facts Essential to the Charge, and Thus Deprives Mr. Goodwyn of any Ability to Prepare a Proper Defense.**

As discussed in Section IV above regarding Fed. R. Crim. P. 7(c)(1), *Ballestas*, *Gamble*, *Apodaca*, and *Hamling*, the charges must contain specific facts for each element of the offense charged; with specificity that allows for a defense. In this, Count One is wholly defective. The

Count is written as a legal conclusion without any facts related to the elements of the crime charged.

The Government did not give a specific date of the offense - it gave a ballpark timeframe. While alleging the proceeding was the certification of the Electoral College vote, the charge does not say where and how he attempted to obstruct. The government failed to even give a hint as to where and what conduct by Mr. Goodwyn constituted the actus reus of obstructing a proceeding, nor any act amounting to an "attempt to" violate Section 1512(c)(2). The charge does not say who he aided and by what act. It does not state at what exact location Mr. Goodwyn committed any acts, except for D.C. writ large and "elsewhere." The Government did not state what acts he supposedly committed at any time and place.

The government failed to allege any facts that he had a criminal intent or *mens rea* to "corruptly" do anything . The Government gave no clue as to how Mr. Goodwyn then allegedly obstructed, influenced, or impeded an official proceeding.  The indictment legally concludes that at some unknown time around January 6, 2021 Mr. Goodwyn violated Section 1512(c)(2) in D.C. and "elsewhere," where it does not even limit what part of planet Earth that Mr. Goodwyn must consider in his defense against unspecified intent and acts. Without any specifics about the act involved and where the act happened, Section 1512(i), (not mentioned in the indictment), contains an express provision that is the only reason this Court has venue. **"**A prosecution under this section or section 1503 may be brought in the district in which the official proceeding . . . was *intended to be affected* or in the district in which the *conduct constituting the alleged offense* occurred.**"** *United States v. Gamble*, Criminal No. 19-348 (CKK), at *6 n.3 (D.D.C. July 2, 2020)(Emphasis added). The indictment does not specify what intent, by what act, where, and when Mr. Goodwyn violated Section 1512(c)(2). When it comes to preparing a defense, the indictment only says that Mr.

Goodwyn at some time and at some unknown place, with no intent, did something where he attempted to and did obstruct, impede, or influence the certification of the Electoral College vote.

Because the indictment merely restates the law and in a legal conclusion says Mr. Goodwyn violated it in regard to the Electoral Count certification ceremony, without showing a corrupt intent and without any *actus reus* specificity as to how, when, and where he attempted or did anything, Count One must be dismissed for failing to state an offense.

**B.  Count One of the Indictment Fails to State an Offense Because it Charges Mr. Goodwyn Outside the Reach of § 1512(c)(2), and Unequally Applies § 1512(c)(2) to Only Political Opponents of the Current Administration for Attending a Free Speech Event**

**1.  The Purpose of 18 U.S.C. § 1512(c) Requires a Witness or Evidence**.

18 U.S.C. § 1512(c), of which § 1512(c)(2) is a part, was enacted by the Sarbanes-Oxley Act as an amendment to 18 U.S.C. § 1512. Sarbanes-Oxley Act, Pub. L. No. 107-204, § 1102, 116. Stat. 807 (2002). In Section III, C-D *supra*, neither Congress nor the President enacted § 1512(c) to be used for anything other than document tampering as related to evidence. The Department of Justice's own interpretation of § 1512 is reflected in its Criminal Resource Manual that states § 1512 "proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings. . . ." The President, DOJ, and Congress never distinguished in the enactment of Section 1512 that was before January 6, 2021 that any part of 1512(c) was not tied to interfering with the presentation of evidence by witnesses or by items like documents. A review of other parts of § 1512 shows it involves actions against people, whereas § 1512(c) was added for actions taken by people against documents and tangible evidence. Section 1512(c)(2) appears to have been ahead of its time in compensating for electronic drives and cloud files, and the use of 'acid washing' for digital files in stating "otherwise," rather than just listing shredding and burning. Section 1512(c)(2) left the door open for any and all ways to tamper with documents that were

required for evidence in a proceeding. Overall, Section 1512 requires action against a witness or evidentiary document. § 1512(c) was enacted to stop document tampering that would impact evidence required for a proceeding with witnesses.

Assuming in arguendo to the above paragraph V. A.'s unstated act, that Count One refers to entry into the Capitol grounds or in the U.S. Capitol building, Mr. Goodwyn cannot have violated § 1512 because he did nothing internally or externally to the Capitol building that obstructed anything or anyone. He was not inside the Capitol Building before 3:32 p.m. according to CCTV. He did nothing even remotely related to why and when the electoral objection debates were placed in recess at 2:15 p.m., and Congress departed by 2:20 p.m. Mr. Goodwyn encouraged nobody to try to stop the count or debates either on or before January 6, 2021. Mr. Goodwyn directed and led nothing on January 6, 2021. Count One mentions no action taken by him and no goal he intended to accomplish.

Mr. Goodwyn is not charged with any action that did or would have impacted a witness's testimony or a document required for evidence by Congress on January 6, 2021 or any future date. No facts are alleged to show anything he supposedly did, or when and where he did it. § 1512 is not titled "Disrupting Congress." § 1512(c) is not a strict liability crime. And, if used for unspecified actions that might temporarily delay a meeting of Congress, it is not only open for arbitrary application, but is void for vagueness because anything might be claimed as violating the statute. And that is what we have for the use of Section 1512(c) for January 6 defendants. There is no rhyme or reason as to who is charged and for what reason. People who remained outside and never encouraged anyone to enter the building have been charged, while others similarly situated were not charged. Some people who entered have not been charged while others have been.

16

Violence is not the criteria given Mr. Goodwyn's case. Further, as shown here, Section 1512 has been perverted to the extent that the Government does not believe it must allege any specific facts.

However, even if arguing that entry into the U.S. Capitol creates strict liability where the Government can pick and choose only to prosecute January 6 defendants should a meeting without witnesses and without evidence be delayed, there was no delay caused by Mr. Goodwyn. The electoral count debates stopped by 2:20 p.m. whether for nearby pipe bomb threats, for people entering the building, for both, or for something else. A CCTV camera shows that Mr. Goodwyn entered the building through an open, unguarded door at 3:32 p.m. and after getting but a few yards past the open entrance hallway, was told by a USCP officer to depart, which he immediately obeyed. Mr. Goodwyn was barely inside the building and the period was around forty seconds as shown by CCTV time stamps.

There is no concrete evidence in any January 6 discovery data base supporting a claim that Congress was "evacuated" only due to the presence of protestors inside the building.  There are no communications or records in any January 6 discovery data bases about what was relayed to the U.S. Secret Service, House Speaker, Senate majority leader, or both sergeants-at-arms regarding the pipe bombs discovered at the DNC and RNC headquarters a short distance away, well before 2:20 p.m. Verbal claims that the chambers were "evacuated" due to protestors in the building only lends hearsay support to any allegation that any January 6 defendant had anything to do with the halt in debates and counting. Further, the House Speaker refuses to provide any of the over 1000 investigative records or closed-door sworn testimony transcripts, while USCP will not answer discovery requests. Lawyers for the sergeants-at-arms accompany Capitol tours for defense attorneys to ensure the USCP do not allow viewing of all areas where protestors went inside the building, and that USCP answer zero questions that can remotely infer anything about

security and timings on January 6. Nobody has provided evidence that proves the 2:20 p.m. "evacuation" of the Vice President and Congress was or was not for fear of a bomb inside or around the U.S. Capitol - which was open to construction workers, pedestrians, and bikers on the morning of January 6, 2021.

Section 1512 is being unequally and capriciously applied to January 6 defendants since no other disrupters of Congressional business, whether alleged trespassers in the building or on the grounds have ever been charged with 1512(c)(2). There are misdemeanor crimes for disrupting Congress. 18 U.S.C. § 1752(a)(2) Disorderly and Disruptive Conduct in a Restricted Building and 40 U.S.C. § 5104(e)(2)(D) Disorderly Conduct in a Capitol Building are existing indictment charges that the Government could attempt to prove if those are not dismissed ahead of trial. Even among January 6 defendants who are similarly situated, such as: no violence, entered through open doors, immediately obeyed police, and were inside after Congress recessed, the application is unequal.

Count One is arbitrarily applied here, making it void for vagueness because nobody can know what constitutes a crime under Section 1512(c)(2) once it is separated from document tampering. On many occasions before January 6, and even afterward, people have disrupted or caused a delay for hearings and events inside the U.S. Capitol, yet Section 1512(c) has never been charged. In 2017 when protestors gathered outside a Senate meeting about replacing the Affordable Care Act, there was no attempted use of § 1512(c). The large group of protestors shouted, blocked hallways, and refused to leave. 181 people were arrested and while the majority received minor fines if anything, fifteen protestors were charged with the misdemeanor of disrupting Congress.[8] News reported that proceedings had to stop for over fifteen minutes. Thus,

---

[8] https://www.nbcwashington.com/news/local/181-arrested-at-capitol-hearing-during-protestsabout-gop-health-care-bill/28737/ (last visited September 21, 2022).

in 2017 the conduct of causing a delay in Congressional proceedings did not give rise to charges and prosecution under Section 1512(c)(2).

Section 1512(c) was written and passed, and then signed by the U.S. President strictly to close a loophole related to document evidence. Mr. Goodwyn did not come near, let alone attempt to take electoral certificates, which were the only documents for the ceremonial event should that be classified as a "proceeding." Importantly, the electoral certificates were never intended as evidence. The certificates are on fancy paper in fancy envelopes and were intended for a ceremony. They were not marked as evidence. They were placed in a fancy box and are likely in the National Archives somewhere. The key element of the crime is not charged in that there was no evidence related to documents or files that were tampered with. Instead, Mr. Goodwyn's indictment charges him with no specific acts that can be argued as being in violation of Section 1512(c). Section 1512(c) was never intended to be a catch-all for temporary schedule disruptions in Congress, should the act of "disrupting" have been in Count One - which it is not. And corrupt intent is required under Section 1512(c). President Bush was clear that airing grievances, which in the English language includes First Amendment speech, cannot be grounds for use of Section 1512(c). Mr. Goodwyn's First Amendment protected speech captured his intent, which was for the objection debates to continue. There is no evidence in his speech, whether vocal or on-line, that Mr. Goodwyn wanted the counting and debates to stop because that result was opposite of his intent for attending January 6 events. His intent was to support Senator Cruz in the call for a ten-day delay for investigation by a commission. His other intent in wanting his voice heard in First Amendment speech involved hope that the certificates for contested states that sent an alternate elector slate would be returned for those state legislatures to investigate and decide according the U.S. Constitution - which presumes a legal election.

Because Mr. Goodwyn did not "tamper" with evidence or documents and he was not accused of any specific act that could interfere with counting and debating; he had no intent to tamper with anyone or anything; he did not delay, disrupt, or impede anyone or anything; and he is arbitrarily charged by an unconstitutional expansion beyond the intent and reach of § 1512(c)(2), Count One should be dismissed.

### 2.  The Statute is Unconstitutionally Void for Vagueness Because it is Applied Arbitrarily and Unequally With No Standards for What Constitutes a Crime.

Count One provides not a scintilla of information about whom Mr. Goodwyn aided and abetted, how, and for what. He appears charged because of First Amendment protected speech and association. He attended a rally in support of the Biden administration's political opponent. He wanted an investigation of the 2020 election given credible and proven acts of illegality in several states that determined the election's outcome. However, as applied to January 6 defendants, where anything from no specified actus reus (as exists in this case) to just walking inside the building with no intent to do anything but protest are the bases for charges, no person can know what will make their actions a crime under Section 1512(c)(2). The statute is not vague as written - but its interpretation and application against Mr. Goodwyn and January 6 defendants are novel and capricious, without standards, and therefore, unconstitutional.

The DOJ, as well as some in the D.D.C., view and apply Sections 1512(c)(1) and (c)(2) as disjointed, because of the word "otherwise," even though in the English language "otherwise" as used in Section 1512(c)(2) is a conjunctive adverb. Despite Senators stating at the time of enactment circa 2002 that Section 1512(c) closed a loophole for document destruction or tampering, for January 6th cases the legislative intent is ignored. Section 1512(c)(2) is used without any relation to a witness or evidence. Despite every other part of Section 1512 having a

purpose to deter a threat to a witness or tangible document or file related to evidence, the DOJ decided that Congress buried 1512(c)(2) as a crime for anything that interrupts "the proceeding," where no interference with a witness or evidence is required. There was not a single "witness" on January 6. The Electoral Count Act never once mentions the word "witness.' The Act never once mentions the word 'evidence' as a requirement to ceremoniously count certificates. Because of the above, the statute is being applied unconstitutionally and outside of its design, where anything that interrupts "a proceeding" can be charged as a twenty-year felony.

A judge, U.S. Attorney and assistants, or FBI agent can decide what obstructs a proceeding involving no witness or evidence such that Section 1512(c)(2) is violated. A proceeding is now anything involving Congress, except when Stephen Colbert's television comedy crew recently remained in the buildings connected by tunnel to the Capitol after being told to leave. DOJ did not use Section 1512(c)(2) on January 6, 2017, when a man wandered yelling through the occupied chamber and disrupted the Electoral Vote Count.

The DOJ did not weaponize Section 1512(c)(2) in 2017 when groups in intervals showed up in the Senate gallery and yelled during the Justice Kavanaugh confirmation hearings, where said hearings were actually "obstructed" and had to stop while members of Code Pink were removed. The DOJ did not use Section 1512(c)(2) when Laura Loomer interrupted a Congressional hearing on September 5, 2018 to protest election integrity and conditions related to that subject. The DOJ did not use Section 1512(c)(2) when people verbally surrounded and accosted Republican Senators in hallways and by elevators during breaks from the confirmation hearings - where the locations were off-limits to the public. The DOJ did not use Section 1512(c)(2) when Congresswoman Kyrsten Sinema was accosted by activists while using the restroom. The DOJ did not use Section 1512(c)(2) after gun control activist David Hogg was escorted out of a House

Judiciary Committee hearing on June 20, 2022, following an outburst that received over one million views on Twitter within hours of the incident.

In application, nobody can tell what acts are criminal under Section 1512(c)(2). The DOJ and the D.D.C. consider 1512(c)(2) violated on January 6, 2021 by anything, and even by people who never entered or told anyone else to enter the building. According to the DOJ's and D.D.C's interpretation and current application of Section 1512(c)(2) if it was applied equally, it is a felony punishable by up to twenty years in prison to block a Senator's parking  space that subsequently causes the Senator to be late for a meeting. However, your chances of being prosecuted are extremely high if you support Donald Trump, and non-existent if you do not.

This novel and unprecedented application – unique and newly invented for January 6 defendants - relies on the false idea that Congress buried a catch-all clause to all of Section 1512 in Section 1512(c)(2); where no person can know what conduct violates what part of the law, if any. This makes the law unconstitutional as applied, for vagueness and lack of equal protection of the fundamental right of First Amendment speech, where the use is also a deliberate misapplication of the law as written and intended. The D.D.C. is rewriting the law from the bench.

As a catch-all phrase, Section 1512(c)(2) joins to Section 1512(c)(1) in the English language and as Congress and the President intended in 2002. But as applied, instead of the focus being on witness and evidence tampering (the reasons for the overall statute's existence), the DOJ's arbitrary application combined with D.D.C. court-made law as applies to January 6 defendants, has turned Section 1512(c)(2) on its head. Now anything that might interrupt any "proceeding" that is deemed "official" where there is no evidence or witnesses can result in a 20-year felony if DOJ decides to prosecute. The potential reach of this statue is limitless, boundless, and must be reined in at once as nobody can know what constitutes a crime.

If Mr. Goodwyn's prosecution was not in fact arbitrary, the government would have articulated credible, statutorily based facts related to document tampering, with specifics that distinguish any alleged conduct from First Amendment speech that caused no interference with any proceeding or ceremony. The Government presented no facts to even slightly support its broad reading of § 1512(c)(2) that accounts for any charges now and why it failed to even once charge persons whose speech disrupted Congressional proceedings in the past.

The statute is unconstitutional as applied in the present in the D.D.C. because no specific facts are identified showing what Mr. Goodwyn and many peaceful protestors did that violated the statute's intended purpose and language related to document tampering. The Government provided no facts even to support its novel interpretation. Because nobody can know what constitutes criminal activity in an interpretation that removes document tampering and intent, where the current misapplication uses an "anything goes" standard if the Government identifies and charges political opposition to administration policies; and where others similarly are not charged equally, Mr. Goodwyn's Count One must be dismissed.

**3. Under DOJ and D.D.C. Mistaken Grammatical Interpretation, There Are No Set Elements That Make Up A 1512(C)(2) Crime, Making it Void for Vagueness as Applied.**

A thorough review of the entire statutory context proves that the word "otherwise" was intended by Congress to unite sections 1512(c)(1) and 1512(c)(2). The obvious contextual evidence that counters the Court's usual "plain meaning" determination is § 1512's repeated use of the disjunctive "or" throughout the statute as a way of demarcating plainly separate and independent conduct. In fact, the word "or" is used nine times in 18 U.S.C. § 1512 to create twenty separate and independent methods of obstructing justice. "Or" is used in § 1512(a)(1) to demarcate three separate methods of obstructing justice by murder or attempted murder. Similarly, "or" appears twice in § 1512(a)(2), effectively demarcating seven distinct methods of obstruction

through threats or physical force. Congress, unlike in twenty surrounding places in the Witness Tampering statutes, inserted "otherwise" only between subsections (c)(1) and (c)(2) of § 1512(c). Why would Congress, after using "or" to unambiguously demarcate twenty plainly separate and independent methods of obstructing justice, insert the word "otherwise" between subsections (c)(1) and (c)(2) for the exact same purpose? In other words, Congress could have "underscored" that (c)(1) and (c)(2) involve different obstructive conduct by omitting "otherwise" from the statute altogether. Therefore, logically "otherwise" must have been intended by Congress to have a statutory constructive purpose different than, as the Court found, underscoring disjunction between the subsections.

The Section 1512(c)(2) and Section 2 Indictment charges against Mr. Goodwyn, if left standing, allow a claim without any sub-elements and without standards - to be decided based upon the subjective imagination of a jury. Mr. Goodwyn cannot defend against unspoken imaginations. The indictment's Count One eliminates the mens rea (i.e., to corruptly intend to obstruct a proceeding) required by Section 1512. As charged, Count One encourages interpretation that unspecified acts and no proof of specific intent can legitimately result in a guilty conviction for a felony that was enacted to deter the destruction of evidence. Without any showing that any conduct was intended to obstruct anything, the Government obtained a Grand Jury indictment on Count One and others, and has made Section 1512(c)(2) a strict liability crime without identifying what conduct triggers the strict liability.

Mr. Goodwyn did not do anything to stop the debates over Arizona electoral votes. He did not aid anyone in causing Congress to stop its business. Mr. Goodwyn did not cause any delay to the restart of the debates. He had nothing to do with the time USCP and other elements took to "clear" the building.

There is no legitimate explanation as to why Section 1512(c)(2) is being used expansively for January 6 defendants when it was not used for the protestors who shut down a Senate proceeding in 2017. The time in 2017 was about 17 minutes of shutdown versus five and a half hours on January 6, 2021. The amount of shutdown time that can be claimed as disruptive versus obstructive seems totally arbitrary in application. Further, the USCP with the House Speaker, Senate majority leader, and both Sergeants-at-Arms determined when Congress members (at their predetermined reduced number due to Covid-19 seating restrictions) would return to recommence the ceremonial business of debate and watching certificates be opened and counted. The USCP set the time for security clearing and clean-up of the building given exit by around 4:45 p.m. of the last protestors and the many stray journalists and photographers wandering around.

That the USCP did not use the intercom system that runs through all hallways and areas to tell people to leave right after initial entries around 2:00 p.m. - or at any time while protestors were entering though open doors - remains a mystery. Charges and sentences infer intent to violate Section 1512(c)(2) when most being charged have no criminal history and obey authority. An intercom announcement that would have cleared the building was never made. The USCP's clearing timeline after protestors were all outside is not transparent or discernible, where the USCP with the House and Senate leaders for unknown reasons declared 8:00 p.m. as the time to restart. Allowances for Congress members' and USCP's dinner time and member travel cannot be attributed to alleged conduct by Mr. Goodwyn. His entry through open doors at around 3:32 p.m. did not enable anyone else to stop a meeting that had already been stopped. Arbitrary and unequal application shows there is nothing knowable by any person as to what amount of disruption time to a scheduled meeting gives rise to felony Section 1512(c)(2) charges rather than Section 1752 misdemeanor charges or a $75.00 fine that was the precedent.

Disorderly conduct, that is covered under misdemeanor statutes, is also now used as stand-alone actus reus to prove felony Section 1512(c)(2) guilt. Without even showing the required mens rea for knowingly being in a restricted area under Section 1752, just a claim of violating Section 1752 without intent to do anything besides protest can be turned into an indictment under Section 1512(c)(2). This application makes the law void for vagueness in application.

If Congress wanted to create a law that made it a felony for anyone of the political opposition party to be guilty because someone or something interrupted a meeting in Congress (that was not a hearing with witnesses and evidence), it could have written new laws different from the misdemeanors already on the books. The DOJ encourages this Court to encroach on the legislative branch and violate the Separation of Powers by replacing Section 1512(c) as written, intended, and enacted with unconstitutional bench legislation based on arbitrary charges and capricious grand jury indictments.

Count One of the Indictment should be dismissed because Section 1512(c)(2) is unconstitutionally void for vagueness as applied, is unconstitutional for violating Equal Protection under the Fifth Amendment as applied, and Mr. Goodwyn's indictment makes it impossible to defend against Section 1512(c)(2) as charged.

### 4.  Misuse of Grammar Allows Misapplication of the Law from What was Intended.

"Otherwise" is used as a conjunctive adverb in thoughtful reading of the entire statute. In Section 1512(c)(2) Congress left open the ability to address other means of interfering with the availability of documents as evidence in a proceeding. In the Enron case, the lack of a "Section 1512(c)" meant that the document possessor could destroy, shred, tamper, or otherwise make documents disappear. Again, why would Congress delineate--twenty times--separate types of obstructive conduct by using "or," but then insert the word "otherwise" in § 1512(c) for the same

purpose? It would not do so. In the rest of the statute, Congress listed very specific acts (murder, kidnapping, etc.) whereas for documents it left open other ways someone trying to obstruct a proceeding could impact them. Nothing indicates Congress intended Section 1512(c)(2) as a placeholder for DOJ and courts to come along and implement their own version of this law.

There are six types of adverbs in the English language: adverbs of time, manner, place, degree, frequency, and conjunction.[9] The first five types are similar in nature, and are used to modify (typically) verbs within their clauses or sentences.[10] The sixth type of adverb is the "conjunctive adverb," which "is an adverb that acts like a conjunction."[11] In § 1512(c)(1), "otherwise" operates as a conjunctive adverb. That "otherwise" in § 1512(c)(1) is a conjunctive adverb is clear. According to a well-respected dictionary: "When used to connect two related clauses, *otherwise* is usually classified as a conjunctive adverb, which by grammatical tradition should be preceded either by a semicolon or by a period."[12]

A "conjunctive adverb" conjoins and modifies two separate clauses. The difference between "otherwise" the "adverb" and "otherwise" the "conjunctive adverb" is significant. An "adverb" modifies an adjacent word, e.g., "she believed otherwise," "quickly ran," "knocked on the door loudly," "briefly spoke," etc. Conjunctive adverbs, by contrast, do not modify adjacent words: instead, these grammatical renegades relate the entire adverbial clause back to the preceding clause, thus modifying, in some respect, the first clause. A conjunctive adverb connects independent clauses and acts as a modifier by using one clause to modify another.[13]

---

[9]  https://www.thesaurus.com/e/grammar/types-of-adverbs/ (online thesaurus).
[10]  *Id*.
[11]  *Id*. A "conjunctive adverb" is sometimes called an "adverbial conjunction."
[12]  AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th Ed. 2020), https://www.ahdictionary.com/word/search.html?q=otherwise, (Usage note) (emphasis original).
[13]  Dictionary.com (online dictionary and thesaurus), https://www.thesaurus.com/e/grammar/conjunctive-adverbs/ (emphasis added).

A "conjunctive adverb" is "a word that modifies a whole previous statement." Frederick Crews, The Random House Handbook 403 (6th ed. 1992). Unlike the Government's interpretation, "otherwise" was not used for disjunction where an unregulated catch-all could be applied to Section 1512 in its entirety. Under the Government's interpretation the entirety of Section 1512 could be eliminated and replaced with just Section 1512(c)(2).

Congress's intent in Section 1512(c)(2) was to criminalize obstructive conduct related to documentary-type evidence technically not captured or anticipated under Section 1512 (c)(1); and not to hand prosecutors and courts a sweeping, over-lapping obstruction of justice statute equipped with a 20-year maximum penalty sledgehammer. As the Supreme Court has emphasized "over and over," when "expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank v. Independent Ins. Agents of Amer.*, 508 U.S. 439, 455 (1993) (internal citations omitted).

The current version of § 1512(c) was enacted as part of Sarbanes-Oxley and was intended by Congress to improve the accuracy of corporate disclosures by penalizing those who obstruct justice "by impairing the integrity or availability of records, documents, and other tangible objects." *United States v. Hutcherson*, No. 6:05CR00039, 2006 U.S. Dist. LEXIS 6652, at *6-7 (W.D. Va. Feb. 3, 2006). Accordingly, "the amended § 1512(c) created a specific subsection dealing with tampering with tangible evidence, in what was otherwise a statute that previously dealt only with tampering of persons." *Id*. Section 1512 was not intended to create two separate crimes, but instead, was "meant to criminalize difficult to enumerate conduct that would otherwise slip past Section 1512(c)(1)'s specific prescription. *Id. Accord United States v. Pugh*, No. 15-CR-116 (NGG), 2015 U.S. Dist. LEXIS 170271, at *54-55 (E.D.N.Y. Dec. 21, 2015) ("Accordingly, this structure suggests that subsections (1) and (2) of Section 1512(c) outlining two separate ways

that a person can corruptly violate the statute."). Importantly, the understanding by President Bush and the DOJ upon enactment in 2002 was that the DOJ had to show the defendant's mens rea to obstruct justice. Grievance speech, under First Amendment protest, including expressive conduct a defendant believes is legal, cannot equal obstruction of Congress for mens rea or within the law's intent by the legislature and the President.

### 5. The Government's Interpretation Violates the Canons of *Noscitur A Sociis* and *Ejusdem Generis*.

That Congress only intended for § 1512(c)(2) to apply to conduct that resembles the specific acts listed in § 1512(c)(1) in some way (other than misapplied to make a felony any conduct that disrupts a proceeding) is required by the application of the interpretative canons of *noscitur a sociis* and *ejusdem generis* as illustrated by *Yates v. United States*, 135 S.Ct. 1074 (2015) and *Begay v. United States*, 553 U.S. 137 (2008).

In *Yates*, fishermen threw grouper overboard when they were about to be caught with under-sized fish. They were charged with Section 1519 - a felony carrying up to a twenty-year sentence. *Yates* at 1520. 18 U.S.C. § 1519 made it a crime to "alter[],destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] false entry in any record, document, or tangible object" in relation to certain types of investigations, matters, and cases. 18 U.S.C. § 1519. In reversing the Eleventh Circuit's judgment, a four-Justice plurality of the Supreme Court noted that 18 U.S.C. § 1519 was created through the Sarbanes-Oxley Act ((the same act that created 18 U.S.C. §1512(c), the act where Mr. Goodwyn is charged, without any involvement with documents)).

The plurality noted that the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, LLP, had systematically destroyed potentially incriminating documents." *Yates*, 135 S.Ct. 1081. With this backdrop, the plurality determined that the term "tangible object" in § 1519

is only meant to refer to tangible objects that are of a type with a "record" or "document" and not just to "all objects in the physical world." *Id*. at 1081. The four-Justice plurality indicated that this conclusion was compelled by use of the interpretive canons of *noscitur a sociis* (it is known by its company) and *ejusdem generis* (of the same kind). *Id*. at 1085-86. In this, they were joined by a fifth Justice. *Id*. at 1089-90. To show how reading Sections (c)(1) and (c)(2) as disjointed creates an absurdity, upon review of the rest of the statute that harmonizes like "things" in each section where what the section is intended to address is clear, *Miller* aptly observed that the government's construction of § 1512(c)(2) presumes Congress would "hide [an] elephant in [a] mousehole." 2022 U.S. Dist. LEXIS 45696, at *29.

As the plurality in Yates explained, under the noscitur a sociis canon, a term should not be ascribed "a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id*. at 1085 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Under the *ejusdem generis* canon, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id*. at 1086 (quoting *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2008)) ("[usually]" added in *Yates*). By applying the *noscitur a sociis* canon and the *ejusdem generis* cannon to "any record, document, or tangible object" in § 1519, the four-Justice plurality and the concurring Justice determined that "tangible object" should not be understood to be something of a type different than "record" or "document." *Yates*, 135 S.Ct. 1087, 1089.

*Begay* concerned the interpretation of an "otherwise" clause in 18 U.S.C. § 924(e)(2)(B). In *Begay*, the issue was whether DUI for example fell under the "otherwise" section after specific

violent crimes were listed. *Begay* held that the proximity of the listed crimes "burglary, arson, extortion, or crimes involving the use of explosives" to a general crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was sufficient to "indicate[] that [the 'otherwise' clause] covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142. Specifically, even though DUI posed a serious risk of injury, the Court found "that DUI falls outside the scope of clause (ii). It is too unlike the provision's listed examples [burglary, arson, extortion, or crimes involving explosives] for us to believe that Congress intended the provision to cover it." *Id.* at 142.

Congress does not write criminal laws where people must read caselaw over  twenty years to know what the newest interpretation will be and what violates the law from year to year. Because of the Canons of *Noscitur A Sociis* and *Ejusdem Generis*, the meaning of Section 1512(c)(1)-(2) clearly operate together and cannot now be interpreted to infer Congress meant something that it never wrote. There is no hidden elephant. Thus, Count One should be dismissed.

**6.  The Government's Construction of § 1512(c)(2) Creates Surplusage**

Accepting the Government's construction for § 1512(c)(2) creates surplusage for almost the entirety of § 1512. The canon against surplusage holds that "all words in a statute are to be assigned meaning, and that nothing therein is to be construed as 'surplusage.'" *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (quoting *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)). "[T]he canon . . . is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013) (emphasis added). If § 1512(c)(2) covers every and any act that obstructs,

influences, or impedes an official proceeding, which can involve no witnesses or documents, then seven of the provisions are rendered superfluous and run afoul of § 1512(c)2). :§§ 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), 1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1).

Because the Government's interpretation of Section 1512(c) creates surplusage - where the above sections are duplicative in effort, the majority of Section 1512 is unconstitutional. This is absurdly outside the legislative intent but thus far the D.D.C. by a majority has ignored the the intent and language of the statute. Count One of the Indictment should be dismissed.

**7.  <u>Review of all of § 1512 Shows the Government Interpretation of § 1512(c) is Wrong</u>.**

A review of § 1512(a), (b), and (d) shows that each provision proscribes only conduct that is intended to cause the suppression or corruption of testimony, evidence, and information that could be relevant at an official proceeding: § 1512(a) proscribes murder or attempted murder, and the use of force, threats of force, or attempts to use force or threats of force that has such intent; § 1512(b) proscribes intimidation, threats, and corrupt persuasion that has such intent, and § 1512(d) proscribes harassment that has such intent.

Congress's insertion of the current § 1512(c) into the scheme that included the above three provisions shows that it intended for § 1512(c) as whole to only address conduct that might affect the evidence an official proceeding would review—not all conduct that affects or can affect an official proceeding as a general matter. Because of arbitrary decisions the Government makes for construing actions as meeting the elements of Section 1512(c)(2), its incorrect construction of the language, and failure to look at the legislative history, the Government failed to correctly apply the statute. And because of the incorrect and arbitrary application, Mr. Goodwyn cannot have known at the time if he violated the law, and what he is supposed to defend against.

Section 1512(c)(2) requires an act against documents. Mr. Goodwyn is not charged with such offense, nor did he commit such offense. Count One for 1512(c)(2) and Section 2 should be dismissed because neither he nor any person can have known what acts would violate the law; the statute is being applied unconstitutionally, and the Government and D.D.C. are using a faulty construction of the language where they can make anything a crime in violation of Section 1512(c), while Mr. Goodwyn's admitted conduct is beyond the reach of what was the intended construction of the law. Mr. Goodwyn is not charged with committing the acts, or having the *mens rea*, required for 1512(c)(2). Because of this, Count One should be dismissed.

### C. Count One Provides No Specifics Mr. Goodwyn Can Defend Against as to Intent.

Section 1512(c) is a specific intent crime. Mr. Goodwyn had to demonstrate a specific intent to do something against the Electoral count. Under *Aguilar* (that used the old Section 1515 prior to 1512(c)(2) post-Enron), Mr. Goodwyn would have had to know his actions would likely cause an effect that obstructed the counting. The Second Circuit cases logically found there must be a nexus with the obstructive act and the proceeding. Count One provides no nexus and does not say what act obstructed anything. Other than saying the crime was around January 6, 2021 in either D.C. or elsewhere, the indictment does not say specifically how, when and where he allegedly committed any act, and what he wanted as an outcome of the act, i.e., the link between intent and some obstructive act and its likelihood of affecting the proceeding. The indictment says nothing about specific intent other than to regurgitate that the law that says "corruptly." Even if the Grand Jury was told Mr. Goodwyn went inside the building, Section 1512(c) is not a strict liability crime. "Going inside the building" without any intent to trespass could equate to "trespass" if such a federal law existed. Under common law, trespass requires no intent. Section 1512 is not about trespass and facts related to intent must be identified for a defense.

There is no indication that the Grand Jury members ever had the law explained to them. There is no indication the Grand Jury ever received evidence of intent - which they could not have, because there never was any spoken or written intent to obstruct anything. The indictment fails to say what Mr. Goodwyn did that obstructed anything, making it absurd that intent could have been provided to the Grand Jury. Even considering a brief foray into the building through an open door at 3:32 p.m., which is not contained in Count One, no intent can be created to obstruct when no such intent existed. The actus reus cannot form intent. It follows that the DOJ likely presented Section 1512 as a strict liability crime where some unstated act automatically obstructed a proceeding that was no longer in progress. This is another absurdity in an indictment that lists no specific intent or specific act. Because nobody could know what is criminal conduct and intent here, and what to defend, the Count must be dismissed.

Mr. Goodwyn entered the Capitol at 3:32 p.m. after Congress went into recess and had departed at 2:20 p.m. He was inside at most forty seconds according to CCTV. He immediately obeyed the USCP officer's order to leave. He committed no violence or property damage. He encouraged nobody to do anything illegal. Further, his texts show intent to support objections raised by members of Congress, and for the objections to lead to investigation either centrally or back at state legislatures. His communications show no intent to stop or obstruct anything. Since the objections in Congress are legal under the Electoral Vote Count Act, his First Amendment support for legal measures within the Act were themselves fully legal.

A review of the entire indictment indicates the Grand Jury may not have received proper instructions for the counts that required intent. The Indictment's titles for Section 1752 counts at the top of the indictment and then under each listed paragraph for the count mysteriously omit the word "Knowingly." "Knowingly" in fact is the first word in the titles of the crimes charged and

should not be omitted.  "Knowingly" is a required mens rea and is an element of the alleged Section 1752 crimes. The same is true for the 40 U.S.C. 5104 charges. Within the paragraphs for the other counts, the word knowingly is used as a legal conclusion, without any specific facts to show intent. The writing of the other charges within the Indictment infers that the Grand Jury was not instructed on the requirement for specific intent as an element of the alleged crimes, and for specific facts regarding intent. This matches what appears in Count One where "corruptly" is omitted as part of the title and is treated as a legal conclusion with no facts.

Because Count One is defective in identifying specifics for how any act by Mr. Goodwyn attempted to or did affect the Electoral Count, and where no facts show he knew some unidentified act would have an effect, there can be no nexus between the act and the "proceeding." There was no showing that he knew the *unidentified act* would cause the *unidentified effect*, where *Aguilar* requires that showing. The Indictment shows no effect, let alone any contemplation of any effect by Mr. Goodwyn. He made no plans to go inside and led nothing for anyone else who entered the building. He briefly spoke into a bullhorn someone else handed to him, where nothing indicates anyone in the large crowd outside paid him any attention. Even considering in arguendo that Mr. Goodwyn's 38-40 seconds inside the Capitol was the act used by the Grand Jury, there can be no showing that he had any intent to obstruct or even delay anything, and that his short walk inside could ever be construed to have caused any effect that he contemplated in advance.  Because no intent existed, and there is no evidence of intent to obstruct, nor can any unnamed act be shown to have had any effect on the certificate counting, the Indictment's Count One must be dismissed.

**D.  The Electoral Count is not a Proceeding as Contemplated When Section 1512(c) Was Passed.**

The counting of the Electoral College votes by the Vice President is conducted pursuant to the Twelfth Amendment to the U.S. Constitution and the rules spelled out in 3 U.S.C. § 1 et seq. The actual meeting to count the Electoral College votes is conducted pursuant to 3 U.S.C. § 15. At such a meeting of both houses of Congress, "certificates of electoral votes" are "presented" to the Vice President by "tellers" on a state-by-state basis and "read… in the hearing of the two Houses." After such reading of the certificates of electoral votes from each state, the votes are then "counted… and delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States." *Id*. This procedure allows for no exercise of discretion or judgment on the parts of the tellers and the President of the Senate, *id.*, and their roles must therefore be regarded as purely ceremonial or ministerial.

"Ministerial describes an act or a function that conforms to an instruction or a prescribed procedure. It connotes obedience. A ministerial act or duty is a function performed without the use of judgment by the person performing the act or duty."[14] "MINISTERIAL. . . . as opposed to judicial; as, the sheriff is a ministerial officer bound to obey the judicial commands of the court. When an officer acts in both a judicial and ministerial capacity, he may be compelled to perform ministerial acts in a particular way; but when he acts in a judicial capacity, he can only be required to proceed; the manner of doing so is left entirely to his judgment."[15]

There is significant case history prior to January 6, 2021, articulating what a "proceeding" is under 1512(c)(2), none of which, includes an electoral count. The necessary requirements for

---

[14] West's Encyclopedia of American Law, edition 2. Copyright 2008 The Gale Group, Inc.
[15] https://legal-dictionary.thefreedictionary.com/Ministerial

the sufficiency of an official proceeding are (1) a witness and (2) evidence through testimony or documents under Section 1512. There is not a single mention of a witness in the Electoral Count Act, nor is there any mention of evidence. There is instead, a scripted procedure that the Vice President reads. While there was an objection to the votes from Arizona on January 6th prior to "evacuation," the thing cut short was a debate in each house and a vote as to whether to accept the certificates. No witnesses were scheduled. The Secretaries of State who certified the electors' certificates were not present. Debate was going to include words, but no document evidence was going to be provided.

A "proceeding" cannot simultaneously be both a proceeding where decisions and judgments are made and a ceremony where there is no discretion, decision, or judgment. In his letter dated January 6, 2021, Vice President Pence wrote that his role was largely ceremonial. The Congress recently engaged in revision work for the Electoral Count Act, where the word "ministerial" will be included to solidify that there is no decision-making. The use of "proceeding" to describe a function where no decisions were to be made by a master of ceremonies or the electoral vote talliers, and where everything was scripted for a ceremony, with not a single witness, does not meet the historical usage that required hearings and evidence for a proceeding. The operative terms prior to Section 1512 as rewritten to incorporate Section 1519 and Section 1505 were "hearing" and "evidence." January 6, 2021, was not a hearing and there was no evidence to be presented by a witness or document. The debate for any objections did not involve any witnesses or documents. Because there was no proceeding with witnesses and evidence, Count 1 must be dismissed.

**V.     CONCLUSION**

Because Count One of the Indictment fails to state any specific fact where Mr. Goodwyn's actions fall within the ambit of conduct that is necessary for the triggering of statute 1512(c)(2), and application of the statute is applied unequally for similarly situated persons; where its capricious and arbitrary use makes it void for vagueness as applied within the D.D.C. because nobody can know what is criminal under Section 1512(c)(2), and no facts specify who was aided to do anything at any time, Mr. Goodwyn's motion to dismiss should be granted.

WHEREFORE, Defendant Daniel Goodwyn respectfully moves this Honorable Court to dismiss Count One of the Indictment for failure to state an offense for 18 U.S.C. Section 1512 (c)(2) and 18 U.S.C Section 2; and for unconstitutional application of both statutes.

September 30, 2022                    Respectfully submitted,
                                      /s/ Carolyn A. Stewart

                                      Carolyn A. Stewart, Bar No. FL-0098
                                      Defense Attorney
                                      Stewart Country Law PA
                                      1204 Swilley Rd.
                                      Plant City, FL 33567
                                      Tel: (813) 659-5178
                                      E: Carolstewart_esq@protonmail.com


Dated September  30, 2022             Respectfully submitted,
                                      /s/ Joseph D. McBride, Esq.

                                      Joseph D. McBride, Esq.
                                      Lead Defense Attorney
                                      Bar ID: NY0403
                                      THE MCBRIDE LAW FIRM, PLLC
                                      99 Park Avenue, 6th Floor
                                      New York, NY 10016
                                      p: (917) 757-9537
                                      e: jmcbride@mcbridelawnyc.com


## CERTIFICATE OF SERVICE

I hereby certify on the 30th day of September 2022, a copy of the foregoing was served

upon all parties as forwarded through the Electronic Case Filing (ECF) System.

                         /s/ Carolyn A. Stewart

                         Carolyn A. Stewart, Bar No. FL-0098
                         Defense Attorney