**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-153 (RBW)** |
| **v.** | : | |
| | : | |
| **DANIEL GOODWYN,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE TO**
**PRECLUDE CERTAIN LANGUAGE, TERMS AND FALSE ASSOCIATIONS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to Defendant Daniel Goodwyn's (hereinafter, "Defendant Goodwyn") Motions in Limine to preclude the government from using certain language, terms, and false associations (Def. Motion, ECF No. 60, hereinafter "Def. Mot."). Defendant Goodwyn asks this Court to preclude seven items in his motion: (1) the government from using terms such as "terrorists," "mob," "rioter," "traitor," "terrorism," "insurrection," "Proud Boys," or other similar terms, to describe him, the group that assaulted the Capitol, and the events of January 6, 2021, (2) any references to places and events in the Capitol building or grounds that he did not set foot on or participate in, (3) summary witnesses testifying to the events surrounding January 6 that he claims are unrelated to him or his charges, (4) any news reports, affidavits, or video from after January 6, 2021, that mention police personnel who died as a result of January 6 events, (5) any reference to lawsuits or the impeachment of President Trump, (6) photographs, videos, texts, messages, and emails taken from Defendant Goodwyn's telephone regarding his personnel life, and (7) any reference to his 2nd Amendment opinions, events and groups that he supported, spoke at, or wrote about. The first three items Defendant Goodwyn asks this Court to exclude either lack merit or are premature. The government does not anticipate

introducing evidence of the remaining items unless Defendant Goodwyn opens the door through evidence or argument.

## **FACTUAL BACKGROUND**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.

Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

Following the 2020 Presidential Election, Defendant Goodwyn made numerous statements on social media about his opposition to the election results and his plan to be in Washington, D.C. on November 7, 2020, and January 6, 2021.  For example, On November 7, 2020, Defendant Goodwyn posted a picture on Twitter of the Proud Boys logo and stated, "Stand back and stand

by! Show up at your state Capitol at noon today local time. Await orders from our Commander in Chief. #StopTheSteal StopTheSteal.US."

On or about November 21, 2020, Defendant Goodwyn traveled to the Georgia State Capitol building in Atlanta, Georgia to protest Georgia's certification of their state vote for the 2020 Presidential election. While there, he gave an interview at the protest and stated he was "just at the million MAGA march in Washington, D.C." and drove "from San Francisco . . . across the country." After the protest, Defendant Goodwyn posted a story to his social media account showing the Atlanta, Georgia protest with the Beatles song "Revolution" playing over the video. The words he selected to play over the video stated, "You say you want a Revolution . . . ."

On November 28, 2020, the Defendant Goodwyn posted to Twitter stating, "#FightForTrump" and "#StopTheSteal." He also linked a GiveSendGo account where he was soliciting donations to fund his trip to Washington, D.C. on January 6, 2021.

On December 15, 2020, Defendant Goodwyn participated in a group text message discussing the 2020 election. In this group message, he shared a link to a press release by former President Donald Trump legal team titled "Trump Legal Team Statement on Safe Harbor Deadline." The Safe Harbor deadline is the deadline for the states to certify their election results. Later that day, Defendant Goodwyn wrote in the same group message, "The electoral votes will be counted on January 6th by congress, overseen by US Senate president Mike Pence."

On January 2, 2021, Defendant Goodwyn shared a news article to the group message titled, "GOP Senators, led by Cruz, to object to Electoral College Certification, demand emergency audit."

On January 6, 2021, he was among the crowd present on the restricted Capitol grounds and approached the Capitol building from the West side, traveling east. While approaching, he utilized

a bullhorn to encourage other rioters to enter the Capitol.  Defendant Goodwyn stated, "Behind me, the door is open . . . The door is open, we need you to push forward, forward . . . for this to work. Go behind me and go in.".

At approximately 3:32 p.m., Defendant Goodwyn entered the U.S. Capitol through the Senate Wing Door with a crowd of rioters.  Defendant Goodwyn was told to leave the Capitol by a police officer.  At 3:33 p.m., he then walked backout the Senate Wing doors and told officers they were "Oath breakers."

On   January   6,   Goodwyn   sent   and   received   a   number   of   text messages. For example, at 3:39 p.m., he was asked "Hey where are you?" Goodwyn responded, "Capitol" and "I went inside." The other person replied, "Inside where?" Goodwyn responded, "The capitol building." When asked why he was inside, Goodwyn sent a news article about Vice President Pence and the Electoral College certification and stated, "That's what we were doing." At 4:03 p.m., Goodwyn messaged another correspondent that "Patriots rushed the Capitol."

On January 6, at 9:41 p.m., Goodwyn posted on Twitter, "They WANT a revolution. They're proving our point. They don't represent us. They hate us. [link to twitter user DrewHLive's status, now unavailable]."  On January 6, 2021 at 10:26 p.m., Goodwyn sent a message stating, "People are saying antifa dressed up and did stuff today. Not true. Today was patriots who were fed up. I know them. I saw them. I went in the Capitol. Trump supporters weren't violent. Nobody got hurt by them. Nothing set on fire. No Nikes looted. Just a few windows broken of the Capitol building."

## PROCEDURAL BACKGROUND

On February 24, 2021, the grand jury returned a five-count indictment charging Defendant Goodwyn with one count of obstruction of an official proceeding and aiding and abetting, in

violation of 18 U.S.C. § 1512(c)(2) and 2 (Count One); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); one count of disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). *See* ECF No. 6. On November 10, 2021, the grand jury returned a superseding indictment that updated the charging language of certain counts but made no other substantive changes. *See* ECF No. 34.

On September 30, 2022, Defendant Goodwyn filed this motion in limine. *See* ECF 60.

## ARGUMENT

Defendant Goodwyn seeks to limit relevant evidence and fails to meet the high burden of Fed. R. Evid. 403. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule if that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, --- F.3d --- , 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022)

Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports Defendant Goodwyn's requested relief. Evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990). Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *United States*

*v. Cassell,* 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).  "Rule 403 establishes a high barrier to justify the exclusion of evidence.." *United States v. Lieu,* 963 F.3d 122, 128 (D.C. Cir. 2020).

I.     **The Descriptors Accurately Describe the Events of January 6 and the Federal Rules of Evidence Do Not Preclude Them.**

What took place at the Capitol on January 6, 2021, may be properly described as a riot, breach, assault, or insurrection.  Thousands of people forced their way into the Capitol building during the constitutionally mandated process of certifying the Electoral College votes, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred law enforcement officers, and caused more than two million dollars in damage and loss.  This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).

Defendant Goodwyn argues that he is not charged with insurrection, seditious conspiracy, terrorism, or inciting a riot.  (Def. Mot. at 1, 4).  However, he is charged with corruptly obstructing, influencing, or impeding Congress's certification of the Electoral College vote (Count One), being on restricted grounds of the Capitol and being disorderly or disruptive on Capitol grounds (Counts Two and Three), and disorderly conduct and parading, demonstrating, or picketing in a Capitol building (Counts Four and Five).  Defendant Goodwyn's conduct that makes up these charges took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach

the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).  While a jury will judge the Defendant Goodwyn based on his own actions, the context of his actions will necessarily be placed before them.  And that context was a riot.  Defendant Goodwyn provides no legal authority in support of his broad claim that witnesses and government prosecutors must only describe these events using certain words.

Defendant Goodwyn also cites several phrases, such as, "white supremacy/supremacists" and various COVID-19 related phrases. The government does not intend to discuss COVID-19 or "white supremacy" unless the Defendant Goodwyn introduces evidence or discusses these matters in opening statements or closing arguments that makes these topic areas relevant.

Lastly, Defendant Goodwyn also argues that the Court should limit the use of language related to groups such as the "Three Percenters, Proud Boys and Oath Keepers."  (Def. Mot. At 1). On November 7, 2020, Defendant Goodwyn posted a picture on Twitter of the Proud Boys logo and stated, "Stand back and stand by! Show up at your state Capitol at noon today local time. Await orders from our Commander in Chief. #StopTheSteal! StopTheSteal.US."  Defendant also took part in several group messages with discussing the Proud Boys. That said, the government does not anticipate introducing evidence or making argument that Defendant Goodwyn is a member of the Proud Boys, except his one tweet on November 7, 2020,[1] unless Defendant

---

[1] The government does not intend to argue that Defendant Goodwyn is a member of the Proud Boys based on this one tweet or his participating in group messages related to the Proud Boys.

Goodwyn introduces evidence or makes argument related to him having no connection to the Proud Boys.

Terms describing the riot or mob are relevant and Defendant Goodwyn does not meet the high burden of baring the government from using certain terms under Fed. R. Evid. 403.

## II.      Actions of Other Rioters at the Capitol are Relevant.

Defendant Goodwyn does not get to use the mob as a sword to storm the Capitol and then as a shield to prevent the government from showing the context surrounding his actions on January 6, 2021.  Defendant Goodwyn argues that the actions of other rioters in other areas should be excluded under Fed. R. Evid. 401 and 403.  Defendant Goodwyn's conduct that makes up these charges took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings.

The government does not anticipate making areas of the Capitol Defendant Goodwyn did not go a focus of the trial.  However, in order to show the overall riot, its effects, and why the certification of the Electoral College vote was suspended, the government will show the actions of other rioters in other areas of the Capitol building and grounds.  Defendant Goodwyn will be held responsible for his actions, but the actions of the mob that day is needed for the jury to receive a complete picture of what took place at the Capitol that day.

Even if this Court found the actions of other rioters were prejudicial, a limiting instruction would be the appropriate remedy.  The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice.  *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d

at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

Thus, because the actions of other rioters are relevant and not unduly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.

### III. Summary Witnesses Testimony Regarding January 6 will Provide Context of what Happened that Day.

Defendant Goodwyn does not elaborate on his request to limit summary witness testimony beyond his two-sentence request.  Def. Mot. at 1-2.  If Defendant Goodwyn's argument refers to the government's use of a U.S. Capitol Police overview or U.S. Senate witness to discuss the overall riot and perimeter of the Capitol or what took place in the joint session of Congress, as discussed above, the actions of the mob provide context and are relevant to proving the charges against Defendant Goodwyn.  The actions of the mob and the effect it had on the certification of the Electoral College vote are relevant to prove Count One.  ECF 34 at 1. As discussed above, the actions of the mob directly relate to the Defendant Goodwyn's charges and provide context to Defendant Goodwyn's actions that day.  If Defendant Goodwyn seeks to bar other evidence, the government would ask this court to deny his request for failing to "state the grounds on which it is based and the relief or order sought."  Fed. R. Crim. Pro. 47(b).

### CONCLUSION

To accurately present the context of what took place at the Capitol on January 6, 2021, to wit: a riot, a breach, an assault and an insurrection, the government is required to so refer and Defendant Goodwyn's motion to preclude such language should be denied.  Additionally, the conduct of other rioters is relevant to provide context and to show why the certification of the Electoral College vote obstructed, influenced, or impeded by Defendant Goodwyn and the rioters

he encouraged to breach the Capitol.   The government requests the Court deny Defendant

Goodwyn's motion to exclude such evidence.


Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:    /s/ Brian Brady
Brian Brady
Trial Attorney, Department of Justice
DC Bar No. 1674360
1301 New York Ave. N.W., Suite 800
Washington, DC 20005
(202) 834-1916
Brian.Brady@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

*/s/ Brian Brady*
Brian Brady
Trial Attorney