## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-153 (RBW) |
| v. : | |
| : | |
| DANIEL GOODWYN, : | |
| : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE TO PRECLUDE IRRELEVANT WITNESSES AND EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to Defendant Daniel Goodwyn's (hereinafter, "Defendant Goodwyn") Motions in Limine to preclude the government from using certain language, terms, and false associations (Def. Motion, ECF No. 61, hereinafter "Def. Mot."). Defendant Goodwyn asks this Court to preclude eight items in his motion:

(1) the actions of law enforcement officers and their interactions with other protestors at the U.S. Capitol on January 6, 2021, whether by video, audio, document, or witness testimony unless the actions specifically involve Mr. Goodwyn at his location; (2) the actions of protesting crowd members at other, unrelated sites and events whether on or off the U.S. Capitol grounds unless there is direct involvement by Mr. Goodwyn related to the charges against him; (3) any threats perceived by members of Congress from protestors; (4) any expert witness on crowd violence and threats; (5) any testimony or evidence concerning police injuries; (6) any witness testimony or evidence related to damage to any doors, windows, or property inside the Capitol; (7) claiming or insinuating that he ever had direct contact with President Trump; and (8) actions and words by others that manufactures

> unconstitutional guilt by association as to what others did, said, or otherwise opined, and where he did not affirmatively adopt anything.

Def. Mot. at 1. Regarding categories four and seven of Def. Mot., the government does not anticipate calling any expert witnesses or introducing evidence Defendant Goodwyn had direct contact with President Trump. Defendant Goodwyn's remaining arguments either lack merit or are premature.

## FACTUAL BACKGROUND

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.

Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

Following the 2020 Presidential Election, Defendant Goodwyn made numerous statements on social media about his opposition to the election results and his plan to be in Washington, D.C.

on November 7, 2020, and January 6, 2021. For example, On November 7, 2020, Defendant Goodwyn posted a picture on Twitter of the Proud Boys logo and stated, "Stand back and stand by! Show up at your state Capitol at noon today local time. Await orders from our Commander in Chief. #StopTheSteal StopTheSteal.US."

On or about November 21, 2020, Defendant Goodwyn traveled to the Georgia State Capitol building in Atlanta, Georgia to protest Georgia's certification of their state vote for the 2020 Presidential election. While there, he gave an interview at the protest and stated he was "just at the million MAGA march in Washington, D.C." and drove "from San Francisco . . . across the country." After the protest, Defendant Goodwyn posted a story to his social media account showing the Atlanta, Georgia protest with the Beatles song "Revolution" playing over the video. The words he selected to play over the video stated, "You say you want a Revolution . . . ."

On November 28, 2020, the Defendant Goodwyn posted to Twitter stating, "#FightForTrump" and "#StopTheSteal." He also linked a GiveSendGo account where he was soliciting donations to fund his trip to Washington, D.C. on January 6, 2021.

On December 15, 2020, Defendant Goodwyn participated in a group text message discussing the 2020 election. In this group message, he shared a link to a press release by former President Donald Trump legal team titled "Trump Legal Team Statement on Safe Harbor Deadline." The Safe Harbor deadline is the deadline for the states to certify their election results.

Later that day, Defendant Goodwyn wrote in the same group message, "The electoral votes will be counted on January 6th by congress, overseen by US Senate president Mike Pence."

On January 2, 2021, Defendant Goodwyn shared a news article to the group message titled, "GOP Senators, led by Cruz, to object to Electoral College Certification, demand emergency audit."

On January 6, 2021, he was among the crowd present on the restricted Capitol grounds and approached the Capitol building from the West side, traveling east. While approaching, he utilized a bullhorn to encourage other rioters to enter the Capitol. Defendant Goodwyn stated, "Behind me, the door is open . . . The door is open, we need you to push forward, forward . . . for this to work. Go behind me and go in.".

At approximately 3:32 p.m., Defendant Goodwyn entered the U.S. Capitol through the Senate Wing Door with a crowd of rioters. Defendant Goodwyn was told to leave the Capitol by a police officer. At 3:33 p.m., he then walked backout the Senate Wing doors and told officers they were "Oath breakers."

On January 6, Goodwyn sent and received a number of text messages. For example, at 3:39 p.m., he was asked "Hey where are you?" Goodwyn responded, "Capitol" and "I went inside." The other person replied, "Inside where?" Goodwyn responded, "The capitol building." When asked why he was inside, Goodwyn sent a news article about Vice President Pence and the Electoral College certification and stated, "That's what we were doing." At 4:03 p.m., Goodwyn messaged another correspondent that "Patriots rushed the Capitol."

On January 6, at 9:41 p.m., Goodwyn posted on Twitter, "They WANT a revolution. They're proving our point. They don't represent us. They hate us. [link to twitter user DrewHLive's status, now unavailable]." On January 6, 2021 at 10:26 p.m., Goodwyn sent a message stating,

"People are saying antifa dressed up and did stuff today. Not true. Today was patriots who were fed up. I know them. I saw them. I went in the Capitol. Trump supporters weren't violent. Nobody got hurt by them. Nothing set on fire. No Nikes looted. Just a few windows broken of the Capitol building."

## PROCEDURAL BACKGROUND

On February 24, 2021, the grand jury returned a five-count indictment charging Defendant Goodwyn with one count of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count One); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); one count of disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five). *See* ECF No. 6. On November 10, 2021, the grand jury returned a superseding indictment that updated the charging language of certain counts but made no other substantive changes. *See* ECF No. 34.

On September 30, 2022, Defendant Goodwyn filed this motion in limine. *See* ECF 61.

## ARGUMENT

Defendant Goodwyn seeks to limit relevant evidence and fails to meet the high burden of Fed. R. Evid. 403. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule if that relevant evidence is admissible," *United States v.*

*Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, --- F.3d ---, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022)

Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports Defendant Goodwyn's requested relief. Evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990). Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *United States v. Cassell,* 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original). "Rule 403 establishes a high barrier to justify the exclusion of evidence.." *United States v. Lieu,* 963 F.3d 122, 128 (D.C. Cir. 2020).

**I.  The Action of Other Rioters is Relevant to Show the Effect of the Mob and to Show Context of Defendant Goodwyn's Actions that Day.**

Defendant Goodwyn's first, second, and eighth categories all address the similar issue of the relevance of the other rioters' actions. These same arguments were made in Defendant Goodwyn's other *motion in limine* and fail for the same reasons. *See* ECF 60.

Defendant Goodwyn does not get to use the mob as a sword to storm the Capitol and then use the mob as a shield to prevent the government from showing the context surrounding his actions on January 6, 2021. Defendant Goodwyn argues that the actions of other rioters in other

6

areas should be excluded under Fed. R. Evid. 401 and 403.  Defendant Goodwyn's conduct took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).  While a jury will judge the Defendant Goodwyn based on his own actions, the context of his actions will necessarily be placed before them.  And that context was a riot.

The government does not anticipate making other rioter's interactions with law enforcement or areas Defendant Goodwyn did not go a focus of the trial.  However, to show the overall riot, its effects, and why the certification of the Electoral College vote was obstructed, the government will show the actions of other rioters in other areas of the Capitol building and grounds, as well as their interactions with law enforcement.  Defendant Goodwyn will be held responsible for his actions, but the actions of the mob that day are needed for the jury to receive a complete picture of what took place at the Capitol that day.

Even if this Court found the actions of other rioters were prejudicial, a limiting instruction would be the appropriate remedy.  The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice.  *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d

at 590 (same); *United States v. Crowder*, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

Thus, because the actions of other rioters are relevant and not unduly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.

## II.     Threats made to Members of Congress may become Relevant

First, Defendant Goodwyn's motion is premature and should be held in abeyance until the government provides its evidence list. Without identifying a specific video or piece of evidence, there is no way for the Court to weigh the probative value against any danger of unfair prejudice.

Second, the government will not make this a focus of its case, but it may introduce evidence of the various chants the mob participated in. This is relevant if Defendant Goodwyn was present for any of these chants and then subsequently encouraged the mob to enter the Capitol building "for this to work." Defendant Goodwyn encouraged the mob, some of which had engaged in violent acts with police or had made various chants regarding elected officials, to breach the Capitol. Threats from the mob are relevant and Defendant Goodwyn fails to overcome the balancing test to exclude the evidence under Fed. R. Evid. 403. Lastly, the government does not intend to call any member of Congress to discuss their perceptions.

Defendant Goodwyn's request is premature and should be held in abeyance until he can specifically identify evidence the government intends to introduce.

## III.    <u>Testimony Regarding Injuries to Law Enforcement is Relevant</u>

The government does not anticipate making injuries to law enforcement officers a focus of the trial. However, to show the overall riot, its effects, and why the certification of the Electoral

College vote was obstructed, the government will introduce evidence that law enforcement officers were injured during their battles with members of the mob on January 6, 2021.

Defendant Goodwyn may argue he did not know he was on restricted grounds, that he thought he was lawfully present at the Capitol building and grounds. However, to get to the Senate Wing door, where he entered the Capitol, he would have seen police battling with rioters, using riot control measures, and/or being injured. Seeing this and then encouraging the same mob to enter the Capitol is relevant to show he intended to obstruct, interfere, or impede with Congress's certification of the Electoral College's vote (Count One) and that he did not have lawful authority to be on Capitol grounds (Counts Two and Three).

As discussed above, even if this Court found that evidence of injuries to officers was prejudicial, a limiting instruction would be the appropriate remedy.

Defendant Goodwyn will be held responsible for his actions, but the actions of the mob that day, including injury to officers, is needed for the jury to receive a complete picture of what took place at the Capitol that day.

### IV. Damage to the Capitol is Relevant to Show the Effects of the Mob and Defendant Goodwyn's Knowledge that he was on Restricted Grounds

Damage to the Capitol is relevant to show the effect of the riot, how Congress's certification of the Electoral College vote was obstructed, influenced, or impeded, and to show Defendant Goodwyn knew he was unlawfully present at the Capitol building and grounds. At the time Defendant Goodwyn entered the Capitol, the windows were broken, stickers were placed on the building, fire alarms were loudly ringing, officers were in riot gear, and there was blood on the steps of the Capitol. Evidence of the property damage at the Capitol is relevant to show why

legislators needed to flee from their Constitutional and statutory duties that day and delay the Certification proceeding.

It is also relevant to show that Defendant Goodwyn knew he was not allowed to be in the Capitol or on Capitol grounds that day.  To get to the Senate Wing door, Defendant Goodwyn likely would have seen blood on the ground, broken windows, and heard the loud fire alarms ringing.  Seeing this and then encouraging the same mob to enter the Capitol is relevant to show he intended to obstruct, interfere, or impede with Congress's certification of the Electoral College's vote (Count One) and that he did not have permission to be present on Capitol grounds (Counts Two and Three).

## CONCLUSION

The actions of other rioters are relevant to provide context and to show why the certification of the Electoral Colleges' vote obstructed, influenced, or impeded by this Defendant Goodwyn and the rioters he encouraged to breach the Capitol.  Threats to members of Congress, police injuries, and damage to the Capitol are relevant to prove Defendant Goodwyn obstructed, interfered, or impeded Congress and he was unlawfully present on restricted grounds. The government requests the Court deny Defendant Goodwyn's motion to exclude such evidence.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Brian Brady*
Brian Brady
Trial Attorney, Department of Justice
DC Bar No. 1674360
1301 New York Ave. N.W., Suite 800
Washington, DC 20005
(202) 834-1916
Brian.Brady@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 28, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

                                              */s/ Brian Brady*
                                              Brian Brady
                                              Trial Attorney