UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00153 (RBW) |
| | ) | |
| DANIEL GOODWYN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OMNIBUS RESPONSE TO GOVERNMENT'S MOTIONS IN LIMINE AT ECF NUMBERS 57 AND 58**

Comes now the Defendant, Daniel Goodwyn by and through undersigned counsel, and respectfully and submits this Omnibus Response to the Government's motions filed on September 30, 2022 (ECF 57-58). In response, Mr. Goodwyn asserts the following:

**I. ECF Number 57 - Government's Motion in Limine Regarding Cross-Examination of Secret Service.** In the motion, the government moved to limit the cross-examination of witnesses with the U.S. Secret Service Agency (USSS), pursuant to Fed. R. Evid. Rules 401, 403, and 611(b). This impacts Mr. Goodwyn who is charged with knowingly being on restricted grounds, and where the USSS has information regarding restricted areas for personnel it protects.

The motion states that the Defendant should be specifically foreclosed from questioning the witnesses about the following:

1. Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur;

2. Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

Mr. Goodwyn has no requirement to cross-examine about protocols that specifically address security details that are not readily observable to the public or to commercial or foreign entities. The two limitations listed above should not be expanded or broadly interpreted during cross-examination to exclude other questions, such as how large a restricted area normally is established for the Vice President's travel to the U.S. Capitol and other buildings and facilities around Washington, D.C. The

examination of Secret Service Agents should not be limited in this case to anything more than what is listed. And, while precise locations that are planned for re-use without alternates might need some protection, then in camera cross-examination might be a last and necessary resort.

The role of the Secret Service in protecting the Vice President on January 6, 2021 is a significant part of the facts the government must prove for the charges against Mr. Goodwyn. The government states that "to meet its burden of proof at trial the government will call a witness from the United States Secret Service to testify that, at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol. These officers will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members." ECF No. 57 at 1-2. Mr. Goodwyn should thus be able to cross examine the Secret Service agents who testify about their roles in that process, their ability to carry out that role successfully, and which parts of the Capitol were restricted as part of their governmental function of protecting the Vice President that day. Questions about historical sizes of restricted areas for the Vice President any time he has visited the U.S. Capitol should be answered. Questions about who establishes and publishes the restricted areas should be answered as none of this information jeopardizes any security protocols.

The time frame regarding the protection of the Vice President is important to establish, including times prior to and after the Vice President and his family were evacuated from the Capitol, if ever on January 6th. These areas of cross will examine whether Mr. Goodwyn's presence at the Capitol on January 6th could have possibly impeded the Secret Service from fulfilling their functions and whether the building and entire grounds were still restricted at the time of his alleged entry. Further, it is necessary to examine when the Secret Service was made aware of the pipe bombs at the republican and democrat National Headquarters, and what measures were taken inside and outside the capitol building to ensure there were no explosives present. It will be necessary to question whether any of the "evacuation" was a result of the two pipe bombs found nearby, and if the evacuation location was selected for its protection from an explosive device that may have been on the grounds.

The government claims that the Secret Service protocols about relocation and safety are irrelevant to this case as they do not tend to make a fact of consequence more or less probable. ECF No. 57 at 5. The above sample questions show that to be false.

Excluding where the Vice President was during the period of evacuation as a matter of national security approaches the absurd these days. While certain "masks" are available for phones, there is no dispute that telephone service providers and google employees can identify phone locations and sell historical ping data. The phones contain GPS technology, and the cell towers receive data dumps even when the phone user does not actively connect to a cell system. Cell system and ping data was in fact gathered by the FBI and its Joint Terrorism Task Force to identify protestors in the building and on the grounds. None of this requires rocket science with today's technology. Anonymized phones in a small cluster away from the crowd create a very observable data point for analysis. Geo-tracking anonymized hones to the White House is not impossible.

Those seriously involved with National Security know that past visible activity (visible to infra-red, thermal, hyperspectral imagery, regular hi-res camera surveillance, cell towers, and signals intelligence for examples) require counter-intelligence techniques of not establishing patterns in order to preclude disclosing future activity. Minimal analysis using commercial data would allow historical tracking of the general locations of Secret Service agents. A set of pings that emanated from a location at the capitol where the mass of the crowd was not present will have indicated to those with the collection or data purchase capability where the Vice President was located. Claiming that past activity that was visible by thermal imaging, regular imagery, signals intelligence and by commercial and state actors is not clear justification for denying information to defendants whose liberty depends upon it.

Additionally, the January 6th Select Committee hearings have exposed much of the evidence surrounding Vice President Pence's evacuation to the public already. That exposure may include members of our jury who will also have seen the footage and listened to the prejudicial communications by Secret Service officers in which they said goodbye to family members over the radio and on phone calls when protestors entered the building. The hearings have played CCTV video of the evacuation of

3

Vice President Pence, identified the location of his exit, and even exposed the communications between Secret Service officers during the time period of that evacuation. In fairness, Mr. Goodwyn should be able to explore with these agents on cross examination all of these things, especially if even one seated juror admits to having seen the January 6th Select committee hearings.

In ensuring the two listed topics are not overly broadened, they should not preclude examination about how and when the Capitol was restricted that day, to whom that restriction was communicated and who had the power to override that restriction. These are highly relevant to the charges that Mr. Goodwyn entered a building and grounds restricted by the Secret Service that day. How the evacuation order to remove the Vice President was communicated to the Secret Service, when it was communicated, by whom, how it was executed, when it was executed and when it was deemed that the Vice President was out of danger are also material to Mr. Goodwyn's defense. This relevant and material information must be explored on cross-examination.

**Conclusion**: Based on the above, the Court should ensure that "national security" concerns do not displace legitimate information needed by Mr. Goodwyn as has happened during attorney capitol tours on behalf of their clients, with USCP denial of attorneys' walk-throughs of areas of the Capitol under the cloak of "security."

**II.  ECF Number 58, Government's Motion in Limine Regarding Evidence of Specific Locations of U.S. Capitol Police Surveillance Cameras**.

Mr. Goodwyn does not intend to admit a map of camera locations. However, he will work with the government to discover whether the two large 360 degree cameras on the photojournalist tower on the west side that overlooked the inauguration stage and ground area were operational, and where that footage has gone. Other discovery issues remain regarding camera and video coverage of the area around and outside the door where he entered the Capitol for 38-40 seconds while a groups of police in the near vicinity outside stood by.

Dated October 28, 2022                                 Respectfully submitted,
                                                       /s/ Carolyn A. Stewart

                                                       Carolyn A. Stewart, Bar No. FL-0098
                                                       Defense Attorney
                                                       Stewart Country Law PA
                                                       1204 Swilley Rd.
                                                       Plant City, FL 33567
                                                       Tel: (813) 659-5178
                                                       E: Carolstewart_esq@protonmail.com


Dated October 28, 2022                                 Respectfully submitted,

                                                       /s/ Joseph D. McBride, Esq.

                                                       Joseph D. McBride, Esq.
                                                       Bar ID: NY0403
                                                       THE MCBRIDE LAW FIRM, PLLC
                                                       99 Park Avenue, 6th Floor
                                                       New York, NY 10016
                                                       p: (917) 757-9537
                                                       e: jmcbride@mcbridelawnyc.com


## CERTIFICATE OF SERVICE

I hereby certify on the 30th day of September 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.


                                /s/ Carolyn A. Stewart
                                Carolyn A. Stewart, Esq.