## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA  )
                                     )
              v.               )        **Case No. 1:21-cr-00153 (RBW)**
                                     )
DANIEL GOODWYN,         )
                                     )
          Defendant.   )

## REPLY TO GOVERNMENT'S OPPOSITION RESPONSE TO MOTION IN LIMINE TO PRECLUDE USE OF CERTAIN LANGUAGE, TERMS, AND FALSE ASSOCIATIONS

Comes now the Defendant, Daniel Goodwyn, by and through undersigned counsel, and replies to the Government's ECF No. 66 response in this above styled case to his motion at ECF No. 60. Mr. Goodwyn incorporates and requests that the Court review the closely related topic in his response at ECF No. 68 to the Government's Motion at ECF No. 56 for evidence that it wants to call "intrinsic;" and respectfully moves this Court to grant Mr. Goodwyn's ECF No. 60 motion where he replies in support as follows:

### ARGUMENT

The Government's response in opposition at ECF No. 66 to Mr. Goodwyn's motion at ECF No. 60 infers a strategy where obtaining a conviction by any means possible equates to justice, and where it wants this Court to endorse the use of unfairly prejudicial terms and irrelevant evidence that has no probative value to advance that strategy. In this reply, Mr. Goodwyn again requests that the Court grant his motion at ECF No. 60 because otherwise the result will be time spent in mini trials during Mr. Goodwyn's trial. If his motion is denied, Mr. Goodwyn will have to defend himself against unfair prejudice and jury confusion. This will require witness testimony and evidence to counter a Government trial strategy that obfuscates its inability to prove the elements of the crimes charged, and deliberately exacerbates existing juror conscious and

subconscious bias. Underlying bias that jurors may not recognize is never going to be rooted out in voir dire or managed by a jury limiting instruction. It will instead grow as irrelevant and non-probative words and messages are allowed to create unfair prejudice to offset the Government's weak if non-existent case.

Jurors cannot unhear or unsee what the Government says and shows at trial. They will assume that the Government's words about insurrection, rioting, mobs, terrorism, and acts by other people at the Capitol on January 6th convey guilt to Mr. Goodwyn, no matter his lack of participation and how unrelated in reality to his intent and acts. Jurors will not be sitting with calendars and a timeline to see that Government claims made about protected speech in November 2020 had nothing to do with D.C. or Congress regarding January 6, 2021 events. A point the Government does not clarify in its November and early December 2020 thought crime fiction tale is that the January 6, 2021 rally at the Ellipse and associated protests were not even yet announced. Prior to December 28, 2021, Mr. Goodwyn had no intent to go to Washington, D.C. for January 6, 2021, and he never intended to do anything against the Electoral Count Act process because he supported it. The Government wants permission to use inflammatory terms to mischaracterize Mr. Goodwyn, and then for the jury to believe that Mr. Goodwyn is an insurrectionist, rioter, terrorist, et al, where because those associated crimes are not charged, he deserves conviction despite lack of proof for the crimes charged. The Government fears it will fail to convict without Court approved use of items 1-3 below to create unfair prejudice and jury confusion that unjustly imparts guilt on Mr. Goodwyn.

Mr. Goodwyn wrote and said nothing in November - December 2020 about stopping the electoral vote count and certification by Congress. What he did say and write, including on January 6, 2021, was in support of Republican objections and the associated debate. It was completely

against Mr. Goodwyn's interests for the process inside the Capitol to stop, and then be negatively impacted by violence that was all attributed to President Trump's supporters; with the result that upon restart, no consideration was given to the proposal for a ten day investigation prior to vote certification. The process that Mr. Goodwyn supported was dead because of the violence.

Contrary to the Government's thought crime tale, Mr. Goodwyn's prior protest at the _Georgia_ _state_ _capitol_ was to encourage investigation and integrity in future elections. The Government wants to assert that his prior protest - which was protected First Amendment speech - in and of itself shows intent to criminally obstruct the electoral vote count in D.C. _See_ ECF No. 56 Government Motion in Limine. Facially, this assertion is both absurd and abhorrent. But it might succeed before a D.C. jury where over 92-94% opposed President Trump. At the time of Mr. Goodwyn's protected First Amendment speech, the January 6, 2021 rally did not exist. Mr. Goodwyn was not planning to go to D.C. for January 6, 2021. The Government wants to pervert irrelevant evidence to create a fiction story.

The Government asserted in its motion about extrinsic evidence at ECF No. 56 that it wants labelled as intrinsic evidence, that Mr. Goodwyn's prior peaceful, legal protests show an "escalation." Here the DOJ equates attendance at protests with serial killer escalatory behavior. The abhorrent assessment about "escalation" that equates protected First Amendment political speech to crime in progress aligns with Joe Biden calling January 6th defendants "insurrectionists" and "terrorists." The Government's attempt to manipulate peaceful First Amendment political speech to say it "escalates" into crime exceeds the recently revealed disregard by the DOJ and FBI for the U.S. Constitution. They knowingly paid a source to submit  dossier with false information about President Trump. They had social media censor news and speech to conceal truth about the Biden family's alleged criminal activity such that the FBI interfered in and influenced the 2020

election. The DOJ and FBI targeted speech by parents at school board meetings in order to classify the speakers as domestic terrorists because they opposed social engineering topics in lieu of education. The list is growing and contains documented abuse against the Patriot Act and lies to the FISA Court.

January 6th defendants were and are investigated under the DOJ as domestic terrorists, placed on watch lists without any due process, had all their privacy invaded to the point where the DOJ and FBI led banks, credit card issuers, hotels, internet service providers, car ride services, social media companies for business and personal accounts, business payment systems, and other services to cancel defendants' accounts and access prior to any trial. In Mr. Goodwyn's case, he like others was banned from Stripe (a payment processor where this ban obstructed GiveSendGo defense fundraising), Facebook, Instagram, Lyft, and Airbnb; and was censored by YouTube.

Ethically obtaining a conviction is no longer good enough for the DOJ. Now *the ends* of (a) federal prison sentences for felony or misdemeanor offenses charged only against conservatives, those who question election integrity, pro-life activists, and MAGA supporters; and (b) destruction of the Biden administration's political opposition *justifies the means* that include (a) bankrupting and destroying families prior to any trial, (b) twisting facts into fiction, and (c) defaming and cancelling America-loving defendants by labelling them as insurrectionists, extremists, and terrorists so juries will convict despite Government failure to prove each element of crimes charged. The politicization of the DOJ and its weaponization against the Biden administrations' perceived political opposition must be tempered by the Court under the federal rules and case law before the jury is seated for Mr. Goodwyn's trial.

A fair number of D.C. residents as potential jurors may not blink an eye at the Government's disregard for the First Amendment as they may already believe they have a duty to

uphold Biden's policy that MAGA supporters are dangerous threats to America - as extremists, insurrectionists, and terrorists. For anyone who believes Biden, they may see it as a duty to convict so the defendant will be placed in prison. The DOJ supports the Biden message by using the very same inapplicable terms. America did not previously classify a walk across the threshold of an open door, or legally protected speech as insurrection, terrorism, or a threat to democracy. Thus, the introduction of far-attenuated irrelevant speech from November 2020 and early December 2020 that had nothing to do with Mr. Goodwyn's intent or state of mind in relation to January 6th will, as stated in the original motion, create unfair prejudice and confusion, and will waste time for mini trials within the trial to counter the unfair prejudice and confusion.

Jurors will enter the court room with bias despite how they answer any questionnaire. A Washington, D.C. resident juror would have to have moved to D.C. from Mars in the past year and never have used the internet or watched or read any D.C. news to not already have been bombarded with "the insurrection," "the Capitol attack'" and the "dangerous extremists" as Mr. Biden calls all Make America Great Again (MAGA) supporters. The Government wants to capitalize on the existing bias of jurors who themselves were victims as they endured months of National Guard visible presence and road blockages while shut out of a militarized "Green Zone" by fencing as if D.C. had become Baghdad, Iraq.

The Government in its response at ECF No. 66 states that the first three items in ECF No. 60 lack merit or are premature. Up front, they cannot be premature because they are in-progress by the DOJ where here the defense against each will not be waived by inaction and silence. Preparation for defense against items 1 - 3 if approved will require a trial continuance or a change of venue, or both in all fairness and in the interests of justice if the Court allows the Government to use the items as the anchor of its trial strategy.

Items 1 - 3 that ECF No. 60 requested this Court preclude are correctly shown here rather than what the Government inaccurately presented in its response at ECF No. 66:

1. Irrelevant and highly prejudicial terms: "mob," "rioter," "traitor," "terrorism," "terrorist," "insurrection," "insurrectionist," "treason," "sedition," "conspiracy," "attack on the Capitol," "attack on democracy," "threat to democracy," "attack on Congress," "white supremacy/supremacists," "police killed," "COVID-19 Mask and vaccine mandates," and other inflammatory, stereotypical language related to groups such as the "Three Percenters, '"Proud Boys" and "Oath Keepers."

2. Any references to places and events on the grounds or in the Capitol where he did not go or participate in, such as chanting "Hang Mike Pence" or the artwork gallows.

3. Summary witnesses that testify about things and places surrounding the events of January 6 that have nothing directly to do with Mr. Goodwyn or his charges. This includes the interior of the Capitol such as the Rotunda, Nancy Pelosi's many offices, the Crypt, the Memorial doors, the breaching of the Senate doors, the Hall of Columns, the "west tunnel," and any other places and activity irrelevant to Mr. Goodwyn's conduct.

There is merit and ripeness in the motion to preclude certain language, terms, and false associations because the Government has already proceeded along this path in prior pleas and trials, with distribution by the media. It is the Government's modus operandi to use topics, words, and related content as listed in items 1-3 in its opening salvo to damn defendants before presenting any relevant evidence. In military jargon, the DOJ is "shaping the battlefield" by creating perception of guilt through association with strangers for uncharged crimes. That is supported here by the Government's inclusion in every response to motions in limine with a regurgitation of

unproven, unsupported, legal conclusions it calls "facts," which happen to originate from an FBI now unfortunately held in low esteem because of its fabrications, deceptions, lies, and abuses.

There is no relevance in items 1 - 3 for proving any elements of the crimes charged, nor any possibility that any of items 1 - 3 above pass the balancing test under Federal Rule of Evidence 403. There is no probative value in what Mr. Goodwyn asks to be precluded.  For example, the saying that a picture speaks a thousand words is as true here as anywhere else. The media and the Government have not presented truth about Item 2 above, the "Gallows."  The structure was artwork and falls under expressive First Amendment speech. The artist must have prefabricated the artwork gallows days before January 6th when Mike Pence made his decision public just prior to 1:00 p.m. The "gallows" were not identified in the art as being for any person. A non-disingenuous picture in media and elsewhere would have shown that the "Gallows" had a sign that said  it was artwork. Mr. Merbler's photography of the artwork below is still on-line.[1]

The below pictures show the entire "gallows artwork." Nothing in the artwork states who might be envisioned as hanging. Nothing points at VP Pence, especially given the timing of the art's creation. Even if considered distasteful, the viewer's *imaginary* wish, if any, as to who could hang, is also protected speech. Whether this "art" caused anyone to chant "Hang Mike Pence" is unclear and unsupported. Importantly, Mr. Goodwyn did not chant about hanging anyone.

Media and other Government representations omit the sign proclaiming "THIS IS ART." Anyone who went near the structure could see it was flimsy and not a functional gallows. There was no French Revolution, Hollywood movie-style mob with torches and axes headed in search of Mike Pence to drag him out to the non-functional gallows. If the Government is going to be allowed to misrepresent or even show the artwork without specifically telling the jury it was not

---

[1] See Mr. Merbler's on-line pictures at https://www.flickr.com/photos/37527185@N05/50826361168/



gallows, then Mr. Goodwyn must prepare for a mini trial on the artwork. This preparation will not be trivial and requires time for locating the artist and gathering witnesses who noted the sign and structural weakness. Then there is the First Amendment mini trial associated with the artwork.

There is abundant U.S. Supreme Court settled law that unless the speech incites imminent violence, or unless expressive speech such as art (which can be dance for example) violates the bar that society considers unacceptable, such as child pornography, the expressive speech is protected. There are exceptions, such as for FCC regulations regarding over the air television and radio broadcasts that without warning send obscenities into the home. Without making this a brief on First Amendment speech case law, the classic example is that a man wearing a jacket in a public airport that has "F---" stenciled on it is using protected speech because people who are offended can avert their eyes. Overall, with the exception of protecting children, when speech does not immediately incite violence or display public pornography that is deemed to lack any semblance of artful expression, it is protected.

The Secret Service did not go into lockdown mode and the FBI made no arrests with accompanying home searches when Madonna announced nationally that she wanted to blow up the White House, or when comedian Kathy Griffin held up what appeared to be a bloodied, decapitated head of President Trump. The FBI did not arrest, and the DOJ did not charge Senator Schumer when he threatened Justice Kavanaugh. The list goes on, but the bottom line is that the artwork gallows was one unidentified person's expressive speech. If the Secret Service protecting VP Pence took that as real, then the USCP who were riding bicycles throughout the west lawn and "campus" failed to report what were obviously not real gallows. The Government's claim that VP Pence's life was in danger is not proven fact, especially since the Government has never admitted that pipe bombs may have been the assessed danger and reason the Secret Service kept him underground in a blast-protected area instead of driving off in well-armored, bulletproof vehicles.

The Government wants to show the jury what others did at other locations and at completely different times unknown to Mr. Goodwyn, while highlighting the label "insurrection" that nobody is charged with, so the jury will convict Mr. Goodwyn without having to prove his actions and intent for the crimes charged. As part of this charade, the Government also said it may bring in a Senator to testify about what he or she experienced. That can only be for an improper emotional appeal to the jury. Mr. Goodwyn never went toward the Senate chambers or indicated he had any such intent. Congress left the building when Mr. Goodwyn was peacefully outside. The Government wants to present emotional, improper, irrelevant testimony. The Government seeks to manufacture thought crime by inventing thought that is opposite to Mr. Goodwyn's support of the debate and count process. November and early December postings and texts say nothing about obstructing the electoral vote count.

"Stopping the Steal" was about supporting investigation of factual election conduct

illegalities and irregularities, such as the illegal consent agreement signed by the Georgia Secretary of State that was declared illegal in court after the fact. Mr. Goodwyn will have to defend against false assertions that "Stop the Steal" - a hashtag that originated for peaceful protests before any January 6, 2021 protest in D.C. was announced - meant interfering with Congress. The Government intends to make the jury believe that a "Stop the Steal" post in November 2020 for protests at state capitols (before any D.C. protest in January 2021 was announced) equaled "Stop the Electoral Count." And then, although Mr. Goodwyn was not near a door and was not inside when Congress adjourned and departed, he must have worked to delay the electoral vote count. Defending against this will unnecessarily require a mini trial within the trial.

The Government's contention that there was a riot and chaos everywhere, and that Mr. Goodwyn was part of a "safety in numbers" enterprise for criminal activity is unsupported by evidence and is false. Mr. Goodwyn is charged with crimes as an individual and not as a conspirator or accomplice. "All crimes require some kind of intent. Intent means that a person had a purpose to do a thing. It means that he . . . acted with the will to do a thing. It means that he . . . acted consciously or voluntarily, and not inadvertently or accidentally." *U.S. v. Baird*, 778 F. Supp. 534, 537 (D.D.C. 1990). Other persons' actions have nothing to do with the charges against Mr. Goodwyn and the Government's requirement to prove every element of the crimes. The crimes charged require zero context of "everything" at the U.S. Capitol. Under the guise of showing "everything" unrelated to Mr. Goodwyn's location, words, view, or activity, the Government wants to cheat the proof of crime requirements by forming an emotional and unfairly prejudiced jury.

The Government's argument on page 8 defies logic. First, Mr. Goodwyn does not use the crowd as a sword or a shield as alleged. And by the Government's words about "safety in numbers," the context it should be showing if it believed this assertion is that a crowd contributed to Mr.

Goodwyn taking some specific action. That is the opposite of the Government's argument where it wants to have the jury convict Mr. Goodwyn by unsupported allegations that others acted due to Mr. Goodwyn's presence. It is easy to see from whence confusion emanates in the D.D.C. Should a jury convict or a judge sentence higher because the defendant's presence caused others to commit a crime by virtue of his mere presence? Or did the defendant act because he believed he was supported by safety in numbers by others?

The inconsistency in logic continues in assertions that Mr. Goodwyn's mere presence led someone else to commit a crime. Who committed any crime because Mr. Goodwyn was on the lawn and away from any clashes between police and protestors? Who did anything because Mr. Goodwyn was within their line of sight? **That is not the legal standard for aiding and abetting**. This argument by the Government means if a bank robber chooses a robbery time when the bank lobby will be super crowded because he wants to have many hostages and safety in numbers to preclude police forced entry if things go south, then everyone in the lobby aided and abetted because under the DOJ no affirmative act or intent is needed.

In its response, the Government generalized about numbers of people injuring more than 100 police officers and causing millions of dollars in damage. (ECF No. 66 at 6). The Government adds that others overwhelmed police, breached the Capitol, and disrupted proceedings. *Id*. at 6-7. Mr. Goodwyn was not part of those numbers or at any location where the alleged acts happened. He was not part of any riot. The Government has created a preposterous "accessory" claim against Mr. Goodwyn's due process is about to be violated by being prosecuted at trial for crimes not charged, and that he was not knowledgeable of, a party to, or an accomplice in if the irrelevant evidence and unfairly prejudicial words are allowed in.

In its mode of making claims that do not provide any probative value to proving its case, the Government wrote ". . . actions of the mob that day is needed for the jury to receive a *complete picture* of what took place at the Capitol that day." ECF No. 66 at 8 (emphasis added). There is no new criminal procedure under unknown law where an individual's alleged  and charged law breaking must be placed within a larger context of a geographical area, to include actions by people not directly co-located with, not seen, and not known to defendants. Temperature and environmental factors might be required information in some cases. But this is not a civil tort negligence case where Mr. Goodwyn should have foreseen damages caused by others. Without law within the charges that supports the "complete picture" fiction, the Government has no standard for what equals a "complete picture" here, let alone how that informs the jury's decision-making about facts and evidence for the charges. Whether a senator was frightened when abandoning the senate chamber is irrelevant when Mr. Goodwyn was not nearby, not in the building, and could not possibly have caused any fright. Further, no "*complete picture*" of what happened on January 6, 2021 exists. There is only Government cherry-picked and out of context presentations regarding unrelated acts by others.

The January 6th Select Committee did not investigate. It was a political show trial. It did not answer why U.S. Capitol security was undermanned; why the restricted area boundaries were not marked or manned adequately; why USCP abandoned the few boundary monitoring posts it had manned; why police watched and allowed protestors entry through doors; why National Guard Support was declined; why no existing loudspeaker system was used to tell everyone to leave the grounds; why FBI informants and agents were in the crowd and appear to have acted as agitators, and why the internal speaker system that runs throughout the interior of the Capitol was never used to tell protestors to depart. There are many more things not done, and no rational person would

declare the January 6th Committee did anything more than attempt to support an indictment against President Trump by Biden's Attorney General. Given the Government's assertion that the trial must present the jury with a *complete picture* of what took place at the Capitol on January 6, 2021, this could be a lengthy trial as the defense will have to do what the U.S. Congress just failed to do over many months. The Pre-Trial conference will need to reach agreement of which party has what requirements to investigate so that a *complete picture* is available for Mr. Goodwyn's jury. Other trials should be placed on hold if the D.D.C. standard is that *complete picture* evidence is required regardless of complete lack of relevance to the case at hand.

Mr. Goodwyn will require time and access to previously denied discovery for all defendants, such as USCP command center logs and records, measurement for line of sight from different points at the capitol, names, FBI informant and source Form 302's, and status of all Government agency personnel and sources who were anywhere on the Capitol grounds, the name and authority of who ordered the use of non-lethal force against peaceful protestors around 1:00 p.m.; the quantity of ammunition expended; all SOPs for responding to "riots" and a litany of questions. If the Government insists it must present its cherry-picked evidence of what happened at the Capitol no matter how unrelated in time, activity, and space to Mr. Goodwyn, then the defense will need a mini trial at the outset to complete the picture.

Proving the crimes charged against Mr. Goodwyn does not require the inflammatory video and words the Government will try insert through allegation about Oath Keepers, Proud Boys, Three Percenters, use of OC spray, police clashes, shield clashes, wall climbing, and glass breaking to name a few. A "complete view" requires a long list though. This includes police excessive use of force that injured and killed peaceful protestors and rather than dispersing the crowd, because of improper use of non-lethal weapons led to provocation and what is termed a riot, which  if

characterized properly, was localized at the west tunnel, briefly on the east steps, and a few instances inside the building.

Under this Government complete view theory, a day should be provided to the defense in December 2022 for its surveyors to measure distances and line of sight at the U.S. Capitol since a complete view requires scale and perspective. Attorney and investigator tours have thus far prohibited the taking of measurements anywhere, while pictures have been forbidden outside and inside the door where Mr. Goodwyn entered and then exited within 40 seconds. A half day should be set aside during trial for the jury to tour inside the capitol, and then take a walk around the entire exterior. Another half day should include the USCP command and control center, with explanation of video feeds available, communications channels used and controlled by USCP, manning on January 6, 2021, and the policies that ceded control of the west side to LT Glover of the DC MPD. The USCP should give a precise accounting of doors unlocked and opened versus breached by force.

If Mr. Goodwyn must defend against uncharged crimes given admission of irrelevant evidence about others and terms, where Mr. Goodwyn's mere outdoor presence with peaceful protestors who were well distanced by space and time from bad actors' crimes makes him guilty of aiding and abetting, then an engineer line of sight survey must be developed for multiple points. Empirical evidence is required to confirm or deny the Government's assertion that belief in safety of numbers rather than something else caused violence, wall climbing, building entry, clashes with police, and specific crimes by specific people that caused Congress's departure from debating.

In support of empirical evidence development for the "safety in numbers" theory presented as fact in the D.D.C., the Government must identify the "Tower Commander" and persons right near him who meet major casting characteristics for FBI, DHS, or CIA personnel in some form.

The USCP should explain why they never once ordered the man with the super loud megaphone off the tower over the course of four and a half hours, and why they did not ascend the tower to commandeer the megaphone and direct everyone back to the street if no outdoor loudspeaker system was going to be employed. The "Tower Commander" was never told the get down even when the police forcibly pushed the crowd back to a line parallel and next to the tower, and he was not ever targeted with non-lethal weapons. The FBI needs to explain why except for Jacob Chansley, nobody else in the tower was arrested.

No evidence was provided in discovery that shows the science where on January 6, 2021 some people broke down barriers, broke windows, or broke into doors because the crowd made them feel safe. In fact, in multiple instances Ray Epps who was cleared by the FBI was right up next to a police barrier when after he spoke to the person next to him, that person charged the barrier and police without any indication he had knowledge of crowd size.

**The Government inaccurately presented the procedural history and factual background**. In addition to inaccurately representing the content of the two different indictments from February and November 2021 (ECF No. 66 at 4-5), the Government inaccurately presented facts, (*id*. at 2-4), especially regarding data it obtained from searches of Mr. Goodwyn's electronics or demands from tech companies. First, Mr. Goodwyn stipulates to nothing asserted by the Government as fact, especially about what the USCP secured and what was restricted, and other Government presentation that twists and skews underlying facts. The Government states (*id*. at 3) that on *November 28*, 2020 Mr. Goodwyn made a Twitter post "#stop the steal" and sought GiveSendGo donations for travel to D.C. on January 6th. The January 6th rally was not even announced until around December 18th. Any posts regarding travel funding and January 6th were made on or after December 28, 2020.  The Government goes on to reference "group messages"

when those are not in Mr. Goodwyn's discovery, and as far as he knows never existed. Mr. Goodwyn corresponded with approximately four persons individually in private messages to each. The Government asserts there were multiple group messages, when Mr. Goodwyn only recalls private messages on January 2, 2021 where he was supporting Senator Cruz's planned objections. Even the Government's words that Mr. Goodwyn *opposed election results* and planned to be in D.C. on November 7, 2020 and January 6, 2021 are fiction and not fact. Mr. Goodwyn *questioned the election results*. He had no singular plan to be in D.C. on Nov 7, 2020 and January 6, 2021. He did not plan to go to D.C. for January 6th until around December 28, 2020.

Further, as addressed in Mr. Goodwyn's response at ECF No. 68 and incorporated here, the Government's assertion (*id*. at 3) that use of the Beatles' song "Revolution" was a call to revolution is preposterous. The song is anti-war and anti-violence. The person insinuating that the reference to the song calls for revolution needs to do research on the peacenik Beatles of the 1960s. It is clear the Government's work needs to be proofed for accuracy rather than full of misrepresentations as are within its multiple motion responses and not just this one.

**The Government is outside the legal standards that apply to 18 USC Section 2.** The *Rosemond* decision in an aiding and abetting case referred to Judge Learned Hand's words about the requirements: "To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" *Rosemond v. United States*, 572 U.S. 65, 76 (2014) ((quoting Judge Hand from *Nye & Nissen* v. *United States*, 336 U.S. 613, 619, (1949)). The Government is trying to bypass the requirement to show a specific act intentionally done by Mr. Goodwyn for the goal of stopping the Electoral Vote count, or that he wished to bring that about and to succeed. The Government is tap dancing around acts by others that it alleges were

committed because of safety in the numbers of others - who were not involved in a Section 1512(c) felony scheme. *Rosemond* clarified that the "intent requirement is satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." *Id*. at 77. That cannot be true for Mr. Goodwyn in reading the indictment's Count One and the current D.D.C. majority interpretation of Section 1512(c)(2). *Rosemond* also held that "for purposes of aiding and abetting law, a person who actively participates in a criminal scheme *knowing its extent and character* intends that scheme's commission." *Rosemond*, 572 U.S. at 78. (Emphasis added). The Government defies criminal law justice standards and *Rosemond* by charging protestors such as Mr. Goodwyn who did not know any scope or extent of any venture - if any even existed - with violating Section 1512(c)(2); where they lacked knowledge of the overly broad interpretation hidden in the middle of the larger Section 1512 law; and lacked situational awareness about what strangers planned or were doing anywhere. Showing evidence of what strangers did, when not a single one engaged with any member of Congress, and where Mr. Goodwyn had no interaction before or on January 6, 2021 with what they did cannot meet U.S. Supreme Court standards for aiding and abetting. Yet the Government wants to tell the jury that his peaceful exercising of protected First Amendment speech was illegal because of actions by others all over the US Capitol grounds and inside the building.

What anybody else did when not located with and not acting with Mr. Goodwyn, where he was never part of a plan or agreement that created an accomplice relationship or conspiracy, should not be used to confer guilt to Mr. Goodwyn. American criminal law standards include that outside of conspiracy and accomplice liability, the determination of guilt for crime is based on individual acts and intent. Video of anyone attacking police inside the Capitol rotunda or crypt is entirely divorced from Mr. Goodwyn's 38 - 40 second entry and exit where he never got more than

a few yards past the entry hallway. Testimony by police or any members of Congress with a narrative about their fear and tribulations on January 6, 2021 has nothing to do with any activity Mr. Goodwyn was near, contributed to (as if this were tort law) or aware of at the time. The police that Mr. Goodwyn saw outside the open door were just standing around casually. The Government knows that even if it presents Mr. Goodwyn's words on January 6, 2021, nothing shows any intent to obstruct Congress, should the Section 1512(c)(2) charge not be dismissed for it defects. The Government should not be allowed to add imaginary intent from early November 2020 when blog posts were about protests at state capitols for example. Because the Government's case is so weak it wants to obtain a conviction by improper emotional testimony that causes unfair jury prejudice.

Highly inflammatory words and evidence about what others did and said is not "context" related to where Mr. Goodwyn was located. Such words and material are outside the legal standards for criminal guilt. ***Rosemond* made clear that someone who does not know about the criminal acts of others cannot be aiding and abetting because they had no opportunity to quit the venture. *Rosemond*, 572 U.S. at 78**. The charges in the indictment require intent and an act by Mr. Goodwyn and nobody else. The Government wants the jury to overlook that Mr. Goodwyn did not knowingly, or with any corrupt intent or act, commit any crime charged.

Assertions and opinions that defendants entered the building or engaged with police because they found safety in numbers from the large crowd; and thus, everyone in the crowd aided and abetted those who acted violently or caused physical damage, is an unproven hypothesis masquerading as fact. The hypothesis contradicts *Rosemond*. Unfortunately, Mr. Goodwyn's motion is ripe because judges have proclaimed the hypothesis as fact in sentencing - either *sua sponte* or after the Government asserted a rioting mob without any expert testimony or evidentiary

support.[2]  The only context is that Mr. Goodwyn entered the grounds where no signs indicated he could not be there; with the intent *to support* the Electoral Count Act's objection process; and to peacefully have his voice heard. The Government wants to manufacture intent and a criminal act under the guise of context that uses the acts and words of others. That is not the legal standard.

Furthermore, the Government wants the jury to convict because they will see the conviction as deserved by an uncharged terrorist, insurrectionist, rioter, and anti-Democracy dangerous extremist. Nobody is asking the Government to sanitize its case as suggested in the response ECF No. 66 at 5. First, none of the "terms" are evidence. They are words the Government wants to use as it has done to other defendants to unfairly prejudice juries and judges. Mr. Goodwyn does not want unfair prejudice caused by the Government's use of unrelated, irrelevant, and unfairly prejudicial terms, video, and evidence about people he never even saw, to be an unjust method for conviction when he is innocent. The Government's assertion at ECF No. 66 at 6 that the events at the Capitol on January 6, 2021 may properly be described  as a riot, breach, assault, or insurrection is unproven and unsupported. As such, Mr. Goodwyn will need to put on a mini trial defense with witnesses, pictures, and documents to show the prosecutor what insurrection looks like.

At a minimum, this could include the death of thirteen U.S. military members, the seriously injured, and the many other civilian deaths at the airport in August 2021 during the  botched Afghanistan withdrawal. The Taliban for months had been conducting insurrection across the country, and by the end of July 2021 had effectively surrounded Kabul. The armed insurrectionists' destruction and murders as they ousted the government is a recent example of insurrection that the U.S. government aided by its withdrawal actions and abandonment of allies and equipment. Mr. Goodwyn could go back to older CIA-backed insurgencies in any number of countries, whether

---

[2] This is besides a few defendants in plea sentencing statements for misdemeanors who said they just peacefully entered and left the building where they followed the crowd through open doors.

Libya or South America. Yemen provides another classic example of insurrection. Mr. Goodwyn is not an insurrectionist and a mini trial that could be prevented by granting his motion will have to happen if the Government is allowed to assert that there was an insurrection on January 6, 2021.

With absolutely no evidence and no truth that Mr. Goodwyn wanted to do anything against the U.S. Government on January 6, 2021, the DOJ should stop its onslaught of false accusations against defendants who love America and support the U.S. Constitution. The use of the term "insurrection" for January 6, 2021 by those who have never gone to sleep wondering if a bomb launched by insurrectionists would land on their head and kill them before daylight, appears as political persecution. Retired military witnesses will dispute the nonchalant, inappropriate, and misplaced self-righteous use of the words "insurrection" or "terrorism" by those who have never seen the reality on the ground of what insurrection or terrorism truly look like, or the results of physical attacks by lethal force.

Mr. Goodwyn contends that January 6, 2021 may not be properly described as an insurrection, and the use of "riot" is another arguable descriptor for the supposed grounds that nobody but the USCP and those who ripped down "area closed" signs in a matter of minutes had notice were restricted. There was no "riot" occurring all around and inside the Capitol. The east and west sides of the Capitol were alike in being peaceful protests until in a small area relative to the size of the entire "campus," police provoked a response by those who lived their lives under respect for police and the law. The investigation to date has not identified agitators, despite the size of the FBI effort and technology available. There is no explanation as to why clearly identifiable agitators have been removed from the FBI wanted list. And, as contained in the original motion at ECF No. 60, the Government fails the Fed R. Evid. 403 balancing test for unfair

prejudice and probative value. The prosecution should not be allowed to confer guilt for uncharged crimes in disregard of due process and the Fifth Amendment

The decision time is ripe because the Government's previous documents and completed cases used terms to characterize defendants as extremists, insurrectionists, and threats to democracy as if factual rather than opinion by people who have no demonstrated expertise in the subject matter reality behind those words. The Government wants the Court's approval to manufacture evidence of intent and acts from irrelevant, unconnected (before any January 6th events were even announced), protected First Amendment speech that has no probative value but will be used to prejudice the jury emotionally and unfairly. Limiting jury instructions and cautionary warnings will not serve any useful purpose if the jurors enter court for a verbal barrage about insurrection, an attack on democracy, and items listed in Mr. Goodwyn's motion.

The Government's response at ECF No. 66 proves the point that Mr. Goodwyn's motion is ripe for decision because it puts forth opinion as facts, where the end result can be called "reverse jury nullification." The unfair prejudice and bias created by use of what Mr. Goodwyn asks to be excluded in his motion can only cause the jury to convict despite innocence of the charges (reverse jury nullification) under Government "broken-record" guilt by non-existent association.

Sadly, in what may be called a continuing loss of credibility by the DOJ, the Government intends to interpret and create a tale using lawful speech that in plain English has no relevance in Mr. Goodwyn's trial. Worse, the Government claims as "fact" its misrepresentation of truth. For example,  the Government wants to present that Mr. Goodwyn used a Proud Boys meme without any endorsement or condemnation on a blog to generate comments in early November 2020 as evidence. There is no linkage between a Proud Boys meme and anything criminal. The Government wants to bring in the Proud Boys because of the January 6 Select Committee's false

characterization of the group. Just as the Government seizes Proud Boys coins during home searches as "evidence," this can be nothing but support of fabrication of intent that did not exist. The Government wants the jury to see an insurrectionist and extremist when they look at Mr. Goodwyn. Required sideshow "mini trials" to protect Mr. Goodwyn from unfair prejudice will create a waste of time for the Court at trial, when granting his motion now can prevent that.

  Mr. Goodwyn's motion should be granted due to the facts being presented inaccurately and beyond casting Mr. Goodwyn in an unfavorable light. ECF No. 66 at 3 states that while approaching the Capitol, Mr. Goodwyn used a bullhorn to encourage others to enter the Capitol. Mr. Goodwyn was already outside the open door when someone handed him a bullhorn (he did not bring a bullhorn or approach anywhere with a bullhorn) for a minute when he made a statement that video will show nobody paid any attention to. Mr. Goodwyn returned the bullhorn. The Government's wording changes facts it has from video. Regarding the  bullhorn, the Government said Mr. Goodwyn attempted "to encourage other rioters..." *Id*. at 4. Similarly, the Government then said Mr. Goodwyn entered the building with a crowd of rioters. He was not with and entered nowhere "with rioters." These statement show that the Government wants to use irrelevant evidence and unfairly prejudicial terms to brainwash the jury through repetitive propaganda that Mr. Goodwyn is a rioter, insurrectionist, and extremist threat.

  The Government knows that video evidence shows people peacefully entering an open door in full view of nearby police who stood outside and just watched. The use of "riot" in regard to Mr. Goodwyn has as its only purpose to unfairly prejudice the jury and destroy his reputation. "Rioting" is not part of Section 1512 and is not an act listed in his indictment. With only one exception to date the D.D.C. judges have allowed Section 1512(c)(2) to be considered violated by any act. Mr. Goodwyn's motion to dismiss Count One with its Section 1512 charge points out that

nobody can know what act violates the law. Showing the jury other strangers being alleged as "rioting" is not context for showing intent and an act to obstruct Congress over an hour after Congress had already adjourned. The Government insists on asserting that Mr. Goodwyn was rioting and was amidst a riot because it cannot prove its case for any of the crimes he is charged with in the indictment. The false assertions about Mr. Goodwyn rioting, if allowed into the trial, will have to be countered in a mini trial that shows riots from years ago in Los Angeles up through the summer of 2020.

The motion is not premature because if the court allows the government to use highly inflammatory, irrelevant, and non-probative terms along with irrelevant evidence twisted out of original meaning, then Mr. Goodwyn will need to put on a mini trial to defend against each instance. Preparing defense mini trials is not something that can be done on the spot at trial. It seems incredible but these terms have been thrown around like loose change into a fountain thus far. If all Government statements from sentencing memorandums and from sentencing hearing transcripts, along with transcripts of the Government's trial arguments and evidence; and transcripts of judges' statements from plea and trial sentencing were placed in a room, one could not swing a dead cat in any direction without hitting the words "mob," "terrorist," "insurrection," "riot," "threat to democracy," and "assault on the Capitol," among other terms that convey guilt for uncharged crimes. Mr. Biden, Mr. Garland, the January 6th Select Committee, judges, and prosecutors; with nobody charged with insurrection or terrorism, have declared for all juries and the world that each defendant is guilty despite these being crimes not charged. The media use of this terminology has been ever present in the D.C. "victim area" from which the jury pool lives.

The Government uses characterization terms not related to the elements of the crimes charged to create reasons for juries to convict despite lack of evidence as to intent and any act

required. This has worked to a 100% conviction rate in every jury trial thus far. The J6 Select Committee and U.S. President have after all told every juror candidate that what happened at the U.S. Capitol was worse than the 3000+ deaths caused by terrorists on 9/11. If the Government is going to be allowed to use inflammatory terms and irrelevant evidence to further bias the jury, then Mr. Goodwyn will put forth a defense to each term. An in-court objection will not suffice because the jury cannot "unhear" what was said. Voir dire cannot fix this because the entire jury pool has bias having been bombarded with media promulgation of "the insurrection, terrorists, and insurrectionists" while Mr. Biden characterized defendants as dangerous extremist threats to democracy and America. The jurors should not walk into Mr. Goodwyn's trial where the Government goes unchecked in conducting character assassination by use of terms and evidence that create unfair prejudice for crimes not charged.

## **CONCLUSION**

There is no legitimate reason for the Government to use anything in the items listing within the Defendant's original motion as part of its case in chief. The items should be barred because they are irrelevant, unfairly prejudicial, will confuse the jury, and do nothing to prove any elements of the charges against Mr. Goodwyn.

Wherefore, Mr. Goodwyn respectfully requests this Court grant his motion at ECF No. 60.

Dated November 14, 2022                    Respectfully submitted,
                                           /s/ Carolyn A. Stewart

                                           Carolyn A. Stewart, Bar No. FL-0098
                                           Defense Attorney
                                           Stewart Country Law PA
                                           1204 Swilley Rd.
                                           Plant City, FL 33567
                                           Tel: (813) 659-5178
                                           E: Carolstewart_esq@protonmail.com


Dated November 14, 2022                    Respectfully submitted,

                                           /s/ Joseph D. McBride, Esq.

                                           Joseph D. McBride, Esq.
                                           Bar ID: NY0403
                                           THE MCBRIDE LAW FIRM, PLLC
                                           99 Park Avenue, 6th Floor
                                           New York, NY 10016
                                           p: (917) 757-9537
                                           e: jmcbride@mcbridelawnyc.com


## CERTIFICATE OF SERVICE

I hereby certify on the 14th day of November 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.


                    /s/ Carolyn A. Stewart
                    Carolyn A. Stewart, Esq.