**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21-cr-00153 (RBW)** |
| | ) | |
| **DANIEL GOODWYN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO ECF NO. 119, 121**

Comes now the Defendant, DANIEL GOODWYN by and through undersigned counsel, and respectfully Responds to the Court's Order at ECF No. 119 with the revised timeline at ECF No. 121 to "Show Cause" as to why the Court should not reimpose computer monitoring as a special condition of release after the Appellate Court's Order vacated the computer monitoring special condition of release; and requests that for the remanded proceedings the Court correct and reissue the Judgment Order at ECF No. 108 with removal of the computer monitoring special condition of release.

## I.    BACKGROUND.

On January 6, 2021, Mr. Goodwyn participated in the march to the United States Capitol, arrived sometime around or after 2:00 p.m., and then at some point after being around the Peace Monument to take pictures and talk to people, followed the crowd of marchers toward the west lawn Pennsylvania pathway and onto the grounds where no "closed" signs were visible. Mr. Goodwyn knew permitted rallies were to occur on or near the U.S. Capitol grounds on the afternoon of January 6, 2021. The United States Capitol Police had approved multiple permits. Upon his arrival, Mr. Goodwyn saw a massive crowd already on the grounds, with no signage or

barriers indicating entry was prohibited, and no signage indicating where the permitted rallies were located.

Mr. Goodwyn pled guilty to 18 U.S.C. § 1752(a)(1) because after entering an open door of the U.S. Capitol, where he believed he was allowed given police outside who stood silently watching people entering and departing, he delayed his departure by seconds. While outside he had no knowledge that he could not be present on the grounds, and was not told to leave. He wanted to support the debate and the presentation of evidence regarding the election. He knew nothing about the location or presence of the Vice President. He had no notice the grounds or building were restricted for the security of a United States Secret Service protectee.

Mr. Goodwyn was there to support Senator Cruz and the presentation of evidence within debates. He used a bullhorn to ask others to go inside and was ignored. He was not charged with using a bullhorn. He did not abet anyone else because nobody who could hear him paid him any attention, other than to say "no" or shake their heads "no." A bullhorn is not a computer nor was any bullhorn use part of his act for Section 1752(a)(1), entering or remaining in the Capitol building. Mr. Goodwyn was not livestreaming or exhorting anyone to riot or knowingly act illegally. Mr. Goodwyn did not use a computer to do anything illegal before, on, or after January 6, 2021. Mr. Goodwyn did not use a computer or his phone as part of the trespass violation he pled guilty to under Section 1752(a)(1): entering or remaining in a restricted building.

Mr. Goodwyn spent a good part of his time on January 6, 2021 taking photos and video of people and the large, peaceful crowd at his locations. Mr. Goodwyn had not seen violence and was not in the west side location where police were attacking the crowd of protestors with pepper balls, OC spray, flash bang grenade bags, overhead baton strikes, and other less lethal weapons. He was not present around any protestors being violent toward police. He did not learn of any violence,

including police injuries and the death of multiple protestors, until well after he left the Capitol grounds.

Mr. Goodwyn saw the open Senate wing door with a line of people peacefully entering as others departed. He crossed no police line to enter the grounds or the building. He walked inside for a very short distance. He stopped when he saw a police line. He was inside the building for under forty seconds. Nothing in this involved a computer or his communications by any means.

## II.    FACTS.

Mr. Goodwyn filed his timely notice of appeal on June 30, 2023. The Appellate Court issued its holding on February 1, 2024 that ordered the computer monitoring special condition of release vacated. The Court issued its formal mandate remanding the matter on March 26, 2024.

Mr. Goodwyn accepted responsibility and expressed his honest remorse for delaying (by some seconds) his departure from the building after seeing the police line and being told to leave. When exiting he stopped and briefly spoke to a blogger who was being allowed to remain and live stream from inside. He accepted responsibility for this delay after being told to leave the building.

Nothing Mr. Goodwyn did as related to his guilty plea to § 1752(a)(1) involved his use of a computer, phone, or social media.

Mr. Goodwyn did not ever encourage anyone to be violent or to cross a police line anywhere. He told the Court that he was opposed to all violence that day.

Nothing he did as related to his guilty plea to § 1752(a)(1) involved "disinformation" or "misinformation" except that he was the one misinformed that because rallies at the Capitol had received permits then he would be allowed to go to a designated spot.

Mr. Goodwyn did believe he was legally exercising First Amendment speech rights, as well as the right to lawfully assemble.

Although not a badged member of the Capitol press corps, part of Mr. Goodwyn's time on January 6, 2021 involved information gathering as a free-lance journalist where he might be paid for producing a story or contributing to a documentary.

As truthfully described on his Tucker Carlson show appearance in March 2023, Mr. Goodwyn did not do anything violent, he did not break anything, and he did not hurt anyone.

Mr. Goodwyn pled guilty on January 31, 2023 to his act of entering the Capitol building and not departing without a brief stop - in violation of 18 U.S.C. § 1752(a)(1).

Mr. Goodwyn's presence outside on the grounds and the act of remaining in the building for an extra five to ten seconds after being told to leave were not remotely related to and did not involve use of a computer or the exchange of any data over the internet.

The FBI seized and searched all Mr. Goodwyn's electronic devices in 2021, and also requested his communications from social media companies, where the FBI accessed his texts, posts, and available browser search history.

The evidence (or lack thereof) was that Mr. Goodwyn did not use his computer or the internet to seek materials related to the Capitol, such as blueprints or schematics that involved illegally entering and going throughout the U.S. Capitol building. What the FBI did find in texts or posts were internet flyers that advertised the permitted rallies at the U.S. Capitol.

The searches, including phone logs, showed that Mr. Goodwyn had no communications with anyone calling for violence or illegal acts. For example, as related to a person not charged with more than a 40 U.S.C. 5104 petty misdemeanor: Mr. Goodwyn's devices had no video or photos of Ray Epps exhorting people on January 5th and 6th to go into the Capitol building. There were no photos or videos of Ray Epps at the very front at the west side barrier breach urging the crowd and Ryan Samsel to push forward. There were no photos or videos of Epps walking right

in front of the police line by the west-side stage build-out plaza, or of Epps then pushing the large Trump billboard at police on January 6th. Mr. Goodwyn was not present on or near the grounds when Epps aided and abetted multiple breaches but was subsequently never charged for those crimes even after writing that he orchestrated events.

Mr. Goodwyn was not present when and where some protestors and police acted violently.

Mr. Goodwyn's computers and phones were previously searched by the Federal Bureau of Investigation after January 15, 2021, with no finding of any illicit or unlawful content whether for January 6, 2021 or otherwise.

The FBI images and copying of his electronics combined with data received based on subpoenas or use of domestic terrorism search requests showed that Mr. Goodwyn did not conduct on-line searches for the U.S. Capitol grounds or building diagrams. He did not use his computer or electronic devices to plan or attempt to violate any law.

The government did not recommend computer searches and monitoring as part of its sentencing memorandum.

Probation Services never recommended computer monitoring or searches in its private sentencing recommendation to the Court.

Nothing on Mr. Goodwyn's computer could be reasonably considered to be related to the "trespass" conduct that he was convicted for in violation of 18 U.S.C. § 1752(a)(1), Entering or Remaining in a Restricted Building.

On June 6, 2023, the second day of sentencing, Judge Walton verbally attacked Tucker Carlson, claiming he creates discord through misinformation, with Mr. Goodwyn also responsible for misinformation. Transcript 4:17-25; and 5:2-25 (ECF No. 110-1).

On June 6, 2023 Judge Walton again said he knew nothing of assaults by police or that they acted excessively. It is a fact that without the required warning the police fired less lethal munitions into the crowd - to include those peacefully praying. It is fact as contained on body worn cameras and other video that MPD Officer Lila Morris used overhand/overhead blows repeatedly on the unconscious Rosanne Boyland. It is fact as shown by body worn cameras and CCTV that MPD Lt. Bagshaw used punches and overhand lethal blows against the defenseless Victoria White. At 4:08 p.m., Bagshaw used his steel baton overhand like a spear, then switched to forehand and delivered at least six blows. Protestors who were doing nothing violent died and the Court stated it knew nothing of this, showing that censorship prevents exposing truth.



**LT Bagshaw above in white shirt delivering punches to the unarmed Ms. White's head**

This Court claimed only police were injured, it knew nothing of any injuries to or deaths of unarmed, peaceful protestors and; and that the murdered Ashli Babbitt brought her death on herself by calling for help as a man tried to break the door into the lobby while USCP Officers such as SGT Lively walked away and abandoned their posts at the lobby door.

The Court wanted to add itself as a content and viewpoint censor for Mr. Goodwyn without legal cause while only hearing the misinformation and partial truths that the DOJ and legacy media disseminate. January 6 defendants are largely being prohibited from presenting truth in the courtrooms, and now the Court asks Mr. Goodwyn to justify why the Court should not monitor, record, surveil, censor, and chill by threat of prison all speech by Mr. Goodwyn in any way related to January 6th. The monitoring would include spying on every aspect of his work for Stophate.com, web site development for private clients, privileged interviews for news reporting, and personal use of his computer and the internet: without even reasonable suspicion of any crime.



**Indiscriminate firing of less lethal munition killed Kevin Greeson[1]**

---

[1] One of the many videos can be found at https://rumble.com/v13koea-five-deaths-and-a-feast-for-the-vultures.html. A comprehensive video showing multiple provocations and excessive force can be found at https://open.ink/collections/j6



**Indiscriminate Use of Excessive Force (propublica.org video source using trolled data from Parler)**

The FBI labeled Mr. Goodwyn as a domestic terrorist to enhance its authority to investigate without warrants and subpoenas. Without probable cause or warrant the FBI continues to spy on him and January 6th defendants by use of software tools and agents for web crawling to scour the internet and social media for their faces, names, handles, posts, and even unconsented tags by other people.

The Pre-Sentence Investigation Report stated what is Constitutionally allowable regarding searches where for supervised release conditions, the court *could* impose a condition since those on release are treated less equal than other Americans but still have Constitutional protections where Mr. Goodwyn might be required to:

> submit to a search of [his] person, property, residence,
> adjacent structures, office, vehicle, papers, computers
> (as defined in 18 U.S.C. § 1030(e)(1)), and other electronic
> communications or data storage devices or media,
> conducted by a U.S. Probation Officer. Failure to submit
> to a search may be grounds for revocation. . . . **An officer**

> **may conduct a search pursuant to this condition only when**
> **reasonable suspicion exists that you have violated a**
> **condition of your release and/or that the area(s) or item(s) to**
> **be searched contain evidence of this violation or contain**
> **contraband. Any search must be conducted at a reasonable**
> **time and in a reasonable manner.**

1:21-cr-00153, ECF No. 99 at 23. (Emphasis added).

The above standard that has passed higher courts' muster and is used for those on supervised release is not the standard attempted to be used by this Court. The Court said on January 6, 2023, without any facts outside of viewpoint discrimination or notice,

> since he has used social media to provide what I consider disinformation
> about this situation, I would require that he permit his computer use to be
> subject to monitoring and inspection by the probation department to see if he
> is, in fact, disseminating information of the nature that relates to the events
> that resulted in what occurred on January 6, 2021.

June 6, 2023 Transcript 12:18-24.

The above is a content and viewpoint-based restraint on speech where Mr. Goodwyn could be imprisoned for not espousing the Court's view. The Court issued the written judgment Order on June 15, 2023. The Order included a new special condition of release not discussed at the sentencing hearing. The without notice special condition mandates installation of unspecified software (and likely hardware) for invasive surveillance and monitoring of all computer activity:

> To ensure compliance with the computer monitoring condition, you
> must allow the probation officer to conduct initial and periodic
> unannounced searches of any computers . . . subject to computer
> monitoring. These searches shall be conducted to determine whether
> the computer contains any prohibited data prior to the installation of
> the monitoring software, whether the monitoring software is
> functioning effectively after its installation, and whether there have
> been any attempts to circumvent the monitoring software . . . .

Order ECF No. 108 at 5.

There is no law against providing an opinion that this Court disagrees with. There is no criminal law against what the government wants to label and censor as misinformation or disinformation on social media or in personal opinion writings.  Without any accountability to date, the U.S. Government  disseminated disinformation and misinformation in regard to its claimed efficacy of the COVID-19 vaccine - even after it knew the vaccine did not provide immunity or prevent transmission. The Government did not tell Americans that N-95 face respirators may be 95% effective but that surgical and cloth face masks were at best ~40-60% effective in stopping Corona virus droplets and particles indoors, did nothing outdoors, and were bacteria and other filth carriers. The Government falsely led legacy broadcast media to say that Ivermectin was not a viable therapeutic to treat COVID-19.  Laws and torts may apply to the Government's actions where it caused harm. But no law allows the U.S. Government to censor viewpoints and place private U.S. citizens in prison for viewpoints the government finds disagreeable. Those cheering on Hamas terrorism against Israel have not been charged criminally.

There is no law against or common definition of "disinformation." It originates from the old Soviet Union intelligence agency and the operational term "dezinformatsiya" (alternately maskirovka) for state-sponsored campaigns to deceive enemies. Mr. Goodwyn has never deliberately posted false information and never worked for any intelligence agency.

Merriam Webster defines "misinformation" as false or misleading information.[2] Multiple dictionaries distinguish "misinformation" and "disinformation" as different based on intent. Misinformation involves error or ignorance. Disinformation is deliberate. Neither is a crime by itself. There is no U.S. law yet where the government can allege a crime for viewpoint and content in speech that the government disagrees with.

---

[2] Merriam-webster on-line at: https://www.merriamwebster.com/dictionary/misinformation (last visited September 1, 2023).

The Court asks why it should not add hardware and software to the modem, router, and devices to spy on Mr. Goodwyn to identify any speech content and viewpoint it disagrees with. The First and Fourth Amendments to the United States Constitution provide the answer. Statute 18 U.S.C.§ 3583 regarding release conditions also provides the answer.

The Appellate Court wrote on February 1, 2024:

> it is ORDERED that the computer-monitoring condition be vacated and the case be remanded for further proceedings. The district court plainly erred in imposing the computer-monitoring condition without considering whether it was "reasonably related" to the relevant sentencing factors and involved "no greater deprivation of liberty than is reasonably necessary" to achieve the purposes behind sentencing. 18 U.S.C.§ 3583(d)(1), (2); see *United States v. Burroughs*, 613 F.3d 233, 242–46 (D.C. Cir. 2010).

Goodwyn Appeal USCA Case #23-3106, Document #2038504, February 1, 2024

The Appellate Court laid the burden on this Court where, if instead of removing the computer monitoring condition from the judgement order it chose to reimpose the special condition, this Court must show the reasons within the law that support reimposition:

> If the district court decides on remand to impose a new computer-monitoring condition, "it should explain its reasoning," "develop the record in support of its decision," and ensure that the condition accords with 18 U.S.C. § 3583(d) and constitutional protections. *Burroughs*, 613 F.3d at 246.

*Id*.

No old or new facts exist to show that Mr. Goodwyn used his computer, phone, or the internet to violate 18 U.S.C. Section 1752(a)(1). Nothing can support the reimposition as being the least restrictive measure should there be anything related to the Section 1752 crime.

### III.   LEGAL STANDARD.

**A. Pursuant to 18 U.S.C. § 3583(d), the applicable, relevant conditions of supervised release to this case must**:

[1] be reasonably related to at least one of the following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs.

[2] ... involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation.

[3] ... be consistent with any pertinent policy statements issued by the Sentencing Commission.

18 U.S.C. § 3583(d)

**B. Pursuant to The U.S. Sentencing Guidelines Manual (USSG) §5D1.3 - Conditions of Supervised Release Standards for Discretionary Conditions**

**The USSG overall state that "special conditions" may be imposed in the case of:**

(1) support of dependents. . . (2) debt obligations. . .
(3) access to financial information. . . (4) substance abuse. . .
(5) mental health. . . (6) deportation. . . (7) sex offenses. . .
(8) unpaid restitution, fines, or special assessments. . .

18 U.S.C.S. Appx. § 5D1.3

**§ 3583, USSG §5D1.3(b) requires discretionary supervised release conditions**:

(1) are reasonably related to
  (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
  (C) the need to protect the public from further crimes of the defendant; and
  (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above

USSG §5D1.3(b)

§ 5D1.3(d)(7) (2007); and § 5D1.2 cmt. n. 1. specify that Conditions "limiting the use of a computer or an interactive computer service make the list, **but only 'in cases in which the defendant used such items.'" § 5D1.3(d)(7)(B).**

By implication, restrictions on computer or internet access are not categorically appropriate in cases where the defendant did not use them to facilitate his crime." *Burroughs*, 613 F.3d at 242.

**C. 18 U.S.C. § 3553(a), Imposition of a Sentence, requires that the court shall consider:**

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed -
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or . . . .

18 U.S.C. § 3553(a)

## IV.   ARGUMENT.

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." W. Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

The First and Fourth Amendments to the United States Constitution, the sentencing and special release conditions statutes, and the USSG do not support reimposition of the computer surveillance and monitoring. Because Mr. Goodwyn's speech is protected; where any unwarranted searches not related to a suspected, ongoing crime are unreasonable; and the relevant statutes prohibit both adding a release condition that is not related to the crime of conviction and one that is not the least restrictive or burdensome on liberty, this Court should not entertain reimposition of computer monitoring and searches.

**A. Any Re-Imposition of Computer and Internet Monitoring and Searches Will Remain Outside the Law.**

Computer monitoring of Mr. Goodwyn's speech, and his computer use does not have any relation to the 18 U.S.C. Section 1752(a)(1) trespass crime that was the subject of conviction and sentencing. This Court disagreed with Mr. Goodwyn's viewpoints and speech. None of Mr. Goodwyn's speech prior to or on January 6, 2021 had anything to do with trespass and knowingly committing any crime. The Court cannot impose the special condition of supervised release as being specifically related to computer and electronic device use during violation for Section 1752(a)(1) that meets the factors set forth in 18 U.S.C. § 3553, the USSG, or 18 U.S.C. § 3583. The special condition remains invalid because it has no relation to the convicted offense.

Undermining any validity to past or future imposition of computer searches and monitoring, the Court announced on June 6, 2023 that the purpose was to monitor and search for what some unknown person will report as disinformation speech about January 6, 2021 so that Mr. Goodwyn can be imprisoned. Because no facts have changed that could make the absence of computer or internet use part of the trespass crime, and everything about the special condition is unreasonable and outside the factors specified in the law for this case, it should not be reimposed.

The special condition should not be reimposed because in addition to no computer being used for violation of Section 1752(a)(1), the condition here will continue to fail the statutes' requirement to be the least restrictive measure needed  with "no greater deprivation of liberty than is reasonably necessary for the purposes identified in that section." *United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013). Citing 18 U.S.C. § 3583(d)(1), (2)).

Mirroring 18 U.S.C. § 3583, the USSG §5D1.3 Conditions of Supervised Release Standards that apply to computer monitoring cannot be satisfied in this case. Nothing in Mr.

Goodwyn's case infers that the Court should apply any computer monitoring special condition since the requirement clearly is that the special condition have a legitimate basis for or from:

> (1) support of dependents. . . (2) debt obligations. . .
> (3) access to financial information. . . (4) substance abuse. . .
> (5) mental health. . . (6) deportation. . . (7) sex offenses. . .
> (8) unpaid restitution, fines, or special assessments. . .

18 U.S.C.S. Appx. § 5D1.3

As stated in his Appellate Brief (USCA Case #23-3106 Document #2015295), a majority of computer monitoring special conditions arise from crimes where they were committed directly and with the integral use of a computer, largely for child pornography and sexual abuse of children. Defendants convicted of identity theft, hacking, and wire fraud that relied on computers to commit their crimes also might have computer monitoring special conditions applied. These can be correlated with the § 5D1.3  factors listed directly above. "Disinformation" and "Misinformation" are not factors that can be correlated legally with anything to justify spying, and a deprivation of liberty and Constitutional rights. The appealed cases that involved computer monitoring were in the majority for crimes that involved child pornography or a similar threats to children. And in those cases, if a computer was not integral to the crime, the special condition of computer monitoring was vacated. In Mr. Goodwyn's case, his non-crime was to have viewpoints the government may disagree with, whether through bias or choosing to remain uninformed. The idea that the Court can censor and eliminate discussion is an affront to liberty. Because of this, the Court should not further entertain reimposing the special condition that the Appellate Court vacated.

A special condition of release for computer and electronic device searches, with monitoring software installation based on no reasonable suspicion or probable cause related to a crime, and with no relation here to the 18 U.S.C. Section 1752(a)(1) trespass crime that was the subject of

conviction and sentencing, is substantively unreasonable and remains outside the law. The *Burroughs* case has similarities to Mr. Goodwyn's case. Burroughs did not use a computer to facilitate his crimes. The government searched his computer after arrest, and found nothing illegal. "Not knowing the court's reasons for imposing these conditions, finding the government's reasons unsupported by the record, and unable to identify any ourselves, we vacate the conditions as plainly out of sync with the relevant factors and remand for further proceedings." *U.S. v. Burroughs*, 613 F.3d 233, 242 (D.C. Cir. 2010).

Likewise, *United States v. Perazza-Mercado*, 553 F.3d 65(2009) is analogous. The crime he was sentenced for had no relation to use of a computer or digital device. "By implication, restrictions on computer or Internet access are not categorically appropriate in cases where the defendant did not use them to facilitate his crime." *Burroughs*, 613 F.3d at 242. The courts across the circuits generally vacate special conditions with computer monitoring or preclusion of internet use where no digital device or internet use facilitated the crime of conviction and sentence, and the condition is not the least restrictive to protect the public from ongoing crime by the defendant. There is no ongoing or possible ongoing crime of trespass by Mr. Goodwyn. He did not use his computer or the internet to violate Section 1752(a)(1). He did not entice anyone else to trespass by use of his computer. Spying for undefined and arbitrary accusations of "misinformation" and "disinformation" should not be cause for Mr. Goodwyn's imprisonment due to his protected speech and thoughts on topics of the day, regardless of who in government disagrees with him.

Courts recognize that in addition to employment requirements, people use the internet for a myriad of legal activities such as paying bills, news and weather updates, and communications with friends and family. *U.S. v. Love*, 593 F.3d 1 (D.C. Cir. 2010) at 12. Surveilling internet activity and data on phones and computers exposes a person's life. This Circuit recognized the

negative impact on liberty in *United States v. Malenya*, 736 F.3d 554, 560 (D.C. Cir. 2013). There is no indication that this Court previously considered the consequences to Mr. Goodwyn's privacy, the privacy of his clients, the backdoor invasion of the journalistic site StopHate.com that he contributes to, and the negative impact any search and monitoring poses to his self-employment.

Reimposition of computer surveillance and monitoring means that Mr. Goodwyn's self-employment will be impeded, and his clients will not want the government surveilling them and their proprietary interests. The Tenth Circuit provides that "conditions of release that impinge on a defendant's ability to seek, obtain, and maintain employment are subject to "special scrutiny," the standards of which are set forth in U.S.S.G. § 5F1.5. *United States v. Dunn*, 777 F.3d 1171, 1177 (10th Cir. 2015)((Quoting *United States v. Butler*, 694 F.3d 1177, 1184 (10th Cir. 2012)).

This special condition will serve no purpose besides government intimidation in efforts to chill his speech and legal discourse, with a direct path to prison for Mr. Goodwyn's protected speech. There is no legitimate reason under the USSG or statutes' factors to impose this condition.

Because a special condition of supervised release mandating searches and the installation of monitoring software on Mr. Goodwyn's computer and devices will be substantively unreasonable given no direct relation to the Section 1752(a)(1) "trespass" crime he was sentenced under, and will be a direct invasion of privacy with excessive deprivation of his liberty, it should not be reimposed.

**B. Any Reimposition of Computer Monitoring and Searches Will be Unconstitutional Because There is No Standard for Applying "Disinformation" or "Misinformation"**

As stated in his Appellate brief, because the special condition of the sentence strays outside the requirement for the computer monitoring and search condition to be directly related to the crime sentenced for, to include facilitation of the crime, the special condition should be vacated.

It serves no purpose other than to violate the First and Fourth Amendments. It appears to chill, if not stop, speech.

As stated in his Appellate Brief, while some software specifically identifies and flags computer users who visit certain websites or use particular language when it comes to child pornography and sexual exploitation, any searches and monitoring here will operate like a hidden sword against protected speech and sensitive communications. There is no standard for what will violate the "disinformation" label. There is no software for "disinformation." There are and can be no keys for disinformation. There is no identification of who will be the Ministry of Truth in deciding what will be declared true, what Americans such as Mr. Goodwyn are allowed to discuss, and what will be declared as taboo because of disagreement with government. With no standards and no legitimate application, a decision about "misinformation" and "disinformation" can only be arbitrary and unconstitutional.

A decision to reimpose computer monitoring and searches to spy on Mr. Goodwyn's speech and views will violate the First Amendment because the special condition in this case could not pass strict scrutiny review. Strict Scrutiny review requires the Government "to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U. S. 721, 734, (2011).

Preventing discourse and disagreement is antithetical to free speech. "The right to free speech, of course, includes the right to attempt to persuade others to change their views, and may not be curtailed simply because the speaker's message may be offensive to his audience." *Hill v. Colo.*, 530 U.S. 703, 716 (2000). This holds as long as the audience can walk away if it finds something truly offensive. As stated in his Appellate Brief at 29, "there is implied censorship and the reason of the special condition in searching for and monitoring 'disinformation' goes to a

viewpoint; where based on that and vagueness, is facially invalid. Who determines "disinformation?" What is the compelling government interest?"

The Circuit Court did not reach this First Amendment appeal issue because the special condition failed to meet the factors and standards under the law for special conditions and sentencing. If the Court is interested in Mr. Goodwyn's research, knowledge, and views on subjects, he might be available for Zoom dialogue upon request through the undersigned. However, because reimposition of the special release condition of computer searches and monitoring will violate the First Amendment, and attempts to chill open dialogue that is the foundation of American liberty, the condition should not be reimposed. Mr. Goodwyn's arguments about the Fourth Amendment are imbedded throughout the argument supra and likewise, the condition should not be reimposed so as to not violate the Fourth Amendment.

## V.   CONCLUSION

Because there is no legal justification to reimpose the computer search and monitoring special condition, and any such reimposition will violate the referenced statutes as well as the First and Fourth Amendments to the U.S. Constitution, the Court should accept the decision by the Circuit Court to vacate.

WHEREFORE, given good cause and the law, the Court should reissue the Sentencing Order at ECF No. 108 after eliminating the computer monitoring special condition of release.

Dated May 10, 2024                              Respectfully submitted,

                                        /s/ *Carolyn A. Stewart*
                                        Carolyn A. Stewart, Bar No. FL-0098
                                        Defense Attorney
                                        Stewart Country Law PA
                                        1204 Swilley Rd.
                                        Plant City, FL 33567
                                        Tel: (813) 659-5178
                                        E: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 10th day of MAY 2024, a copy of the foregoing was served upon all

parties as forwarded through the Electronic Case Filing (ECF) System.

                              /s/ Carolyn A. Stewart
                              Carolyn A. Stewart, Esq.