UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 21-cr-153 (RBW) |
| v. | : | |
| | : | |
| DANIEL GOODWYN, | : | |
| | : | |
| Defendant | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SHOW CAUSE FILING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to "Defendant's Response to ECF No. 119, 121." *See* ECF No. 122. The defendant, Daniel Goodwyn, has used and continues to use social media and websites to encourage others to threaten police officers, fundraise to commit his crimes, view extremist media, and endanger the public. Therefore, the Court can reinstate the supervised release restriction[1] so long as it is narrowly tailored and supported by appropriate findings.

Given Goodwyn's conduct and the Court's statements at Goodwyn's sentencing, the Court may restrict Goodwyn's access, view, or use of any online social media, as well as his access view, use, or possession of any extremist media, consistent with the restrictions imposed in other cases:

> Social Media Restriction - You must seek the approval of the probation officer if you wish to access, view or use any online social media. You must not download any social media apps to your phone or computer. You must not access social media on any other device not approved by the probation office. Social media includes social media sites, chat services, blogs, instant messages, SMS, MMS, digital photos, video sharing websites, emails or any other interactive, online, or electronic communication applications or sites.

> Propaganda Restriction - You must not access, view, use or possess any extremist media. This includes material, such as literature, video, photos, social media, from groups or individuals who promote the use of violence to further an ideological or religious cause. If you inadvertently access, view, use or possess such material you must immediately report this to the probation officer.

---

[1] Goodwyn was released from custody on August 25, 2023.

1

>Computer Monitoring/Search - To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. You must allow the probation officer to install computer monitoring software on any computer. This includes desktops, laptops, mobile devices, smartwatches, gaming systems, private servers, or any other high-speed data processing device performing logical, arithmetic, or storage functions. These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.
>
>- You must not use any services designed to encrypt disguise, mask, or anonymize your online activity, such as TOR, I2P, Freenet, Freepto, Tox, Virtual Private Networks or other anonymizing applications, services, or sites.
>
>- You shall not use any online gaming services or systems, including mobile device applications.

*USA v. Rhodes, III et al.*, 22-cr-15 (APM), ECF No. 624 at 7. These restrictions are reasonably related to the statutory sentencing goals of protecting the public, specific deterrence, and rehabilitation and will not result in any greater deprivation of liberty necessary to meet those goals.

I.      **Factual Background**

On November 7, 2020, Goodwyn posted a picture on Twitter ("tweeted") of the Proud Boys[2] logo and stated, "Stand back and stand by! Show up at your state Capitol at noon today local time. Await orders from our Commander in Chief. #StopTheSteal! StopTheSteal.US." ECF No.

---

[2] Proud Boys is a nationalist organization with multiple U.S. chapters and potential activity in other Western countries. The group describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where they sometimes engage in violence against individuals whom they perceive as threats to their values.

83 at ¶ 9. On December 28, 2020, the Defendant tweeted "#FightForTrump" and "#StopTheSteal" and linked a GiveSendGo account where he solicited donations to fund his travel to Washington, D.C. on January 6, 2021. *Id.*

On January 1, 2021, Goodwyn traveled from San Francisco to Washington, D.C. to protest Congress' certification of the Electoral College. *Id.* at ¶ 8. On January 6, 2021, Goodwyn attended the "Stop the Steal" rally near the Washington Monument. *Id.* at ¶ 10. Image 1 below is a still frame from a video posted to Goodwyn's Instagram account which shows an interview of Goodwyn near the Washington Monument on January 6, 2021. During the interview, Goodwyn says, in part, "Proud of your boy . . . free Enrique[3] . . . we use to back the blue, now we don't back the blue no more. We back the yellow. The Proud Boys."



*Image 1: Goodwyn (circled in yellow) making a Proud Boy hand gesture*

Shortly thereafter, Goodwyn marched to the Capitol and entered the restricted perimeter. *Id.* at ¶¶ 10 and 18. Between 2 p.m. and 4 p.m., Goodwyn was a part of the crowd that had gathered on the Upper West Terrace of the Capitol near the Senate Wing Door entrance to the Capitol. Outside of this door, Goodwyn used a bullhorn to incite others to go into the Capitol. *Id.* at ¶ 11. He yelled through the bullhorn, "behind me, the door is open . . . we need you to push forward, forward . . . we need critical mass for this to work . . . go behind me and go in." *Id.*

---

[3] Enrique Tarrio was the leader of the Proud Boys in January 2021 and was arrested before January 6, 2021. *United States v. Nordean et al.*, 21-cr-175 (TJK), ECF No. 305 at ¶¶ 6 and 22.

Goodwyn entered the Capitol through the open Senate Wing door at 3:32 p.m. and left around 36 seconds after he entered. *Id.* at ¶ 13. As he entered, an officer reached out and touched him, but Goodwyn continued inside the Capitol. *Id*. While exiting the Capitol, Goodwyn was called out as "sfthoughtcriminal" by Anthime Gionet, aka "Baked Alaska,"[4] who was inside the Capitol livestreaming his broadcast. *Id*. Goodwyn slowed down and paused to identify himself on the video as "Daniel Goodwyn" after being told to leave the building by a law enforcement officer. *Id*. Goodwyn also yelled to another rioter to get the police officer's badge number and that the officer was an "Oathbreaker." *Id*.

Throughout the day, Goodwyn responded to several text messages from his brother, who was checking to make sure Goodwyn was okay. Goodwyn responded to the inquiries, "yes I'm safe" and "I went inside." *Id.* at ¶ 14. When asked, "Inside where?", Goodwyn said, "The capitol building." The individual asked Goodwyn why he went inside and, over the next few hours, Goodwyn wrote, "That's what we were doing," and sent a link to a CBS News live update article that followed the certification of the Electoral College vote. *Id*.

*Post January 6 Interviews and Social Media*

On March 14, 2023, less than two months after his guilty plea before this Court on January 31, 2023, Goodwyn sat for an interview with Tucker Carlson on Fox News Channel. In the introduction of the interview, Carlson described Goodwyn's conduct on January 6 as only being in the Capitol for less than a minute. Carlson then turned to Goodwyn and asked him, "I just want to be as fair and transparent as possible, is there anything you're leaving out? Did you commit vandalism? Did you hurt anyone?" Goodwyn correctly replied that he did not hurt anyone or steal

---

[4] Gionet, who goes by the pseudonym "Baked Alaska," was charged and sentenced for his involvement in the riot on January 6. 1:22-CR-00132 (TNM).

anything. Goodwyn, however, left out three key facts of his conduct. He did not mention that before going inside, he used a bullhorn to incite other rioters to go into the Capitol. He did not mention that he ignored police orders to leave given to him immediately upon his entry. He did not mention that even after acknowledging those orders, he stayed in the Capitol to talk to another rioter.

Carlson asked Goodwyn if there was anything the viewers could do to help January 6 defendants. Goodwyn identified www.stophate.com/J6 as a website where people could donate to those defendants. This website, run in part by Goodwyn, contained a fundraiser page with an unsorted list of January 6 defendants.[5] At the top of the page, Goodwyn is listed as the first defendant that people could donate to. Goodwyn's fundraising page has received $27,323.25 in contributions thus far.[6] Goodwyn has another fundraising page on Stoptheate.com that has raised $6,465 dollars.[7] During the interview, Goodwyn minimized his conduct on January 6, showed a complete lack of remorse, and attempted to curry sympathy with viewers to get them to visit this website and give him money.

Goodwyn is a team member of Stopthehate.com. Image 2 below shows him listed as a team member and it links to his website, "DanielGoodwyn.com":

---

[5] The link to this page is https://stophate.com/shdod. This page is active as of May 13, 2024.
[6] https://donorbox.org/daniel-in-the-lions-den. Current as of May 13, 2024. This total is $1,647 dollars more than at the time of the Governments Sentencing memo on May 18, 2023.
[7] https://www.givesendgo.com/j6-daniel-goodwyn. Current as of May 13, 2024. This fundraiser is updated with narratives, the most recent being April 8, 2024, which cites to Stopthehate.com and Amnesty National, another website operated by Goodwyn.



*Image 2: Screenshot of the team section of www.stophate.com*

On DanielGoodwyn.com, Goodwyn has a bio that states, "I've worked with the top investigators to collect and currate [*sic*] the most important January 6 evidence to exhonerate [*sic*] Trump and the election integrity protesters who the Brandon Administration has turned into POLITICAL HOSTAGES!⁸ He continues, "P.P.S. Find out the top 3 ways other Patriots help J6ers who are locked up RIGHT NOW when you subscribe with your email address above!" His bio also contains a list of his current activism, "With Stop Hate.com, I helped work on Righting History, Bloody Hill, 1000 Days of Terror, and J6: A True Timeline."

---

⁸ https://danielgoodwyn.com/#bio. Current as of May 13, 2024.

6

Righting History is a section of Stopthehate.com with links to a video related to January 6, 2021. The first words of the teaser for this video state, "When it comes to the Capitol, they are lying to you about everything." The video then falsely implies the police were killing those present.[9]

Bloody Hill is a January 6 related movie that pushes false January 6 narratives such as the law enforcement used excessive force during the riot.[10] Goodwyn states he helped research the film and he links to it on his website, DanielGoodwyn.com.[11]

1000 Days of Terror is a website with a video discussing false narratives from January 6, 2021, including that the police instigated the fighting with rioters.[12] This website also has a section titled "Most Wanted." This section contains a deck of playing cards titled, "January 6 Most Wanted Playing Cards." These cards have pictures of U.S. Capitol Police officers' (USCP) faces with their names and titles. Image 3 is one of the 16 cards targeting USCP officers and labeling them as wanted for "Terrorism."

---

[9] https://stophate.com/righting-history. Current as of May 13, 2024.
[10] https://www.bloodyhill.com/. Current as of May 13, 2024.
[11] Current as of May 13, 2024.
[12] https://www.1000daysofterror.com/. Current as of May 13, 2024.



*Image 3: One of 16 paying cards targeting USCP officers with the officer's face and name redacted*

Image 4 shows Goodwyn is listed as a team member of the 1000 Days of Terror.[13]



*Image 4: Goodwyn is listed as a team member for 1000 Days of Terror and he continues to minimize his conduct on January 6*

---

[13] https://www.1000daysofterror.com/team/. Current as of May 13, 2024.

The bio section of DanielGoodwyn.com states he has the following social media accounts: Telegram, Gab, Truth Social, Instagram, Twitter, Github, Linkedin, and Wellfound. Goodwyn continues to deny responsibility for his actions on social media and pushes false narratives. Image 5 is a post by Goodwyn on his Instagram where he referred to himself as "kidnapped by the FBI and DOJ and held hostage in TX for 3 years." Goodwyn does not mention he pleaded guilty to violating federal law, that he directed rioters with a bullhorn to "push forward, forward . . . [and] we need critical mass for this to work."



*Image 5: Goodwyn refers to himself as kidnapped by the FBI and DOJ*

Goodwyn is a prolific user of the social media website Instagram. Goodwyn's Instagram account has three pinned posts.[14] The first pinned post is a video of Goodwyn leaving federal prison with the caption:

---

[14] A pinned post is a post from any date selected by the user to be at the top of their feed. This is used to amplify a post to get the most attention.

> daniel.goodwyn Spending time in federal prison for being present at the election integrity protest has only radicalized and cemented my Christian faith and pushed me further towards the constitution, the political right, and activism. Meeting other J6ers in there has only strengthened my resolve to work towards the full exoneration and release of every last Patriot."

The other pinned Instagram posts are video footage of Goodwyn on January 6 discussing the Proud Boys (Image 1) and the other is Goodwyn's interview with Tucker Carlson where he minimized his conduct on January 6, 2021.

Goodwyn has numerous Instagram posts related to the events of January 6, 2021, including posts pushing false narratives that rioters were "beat to death," that the rioters were not violent, and even statements that contradict his most recent filing to this Court.[15] For example, Image 6 is an Instagram post by Goodwyn on November 24, 2023. Here, Goodwyn posts a photograph of himself on January 6, 2021, posing on a USCP motorcycle with lines of police officers behind him. This appears to place Goodwyn on the West Plaza during the fighting and violence, contrary[16] to his statement, "Goodwyn was not present when and where some protestors and police acted violently." ECF No. 122 at 5.

---

[15] March 19, 2024, Instagram video shared by Goodwyn.
[16] Goodwyn makes many counterfactual claims in his motion. For example, he states, "Goodwyn did not ever encourage anyone to be violent or to cross a police line anywhere." ECF No, 122 at 3. This is not true. Goodwyn witnessed rioters overrun several police lines, after which Goodwyn utilized a bullhorn to encourage rioters to enter the Capitol as the fire alarms were ringing and rioters were climbing through broken windows. ECF No. 83 at ¶ 11.



*Image 6: Goodwyn leaning against a USCP motorcycle*

Goodwyn continues to use social media to meet and associate with fellow January 6 defendants, endangering the public and preventing his rehabilitation. For example, Image 7 is a photograph posted by Goodwyn on his Instagram on December 6, 2023. The image shows Goodwyn posing with Adam Johnson, who was convicted by this Court of three counts related to his conduct on January 6, 2021. *United States v. Adam Johnson*, 21-cr-648 (RBW), ECF No. 58.



Image 7: Goodwyn with Adam Johnson

*Plea, Sentencing, and Remand*

For his conduct during the January 6, 2021, attack on the Capitol, Goodwyn pleaded guilty pursuant to a plea agreement to entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). Goodwyn was sentenced on June 6, 2023, to 60 days of incarceration followed by one year of supervised release. The Court also imposed a special condition:

> And since [Goodwyn] used social media in order to provide what I consider to be disinformation about this situation, I would require that he permit his computer use to be subject to monitoring and inspection by the probation department to see if he is, in fact,

12

disseminating information of the nature that relates to the events that resulted in what occurred on January 6th of 2021.

ECF No. 113 at 12. On February 1, 2024, the D.C. Circuit vacated the restriction and remanded the case for further findings and clarification of the special condition regarding the monitoring of Goodwyn's computer for disinformation:

> ORDERED that the computer-monitoring condition be vacated and the case be remanded for further proceedings. The district court plainly erred in imposing the computer-monitoring condition without considering whether it was "reasonably related" to the relevant sentencing factors and involved "no greater deprivation of liberty than is reasonably necessary" to achieve the purposes behind sentencing. 18 U.S.C. § 3583(d)(1), (2); see United States v. Burroughs, 613 F.3d 233, 242–46 (D.C. Cir. 2010). If the district court decides on remand to impose a new computer-monitoring condition, "it should explain its reasoning," "develop the record in support of its decision," and ensure that the condition accords with 18 U.S.C. § 3583(d) and constitutional protections. Burroughs, 613 F.3d at 246.

ECF No. 118.

On April 17, 2024, this Court issued an order for Goodwyn to show cause why the computer-monitoring restriction should not be reimposed. ECF No. 119.

Goodwyn responded, asking the Court to dismiss the special condition, again denying responsibility for his actions, and arguing false narratives related to January 6. His arguments are not supported by the facts or the law. The Court may impose this special condition if it makes appropriate factual findings and the special condition is narrowly tailored to accomplish the statutory sentencing goals. Goodwyn's past and present use of social media to deny responsibility and push false narratives related to January 6 supports the Court's authority to impose this special condition.

II. **Argument**

The Court has broad discretion to impose special conditions of supervised release conditions that are reasonably related to the statutory sentencing goals if those conditions "involve no greater deprivation of liberty than is reasonably necessary for [those] purposes." 18 U.S.C. §§

13

3553(a) and 3583(d)(3). Throughout the pendency of Goodwyn's case, he has made untruthful statements regarding his conduct and the events of the day, he has used websites and social media to place targets on police officers who defended the Capitol, and he has used these platforms to continue to publish and view extremist media. Imposing the requested special conditions would protect the public from further dissemination of misinformation, aid in his rehabilitation, provide specific deterrence from him committing similar crimes, and would be narrowly tailored to accomplish the goals of the sentencing factors.

> A. **The Court has discretion to impose the proposed conditions of supervised release if they are reasonably related to the statutory sentencing goals and they do not result in any "greater deprivation of liberty that is reasonably necessary" to meet those goals.**

The Court may impose, as part of supervised release, "any . . . condition it considers to be appropriate." 18 U.S.C. § 3583(d). Such a special condition may include "a discretionary condition" typically associated with probation under Section 3563(b). *Id*. It may also include "any other condition," so long as the condition satisfies the following three factors: (1) it "is reasonably related to" the Section 3553(a) sentencing factors, (2) it "involves no greater deprivation of liberty than is reasonably necessary" for achieving the Section 3553(a) sentencing factors, and (3) it "is consistent with any pertinent policy statements issued by the Sentencing Commission." *Id*.

The Court has "wide discretion when imposing terms and conditions of supervised release." *United States v. Hunt*, 843 F.3d 1022, 1030 (D.C. Cir. 2016) (quoting *United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006)). And "[s]eparating a convicted felon from negative influences in his prior life is reasonably related to the permissible goals of deterrence and rehabilitation and is a common purpose of supervised release." *Id*. at 1031 (quoting *United States v. Watson*, 582 F.3d 974, 983 (9th Cir. 2009)).

14

Goodwyn argues that the Court cannot impose the special condition because "[t]his Court disagreed with Mr. Goodwyn's viewpoints and speech." This is not the case. Of course, defendants on supervised release have less freedom than those who have finished their sentences, and courts may impose restrictions even if they impinge on First Amendment rights. *United States v. Knights*, 534 US 112, 119 (2001). But before imposing a supervised release condition, the district court must make specific factual findings that the condition is "reasonably related" to one of the statutory sentencing goals: (1) the nature and circumstances of the offense conduct and the defendant's history and characteristics; (2) deterrence of the defendant's future criminal conduct; (3) protection of the public; and (4) the defendant's need for training and treatment. *See* 18 U.S.C. §§ 3583(d)(1), 3553(a); USSG § 5D1.3(b); *United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006).

In any event, the use of such monitoring conditions does not necessarily translate to an infringement of Goodwyn's free speech rights. Simply posting something covered by the First Amendment would not trigger a violation – rather – the tool is intended to help the U.S. Probation Office tailor the defendant's rehabilitation accordingly. No different than a U.S. Probation Officer who will check a drug trafficker for possible contraband, the search and review of possibly concerning material is unquestionably helpful towards meeting the goals of deterrence and rehabilitation in this context.

Where properly tailored, computer and internet restrictions are widely recognized as appropriate considerations for special conditions of supervised release, most notably in child pornography cases and cases in which computers have been used to facilitate the offense. *See e.g., United States v. Rock*, 863 F.3d 827, 832 (D.C. Cir. 2017) (upholding, under plain-error review, qualified internet bans where the defendant used a computer to distribute child pornography); *United States v. Bolin*, 976 F.3d 202, 211-13 (2d Cir. 2020) (upholding supervised release

15

conditions prohibiting the defendant from online activity promoting/endorsing violence as reasonably related to the defendant's false statement to the FBI about his social media activity praising a white supremacist mass-murderer).

In addition to being narrowly tailored to avoid being overly broad, a supervised release condition must not be unconstitutionally vague. Vagueness is mainly concerned with adequate notice of prohibited conduct and delineating clear limits on the government's enforcement powers. But the court does not have to craft the supervised release condition with exhaustive specificity. *United States v. Comer*, 5 F.4th 535, 541-42 (4th Cir. 2021). To avoid a due process vagueness challenge, a supervised release condition "need only give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *United States v. Balon*, 384 F.3d 38, 43 (2d Cir. 2004) (cleaned up). *See United States v. Abbate*, 970 F.3d 601, 604 (5th Cir. 2020) (a supervised release condition need not describe every possible permutation but must satisfy § 3583(d) and involve no greater deprivation of liberty—constitutionally protected or otherwise—than necessary to achieve the statutory goals).

Courts have imposed similar restrictions on defendants convicted of terrorism crimes, including restrictions on association and extremist content. *See, e.g., United States v. Rakhmatov*, No. 21-151, 2022 WL 16984536, at *3 (2d Cir. Nov. 17, 2022) (per curiam) (affirming conditions limiting association with terrorist enterprises and accessing content from "radical extremist group[s]"); *United States v. Doe*, 323 F. Supp. 3d 368, 390, 392 (E.D.N.Y. 2018) (after noting the "lack of data on terrorist recidivism rates," imposing special conditions that defendant (a) not "associate with any individuals involved in any radical extremist groups," or (b) "access any website affiliated with any radical extremist group").

Courts in this district have imposed similar requirements. In sentencing a defendant who was part of a militia group for his role in the attack on the Capitol, Judge Friedrich imposed the following condition: "You must not associate, communicate, or otherwise interact, directly or indirectly, with any extremist militia group or member of such a group, including but not limited to the Texas Three Percenters, the Oath Keepers, and the Texas Freedom Force." *USA v. Guy Reffitt*, No. 21-cr-32, Sent. Tr. at 143; *see also United States v. Troy Anthony Smocks*, 21-cr-198 (TSC), ECF No. 77 (threats in interstate commerce offenses); *United States v. Clark Calloway, Jr.*, 17-cr-89 (RJL), ECF Nos. 75 and 99 (firearms offenses). Additionally, Judge Mehta imposed the requirement the government is requesting in this case on defendants in the Oath Keepers cases. *Rhodes, III et al.*, 22-cr-15, ECF No. 624 at 7. This Court has imposed computer monitoring in other cases. *United States v. Jonathan Montiethe Perry*, 23-cr-93 (RBW), ECF No. 41 at 4 (narcotics offenses).

Goodwyn cites to U.S.S.G. § 5D1.3(d)(7)(B) and *United States v. Aaron Burroughs* but misunderstands both. 613 F.3d 233, 242 (D.C. Cir. 2010). The guidelines list special conditions that are recommended. They do not list every condition possible. Goodwyn also cites *Burrough*, but omits the reason why the D.C. Circuit remanded for further proceedings:

> [N]either the Probation Office nor the district court explained its reasons for restricting Burroughs's computer access. Not knowing the court's reasons for imposing these conditions, finding the government's reasons unsupported by the record, and unable to identify any ourselves, we vacate the conditions as plainly out of sync with the relevant factors and remand for further proceedings.

*Id*. On remand, the district court imposed special conditions of supervised release for computer searches and computer restrictions. *Burroughs*, 07-cr-126 (RJL), ECF No. 39 at 4. Defendant Burroughs continues to have his computer monitored as a special condition of special release. *Id.*, ECF Nos. 47 and 48.

The Court has discretion to impose the special condition as other judges in this district have done in the past.

### B. Goodwyn's conduct and use of social media and websites before, during, and after January 6 provides the factual basis for the Court to make the statutory findings and narrowly tailor the special conditions.

Computer monitoring is necessary because it prevents Goodwyn from encouraging retribution against police officers, protects the public, prevents Goodwyn from raising funds for future crimes, and separates Goodwyn from extremist media, rehabilitating him.

Goodwyn encouraged rioters on January 6 and he continues to do so over social media and websites. For example, Goodwyn's contribution as a team member of the website, "1000 Days of Terror," places targets on USCP officers. This website has a page that shows a deck of playing cards with police officers' faces, names, and titles. The inspiration for this deck is the deck of cards produced during the 2003 invasion of Iraq of officials in the Saddam Hussein regime.[17] After the invasion of Iraq, 55 playing cards with Iraqi officials were provided to troops to identify and target the most wanted members of the Iraqi regime.[18]

Goodwyn is encouraging others to target the heroic police officers who defended the Capitol on January 6, just like Goodwyn encouraged the mob to do on January 6, 2021. This places these police officers at risk of being harassed or worse. Monitoring Goodwyn's computer and social media would deter him from encouraging and enabling others to target those officers.

Monitoring Goodwyn's social media and website use would also deter him from using it to raise money for political violence in the future. Goodwyn used social media to repost Proud Boys messages, he was informed of day, time, and location of "Stop the Steal" protests, and he

---

[17] https://1000daysofterror.com/wanted/, Current as of May 15, 2024;
[18] https://www.af.mil/News/Article-Display/Article/139485/deck-of-cards-helps-troops-identify-regimes-most-wanted/

solicited donations to fund his trip to Washington D.C., where he committed his crime. Monitoring his conduct would deter him from amplifying extremist messaging and it would notify the Court if Goodwyn began fundraising to commit future acts of political violence.

Monitoring Goodwyn's computer use and preventing him from viewing extremist media would deter Goodwyn from future criminal activity and rehabilitate him by removing the negative influences in his prior life. The Court may separate Goodwyn from the "negative influences in his prior life" because it is "reasonably related to the permissible goals of deterrence and rehabilitation." *Hunt*, 843 F.3d at 1030 (quoting *Watson*, 582 F.3d at 983). For example, Goodwyn continues to meet with other January 6 defendants, such as Adam Johnson, who Goodwyn posted a picture with on December 6, 2023. *Johnson*, 21-cr-648 (RBW), ECF No. 58. Goodwyn also views and promotes extremist media, such as the 1000 Days of Terror website. Monitoring Goodwyn's website and social media use would prevent him from viewing extremist media, specifically deter him from committing crimes in the future, and assist in his rehabilitation and reintroduction into society.

**III.    Conclusion**

The Court has broad discretion to impose narrowly tailored special conditions of supervised release that are reasonably related to the statutory sentencing goals. Goodwyn's past and current use of websites and social media to encourage the mob, fundraise, and continue the negative associations preventing his rehabilitation provide the factual basis to support the imposition of the requested special conditions of supervised release. Therefore, the Court has the authority to impose the requested special conditions.[19]

 

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Brian Brady*
Brian Brady
Trial Attorney, Department of Justice
DC Bar No. 1674360
1301 New York Ave. N.W., Suite 800
Washington, DC 20005
(202) 834-1916
Brian.Brady@usdoj.gov

---

[19] The government does not request oral argument.