## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00153 (RBW) |
| | ) | |
| DANIEL GOODWYN, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S REPLY TO GOVERNMENT RESPONSE

Comes now the Defendant, Daniel Goodwyn, by and through undersigned counsel, and Replies to the government's Response at ECF No. 123 to his Show Cause Filing at ECF No. 122. Mr. Goodwyn respectfully moves this Court to grant the relief requested in ECF No. 122 in not reinstating computer monitoring, with a revised judgment order that removes the special condition; and now to issue sanctions against the government for deliberate misrepresentations to the Court as identified herein. He provides the following in support:

## I.     COMPUTER MONITORING HERE WILL NOT BE REASONABLY RELATED TO THE SENTENCING FACTORS AND USSG POLICY, AND WILL VIOLATE CONSTITUTIONAL RIGHTS.

**A. <u>Overview</u>**. The Response says out loud that the government wants this Court to impose computer monitoring to deny protected speech, access to information, and to associations; and to threaten a Christian man with imprisonment based on protected speech content and viewpoints. The government's enthusiasm for spying without a warrant or reasonable suspicion of any crime seeks to have this Court arbitrarily censor Mr. Goodwyn's speech. The ultimate step is to imprison him if a probation officer accuses him (with DOJ urging as we can fairly surmise) of saying, writing, or thinking anything that the DOJ can twist into being "untrue" based on what the government says. In its crusade, the DOJ falsely accuses Mr. Goodwyn of associating with

"*extremism*" and "*bad influences*" because he dared speak in disagreement about current topics, and even through memes, on social media. Stalin would have been proud of this DOJ effort, as would any fascist, communist, or tyrannical regime. The DOJ can decide what propaganda it declares to be true. COVID-19 vaccine efficacy (or not) is one example, where employees were fired and socially cancelled for refusing to subject to mandates based on false information.

Benjamin Franklin said that "**Whoever would overthrow the liberty of a nation must begin by subduing the freeness of speech.**" Winston Churchill, Hansard (13 October 1943) made a succinct statement regarding hypocrisy where, "**Some people's idea of [free speech] is that they are free to say what they like, but if anyone says anything back, that is an outrage.**"  The DOJ feigns outrage that citizens such as Mr. Goodwyn might exercise their rights. As a weapon of the current administration the DOJ wants the threat of prison to stifle speech, employment, and associations. There is no divisiveness caused by differing ideas. Suppression of speech and refusal to debate build walls against truth. The concept is not novel that more speech and more civil debate assist in understanding and tolerance among people. Intolerance towards the expression of differing, protected viewpoints is un-American but has spread. This Court should not become part of the DOJ's weaponry to stifle protected speech content and viewpoints.

"Every man—in the development of his own personality—has the right to form his own beliefs and opinions. Hence, suppression of belief, opinion and expression is an affront to the dignity of man, a negation of man's essential nature." Thomas Emerson, <u>Toward a General Theory of the First Amendment</u>.

The DOJ opportunistically wants to use this Court to take away First and Fourth Amendment Constitutional rights. It wants to cause Mr. Goodwyn to be unemployed and potentially imprisoned so that it can reference this case in its future sentencing recommendations

to judges in this District. If the DOJ is successful in its lawfare quest for injustice here, Americans in general will be next where computer monitoring is a spy weapon to create lists of those who should be socially cancelled, charged, and imprisoned for protected speech and associations.

   **B.** **Violation of Rights**. With no reasonable relation to the relevant sentencing factors and USSG policy on employing computer monitoring, the DOJ wants to silence the current administration's political opponents and imprison any defendants who dare use their Constitutional right to speech and association. That is why the Response is filled with references to Mr. Goodwyn's work on documentaries, and protected speech in 2023 and 2024 about January 6th. The Response is filled with DOJ falsehoods meant to cause unfair, emotional prejudice, while devoid of anything truthful that meets or is even relevant to USSG policy and statutory requirements. The response makes clear that the Court should prevent Mr. Goodwyn from speaking, despite facts where he can support his work and speech as truth.

       Contrary to the foundational pillars of America and the natural rights that come from God, and with no relation to the sentencing factors and USSG policy on using the special condition, the computer monitoring is meant to invade privacy and to disconnect Mr. Goodwyn from associations, employment, and the marketplace of ideas. The government's purpose runs counter to free speech and privacy protected by the U.S. Constitution's First and Fourth Amendments. The DOJ wants to trample rights advocated by respected civil rights leaders who warned against tyranny. The "right to receive information and ideas, regardless of their social worth, and to be generally free from governmental intrusions into one's privacy and control of one's thoughts is fundamental to our free society." Supreme Court Justice Thurgood Marshall, *Stanley v. Georgia*, 394 U.S. 557 (1969). Frederick Douglass said eighty-nine years earlier, "To suppress free speech is a double wrong. It violates the rights of the hearer as well as those of the speaker. It is just as

criminal to rob a man of his right to speak and hear as it would be to rob him of his money." <u>Plea</u> <u>for Free Speech in Boston</u> (1880). As one who fled government oppression, author and speaker Salmon Rushdie said in 2005: "The moment you say that any idea system is sacred, whether it's a religious belief system or a secular ideology, the moment you declare a set of ideas to be immune from criticism, satire, derision, or contempt, freedom of thought becomes impossible." Another world-renowned figure who suffered at the hands of oppression said:

> No single person, no body of opinion, no political or religious doctrine, no political party or government can claim to have a monopoly on truth. For that reason truth can be arrived at only through the untrammeled contest between and among competing opinions, in which as many viewpoints as possible are given a fair and equal hearing. It has therefore always been our contention that laws, mores, practices and prejudices that place constraints on freedom of expression are a disservice to society.

Nelson Mandela, address to International Press Institute Congress (14 February 1994).

Yet the DOJ through the FBI and related DHS publications labels American speakers and groups that oppose government story-telling narratives as "*extremist*."  The government already unlawfully exercises censorship by back-door, direct influence with social media and corporations, on topics that include January 6th, mask-mandates, COVID-19 vaccine injuries, Ivermectin efficacy, police excessive force, abortion, the border invasion by illegal aliens, and religious protest. Being on the opposing side of the government position now equals criminal extremism. The DOJ wants Mr. Goodwyn unemployed and muzzled or to otherwise face prison for "wrong think." Viewing the DOJ's false narrative in its Response as an attempt to fit square pegs into round holes when it comes to manufacturing justification for implementing computer monitoring, the words "tyranny," fascism," and "communism" are apropos descriptors. Because there is no reasonable relation to sentencing factors while USSG policy on use of computer monitoring is

ignored by the government, any implementation of monitoring will violate Mr. Goodwyn's Constitutional rights.

The DOJ's Response by its ad hominem, character assassination attempt pursues the apparent objective of stifling free speech and imprisoning those who dare oppose government policies and pronouncements that some (if not many) consider propaganda. In its Response, the DOJ overtly aligns with the idea of communist regime reeducation in purporting that spying on Mr. Goodwyn, making him unemployed, and forcing him not to speak, associate, or research will be "*rehabilitative*." ECF No. 23 at 2, 11, 14, 15, 19, 20. The references to *rehabilitation* and separating Mr. Goodwyn from "*negative influences*" is astounding in the attempted extrajudicial criminalization of speech content and viewpoints that Americans used to see only from authoritarian regimes who worked to crush opposition. Through its response, the DOJ anointed itself as the totalitarian arbiter of truth where competing protected speech and ideas are now criminal propaganda that requires rehabilitation and disassociation from people and ideas - with the threat of prison as punishment.

Because the Court cannot meet a strict scrutiny review of the denial of the First Amendment right to free speech; and 24/7 invasive computer monitoring and searches without even reasonable suspicion of a crime in this case will be completely unreasonable, the Court must not impose computer monitoring. The U.S. Supreme Court has not held that those on supervised release lose their Fourth Amendment rights. Warrantless searches may be allowable if, "The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). See *United States* v. *Cortez*, 449 U.S. 411, 418 (1981) (individualized suspicion deals "with probabilities").

There is no allegation of criminal conduct by Mr. Goodwyn. The DOJ objects to his facts and viewpoints since those conflict with the DOJ narrative. That special condition of release is not a weapon to punish those with viewpoints with which the government or Court disagree.

## II.   IMPOSITION OF COMPUTER MONITORING HERE WILL INVOLVE GREAT, UNREASONABLE DEPRIVATION OF LIBERTY AND SUBSTANTIAL RIGHTS.

Mr. Goodwyn's Appellate Brief (see USCA 23-3106 Doc. #2015295) made clear that the computer monitoring special condition of supervised release as contained in the Order at ECF No. 108 did not meet statutory requirements and was in violation of the U.S. Constitution's First and Fourth Amendments.  The Appeals Court vacated the computer monitoring on February 1, 2024 and wrote, "The district court plainly erred in imposing the computer-monitoring condition without considering whether it was 'reasonably related' to the relevant sentencing factors and involved 'no greater deprivation of liberty than is reasonably necessary' to achieve the purposes behind sentencing. 18 U.S.C. § 3583(d)(1), (2); see *United States v. Burroughs*, 613 F.3d 233, 242–46 (D.C. Cir. 2010)." USCA Case #23-3106, Document #2038504.

The Court also wrote, "If the district court decides on remand to impose a new computer-monitoring condition, 'it should explain its reasoning,' 'develop the record in support of its decision,' and ensure that the condition accords with 18 U.S.C. § 3583(d) and constitutional protections." *Id*. (citing *Burroughs*, 613 F.3d at 246).

Mr. Goodwyn's Show Cause filing at ECF No. 122 and his Appellate Brief noted the relevant statutes, and that there is no reasonable relationship between his 18 U.S.C. Section 1752 trespassing crime, computer monitoring, 18 U.S.C. § 3583(d), the U.S. Constitution, and United States Sentencing Guidelines (USSG) policy.

A.  **The Laws**. Because the government in its Response ignored key parts of the relevant

statutes, the legal standards follow:

> By statute the district court may impose conditions of supervised release (other than
> certain mandatory ones) if the conditions are 'reasonably related' to factors set forth in
> 18 U.S.C. § 3553 and 'involve[ ] no greater deprivation of liberty than is reasonably
> necessary for the purposes' identified in that section. 18 U.S.C. § 3583(d)(1), (2).

*United States v. Malenya*, 736 F.3d 554, 559 (D.C. Cir. 2013).

> **Section 3583(d)(1)** of Title 18 requires that discretionary conditions of supervised
> release be '*reasonably related* to the factors set forth in section 3553(a)(1), (a)(2)(B),
> (a)(2)(C), and (a)(2)(D).' Those factors are: 'the nature and circumstances of the offense
> and the history and characteristics of the defendant,' 18 U.S.C. § 3553(a)(1); the need 'to
> afford adequate deterrence to criminal conduct,' *id.* § 3553(a)(2)(B); the need 'to protect
> the public from further crimes of the defendant,' *id.* § 3553(a)(2)(C); and the need 'to
> provide the defendant with needed educational or vocational training, medical care, or
> other correctional treatment in the most effective manner,' *id.* § 3553(a)(2)(D).

*U.S. v. Burroughs*, 613 F.3d 233, 242 (D.C. Cir. 2010)(emphasis added)

> **§ 3583(d)(2)** requires that the condition involves "no greater deprivation of liberty than is
> reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and
> (a)(2)(D)." 18 U.S.C. § 3583

> **USSG § 5D1.2 cmt. N. 1. States Conditions 'limiting the use of a computer or an
> interactive computer service' make the list, but only 'in cases in which the defendant
> used such items.' *Id.* § 5D1.3(d)(7)(B). By implication, restrictions on computer or
> Internet access are not *categorically* appropriate in cases where the defendant did
> not use them to facilitate his crime**.

*U.S. v. Burroughs*, 613 F.3d 233, 243 (D.C. Cir. 2010)(Emphasis added)

> **<u>Requirements for Occupational Restrictions Under the USSG:</u>**

> (a) The court may impose a condition of probation or supervised release prohibiting the
> defendant from engaging in a specified occupation, business, or profession, or limiting
> the terms on which the defendant may do so, only if it determines that:

> (1) a reasonably direct relationship existed between the defendant's occupation,
> business, or profession and the conduct relevant to the offense of conviction; and
> (2) imposition of such a restriction is reasonably necessary to protect the public because
> there is reason to believe that, absent such restriction, the defendant will continue to
> *engage in unlawful conduct similar to that for which the defendant was convicted*.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

**USSG §5F1.5** quoted in *United States v. Sunday*, 447 F. App'x 885, 8-9 (10th Cir. 2012)

Though "**reasonably necessary**" may be quite vague in many legal contexts, see Dissent at 2, here it **is tethered to *deprivation of liberty* in terms that** in effect **require the court to choose the least restrictive alternative**. Section 3583(d)(2) is thus, as the Seventh Circuit put it, a "narrow tailoring requirement." *United States v. Holm,* 326 F.3d 872, 877 (7th Cir.2003); see also *United States v. Perazza–Mercado,* 553 F.3d 65, 73 (1st Cir.2009); *United States v. Voelker,* 489 F.3d 139, 144–45 (3d Cir.2007).

*United States v. Malenya*, 736 F.3d 554, 559-60 (D.C. Cir. 2013)(Emphasis added)

### B.  Computer Monitoring and Searches will Cause Substantial Deprivation and Will Be Unduly Restrictive.

Mr. Goodwyn highlights again in this Reply that the computer monitoring condition is a great deprivation of liberty as it will deprive him of his fundamental, substantial right to employment, his free speech rights under the United States Constitution, and his Fourth Amendment right to be free from unreasonable searches. The DOJ wants, without any past crime involving a computer and without any reasonable suspicion of any ongoing crime by Mr. Goodwyn, for the Court to order 24/7 monitoring and recording of keystrokes, texts, emails, calls, URLs visited, pictures, videos, contacts, posts, and anything else the software can capture. There can be no greater invasion of privacy except for what has become the FBI SWAT standard of invading homes for searches, and painting red laser dots on family, including children.

Mr. Goodwyn was not convicted of any crime involving a computer or its use. He was not convicted of any speech crime. There is nothing reasonably related between what the government asserts are non-criminal, objectionable viewpoints and his plea to Section 1752 trespass. Speaking into a megaphone outside was not an element of the crime. A megaphone is not a computer. The

government's assertions in its Response that computer monitoring is justified because of speech in 2023-2024 flies in the face of the law. Its attempted justification in the Response to impose computer monitoring is less than weak – it is baseless. The DOJ's application of the law is corrupt.

Mr. Goodwyn performs journalistic and documentary work that will be completely untenable where he will become unemployed if given computer monitoring that collects all keystrokes, emails, texts, voice calls, web searches, posts, use and viewing of social media, calendar scheduling, contact data, pictures, video, legal correspondence, privileged medical data, and use of cloud storage. He will become unemployable if probation officers search or take his work equipment. The DOJ and FBI already spy on StopHate.com and his social media, making the DOJ's Response a cover for what they are already doing without warrant.

This Court should not become a tool for the government to continue end runs around the Fourth Amendment using the guise of "computer monitoring" for ongoing abuse of "domestic terrorism" investigations of political and policy opponents. Being a "pro-life" supporter, devout Christian, pro-life supporter, believer in closing the southern border to illegal immigration, changing the current energy policy that has exponentially increased costs, and improving the economy are all now extremism under the administration. A desire to "Make America Great Again" is extremist under the administration and DOJ. Using special release conditions as a weapon to destroy lives is un-American and authoritarian. There is no employer or client in the journalistic or documentary field that will engage Mr. Goodwyn when all his work and contacts will be collected or searched by the government. The government knew this and failed to mention this grave deprivation of liberty that fails USSG policy in its Response.

Because the requirements for § 3583(d)(1) and (d)(2), as well as USSG policies are not met and cannot be supported from anything in the record, the computer monitoring and search special

condition should not be instituted. There is no reasonable relation between the government's objections to protected speech and the Section 1752(a)(1) misdemeanor crime of conviction, and there is nothing that supports taking away a man's livelihood because the government opposes his viewpoints and speech. Computer searches and monitoring protect nobody in this case. There is nothing reasonably related to decreasing recidivism, as if Mr. Goodwyn was feasibly going to return to the U.S. Capitol between now and the end of his supervised release. Computer monitoring and searches will cause a greater deprivation of liberty than is reasonably necessary to achieve the goals referenced in § 3583(d). There is nothing reasonably necessary or least restrictive in computer monitoring and searches, especially when a computer had nothing to do with Mr. Goodwyn's crime of conviction or any criminal history or characteristics.

**C.** **No Facts Satisfy the Requirements of § 3583(d)(1) - (2) and "Least Restrictive" to Support the Special Release Condition of Computer Searches and Monitoring**

As previously stated, no facts support the Section 3583(d) requirement to adhere to Section 3553(a) sentencing factors. The factors that must be supported are: the nature and circumstances of the offense and the history and characteristics of the defendant under 18 U.S.C. § 3553(a)(1); the need to afford adequate deterrence to criminal conduct under § 3553(a)(2)(B); the need to protect the public from further crimes of the defendant under § 3553(a)(2)(C); and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner under § 3553(a)(2)(D).

1. We can immediately dispense with § 3553(a)(2)(D). The restricted access to the internet and social media sites removes the possibility of any educational and vocational training outside a physical facility. Even standard registration is impossible. The intrusion on private medical data makes use of a computer or phone not conducive to scheduling and obtaining medical care (to include diagnostic feedback). Computer

monitoring will only be detrimental.  As found in the Circuit's Court's primary case analogous to the overall situation here, "[t]here is no reason to think that restricting his computer use would have any therapeutic value." *Burroughs*, 613 F.3d at 244.

2. There are no facts to support the requirement under 18 U.S.C. § 3553(a)(1). The offense did not involve a computer or the internet. Mr. Goodwyn's communications on January 6, 2021, were barely tangentially related to his location and not at all to his conduct of entering the building for 36 seconds. He had no notice the outdoor grounds were ever restricted. He had received flyers showing there would be rallies at the Capitol. No signage about anything was present. He did not have a computer and the megaphone he used to speak was not computerized. He used his phone for videos, but reception was spotty for even receiving texts from his brother (not present). There is no nexus between a computer, the internet, and the offense. There are no characteristics showing use of a computer or the internet ever for criminal purpose. Despite the government's irrelevant Response pages about social media posts, there was and is nothing illegal or criminal about any of Mr. Goodwyn's speech. He admitted in his Statement of the Offense at ECF No. 83 that he used a megaphone – but it was to call for support to the objection to the electoral certificates. There was no criminal intent. Nobody listened to him and despite the government's fiction, nobody was incited to go into the building. The government's own video played at sentencing showed people saying "no" and shaking their heads "no" in response to Mr. Goodwyn.

3. Despite the DOJ's totalitarian view that Mr. Goodwyn's speech requires computer monitoring as deterrence, no valid argument exists to employ computer monitoring for "the need to afford adequate deterrence to criminal conduct under § 3553(a)(2)(B)."

There was no nexus between any computer or social media with entering the open door to the building – or even entering the grounds had there been visible signs or police orders to not enter. The government's argument on this point is beyond specious. Mr. Goodwyn did not ever use a computer (or social media) to commit a crime, let alone the one of conviction. Referring to the caselaw standard for computer monitoring where the Courts reject computer monitoring that lacks the nexus between the crime and a computer: "Like Burroughs, the defendant in *United States v. Smathers* was convicted of sexual exploitation of a minor; like Burroughs, he did not use a computer in committing the offense of conviction; and like Burroughs, he had no prior history of illicit computer use." *Smathers*, 351 Fed.Appx. 801, 802 (4th Cir. Nov. 13, 2009). "The Fourth Circuit held that the condition was plainly inconsistent with the statutory factors and inconsistent with 5D1.3 of the Guidelines." *Id.*  Here, the DOJ cannot meet the requirements. Instead, its arguments center around the goal of eliminating freedom of association, censoring and chilling speech, and illegitimately deterring speech content and viewpoints with the threat of prison – after ensuring Mr. Goodwyn loses his occupation.

4. There are no facts to support computer monitoring for a "need to protect the public from further crimes of the defendant" under § 3553(a)(2)(C). The DOJ sounds like a communist party speaker in its call to protect the public from Mr. Goodwyn's speech. The entire government argument is antithetical to the U.S. Constitution. Piling on by calling facts and video as being "false" in documentaries that Mr. Goodwyn helped produce is merely the DOJ protecting is own false narratives.  The public can decide what to believe and needs no censorship by the government to stop the free flow of

ideas. Mr. Goodwyn comitted the equivalent of trespass, and nothing about computer monitoring has any reasonable relation or nexus with that violation of law. There is no indication Mr. Goodwyn will commit any crime, and especially no indication that he would use a computer for criminal purpose. The imposition of computer monitoring is oppressive and not least restrictive. If not already done, the Court can order Mr. Goodwyn not to travel to Washington D.C. for the remainder of his supervised release, should it believe anyone in D.C. needs protection from a single political activist entering town.

5. There is nothing "least restrictive" about computer searches that do not require reasonable suspicion of a crime and the installation of software the captures every inch of Mr. Goodwyn's work and personal life "diary." There was no nexus between use of a computer and the violation of Section 1752, which is a requirement under the USSG. There is nothing least restrictive about taking away a man's occupation. There is nothing least restrictive about the threat of prison if some unnamed person serving as a Minister of Truth – no matter how ill-informed as to truth - decides that the vague terms "disinformation" or "misinformation" apply to protected speech and Mr. Goodwyn should be imprisoned. There is nothing least restrictive about all of Mr. Goodwyn's contacts and clients being added to FBI lists of domestic terrorists. There is nothing least restrictive about denying Mr. Goodwyn his livelihood and the ability to privately use the internet as required for the many transactions in daily life that require internet use.

It is worth noting that in its effort to manufacture a record for this Court, the DOJ referred to social media that was not part of the ECF No. 83 Statement of the Offense and is nowhere in

the official court record. Many of the references are to speech made in 2023-2024 after conviction and years after the January 6, 2021, events. The government admitted at the June 2023 sentencing that Mr. Goodwyn had not violated the terms of his plea agreement. This Circuit's *Burroughs* case requires that any justification for the special conditions come from the record, not on a newly manufactured record. *Burroughs,* 613 F.3d at 245. This Circuit's *Maleyna* case required that justification and evidence emanate from the record. *Maleyna*, 736 F.3d at 561. Other circuits refer to "in the record." A pertinent holding is that "a condition with no basis in the record, or with only the most tenuous basis, will inevitably violate *§ 3583(d)(2)*'s command that such conditions 'involve[] no greater deprivation of liberty than is reasonably necessary.'" *United States v. Pruden,* 398 *F.3d* 241, 248-250 (3rd Cir. 2005).

Because the facts from the record, and even the ones the government attempts to manufacture now as "characteristics" do not satisfy the statutory and USSG requirements, the Court must not institute computer searches and monitoring.

III.  **Government Misrepresentations Abound Throughout the Response.**

A.  Section Alleged as Factual Background (Response at 2-13) :

1.  On page 3 Image 1 and associated text, Mr. Goodwyn is engaging with a prankster who considers himself a comedian. The government omits the full recording that led to why there was a discussion about police. In "pranking" the "prankster" and satirically commenting about having been cited and fined for stepping off a curb into the street at an Atlanta outdoor protest, Mr. Goodwyn made the statement that is clearly not using his normal grammar. The entire reference to the Proud Boys, which he was not a member of and are not an

illegal group, is added just to raise judicial prejudice. The entry can be summarized as "so what?"

2. On page 3 and 5 the government falsely writes that Mr. Goodwyn incited others to go in the Capitol. Nobody listened and video showed nobody was incited to do anything, despite Mr. Goodwyn's intent to gain support to objections to the certificates, with no knowledge of the building having been evacuated an hour earlier.  The doors were open and over 20 police stood nearby watching people enter and exit through the open door.

3. The government remains emotionally hysterical that Mr. Goodwyn went on Tucker Carlson's show to discuss video that Mr. Carlson had obtained. Mr. Goodwyn never pled guilty to any outdoor conduct in violation of any statute. He pled guilty to unwittingly entering the open door and then hesitating upon exit. Nothing he said on Mr. Carlson's show was untrue. If the government is embarrassed for prosecuting a man with a disability who had no criminal intent when he was in the building for 36 seconds, the fit may be correct. But to insinuate that Mr. Goodwyn should have taken over the show and mentioned that he used a megaphone outside where nobody listened to him is unreasonable. The government created the fiction that Mr., Goodwyn knew a police officer tried to stop his entry. Mr. Goodwyn's Statement of the Offense makes clear he sensed a touch and did not see who touched him. He was grabbed forcefully by the arm seconds later and turned to depart when directed. He admitted in his statement of the offense that he pled guilty because he stopped to talk to Baked Alaska for a few seconds. Believing that he was being singled

out to leave when others could stay, and others were still entering, Mr. Goodwyn admitted calling the officer an "oath breaker." The government magnified the lack of discussion when in reality that detail would have been even more embarrassing to the DOJ.

4.  The government misrepresents fundraising on page 5. First, the government omitted that Mr. Goodwyn said people could go to the website to learn where to send letters, pray, or donate to January 6th defendants. Anyone going to the site has to click subsequent tabs to donate. The government attempts to falsely allow a reader to draw the conclusion that Mr. Goodwyn was profiting. Mr. Goodwyn was still $75,000 in debt for his former attorney's flat fee charges. The FBI had seized all his electronic devices and to do even minimal work he had to replace everything. He was placed in third party custody in Texas and lost his residence in his home state of California. He lost a majority of his income due to travel restrictions and the negative publicity fomented in the media by the DOJ's press releases. He was dox'd and threatened by Antifa affiliates. That AUSA Brady writes that Mr. Goodwyn was trying to curry sympathy is a fabrication out of whole cloth. It is shameful.

5.  At no time did Mr. Goodwyn demonstrate a lack of remorse. This is a typical false DOJ allegation made against January 6th defendants. Mr. Goodwyn apologized for any illegal conduct on January 6, 2021. It is particularly shameful and cruel that AUSA Brady would make this false allegation when Mr. Goodwyn's autism disability is on the record.

6.  Mr. Brady fails to mention that based on his co-counsel's vicious arguments at sentencing and despite a PSR that made crystal clear that Mr. Goodwyn had no money to pay a fine, and was instead in debt, the Court fined Mr. Goodwyn. All the page 5 discussion of donations is misrepresentation by deliberate omission. Mr. Goodwyn never pocketed a dime. The topic of donations was included as character assassination.

7.  Page 6 is a completely irrelevant attempt to create unfair prejudice while bearing no relation to factors that are relevant to special release conditions.

8.  Page 7 contains the DOJ's Ministry of Truth propaganda that everything on StopHate.com is false. The opposite is true. The videos tell truth. The police killed protestors. The police used excessive, lethal force against unarmed and defenseless protestors. See Exhibit. That Mr. Goodwyn was involved with production of videos that use actual footage and accompanying narrative is not criminal or wrong. The DOJ's goal is to shut down dialogue and truth.

9.  The DOJ's most egregious omission creates a deliberate mischaracterization of the 16 cards referenced on pages 7-8. The DOJ boldly lies in claiming any threat was made against police. This false representation must be called out here. There was no kinetic "*targeting*" attempt. There was no call to violence. There was an is no threat to police. The government wrote the false words after deliberately omitting that directly above the cards is a very visible box that makes clear that legal action is what is sought.



**Figure 1 - What the DOJ omitted while Misrepresenting the "playing cards"**

What is incredibly ironic and hypocritical is that the DOJ's FBI creates targeting "ball cards" for January 6th defendants. These are what normally form traditional targeting packets used for kill and capture operations against terrorists overseas. They contain pictures, personal identifiable information, the alleged crimes, and more. The FBI's baseball cards say nothing about legal action.

10. Pages 8-9 falsely allege that Mr. Goodwyn continues to minimize his conduct on January 6th and that he pushes false narratives. Regardless that his conduct was minimal, he has never denied anything in the Statement of the Offense in the record, which is a public document. What he has done is investigated and documented false narratives through legal speech with video truth and facts. The DOJ assertion is pure character assassination that is irrelevant to identifying

facts in the record to support even a partial requirement to impose computer monitoring and searches.

11. Regarding the remainder of pages 9-10, we are left with the question of "so what?" in relation to what is on the record to support computer monitoring that is not for the DOJ purpose of illegitimately censoring speech and threatening prison for holding a viewpoint.

12. Pages 11-12 are wrong and false on so many levels that only a summary will fit in this Reply. The DOJ falsely alleges that Mr. Goodwyn's contact with someone who completed their sentence threatens the public. These are the kinds of remarks that AUSAs make at trials with no accountability; where defense objections are overruled. There is no prohibition and there is no threat where AUSA Brady writes irrelevant falsehoods. There is no crime and no issue except that the DOJ may feel discouraged that it has not destroyed the life of every January 6th defendant yet.

13. Page 13 is yet another false DOJ allegation that Mr. Goodwyn denies responsibility for his actions, with the addition that he adds false narratives about January 6th. The corrupt misapplication of the law states that the Court can ignore the statutes and USSG and instead impose the special condition of computer monitoring because of the DOJ false allegation that Mr. Goodwyn uses social media to deny responsibility and that he pushes false narratives. Absolutely nothing in the record or law supports this DOJ specious claim. AUSA fabrication throughout the response exceeds the reality of the law and record.

**B. Falsehoods Abound in the Response's Argument (at 14-20).**

1.  Mr. Brady runs over the top in claiming that throughout the pendency of the case Mr. Goodwyn made untruthful statements about his conduct. This outright lie is shameful and unethical. It is disgraceful. He reiterates the false claim that Mr. Goodwyn placed targets on police officers. See Figure 1 supra, where no home address or other PII was given for police, many of whom have publicly testified. The call is for legal action. The call is not to act like the DOJ or Antifa.

2.  The entire argument on Page 14 preceding Paragraph A is specious and a fabricated misrepresentation of reality. The allegation that Mr. Goodwyn uses social media to spread misinformation is false. The allegation that he visits extremist sites is false, excepting the new DOJ definition of extremists as including Catholics and anyone who opposes DOJ false narratives. That the public needs protection is a fabrication without any evidence. That the AUSA's tyrannical view that any American needs internet restriction and social isolation to deter trespass crime would be laughable if not so seriously un-American.

3.  The assertion that Mr. Goodwyn needs separation from negative influences (meaning social media, co-workers, clients, and the internet) in his life is another DOJ authoritarian, communist-type fabrication. The DOJ members are not elected and do not have authority to redefine truth and what is negative.

4.  From page 15 it is unclear why the AUSA does not refer to "rehabilitation" envisioned by censorship as being sent to a gulag or camp. Who defines "concerning" material besides a tyrant and one who wishes to suppress speech?

5.  Page 16 is more misrepresentation. The DOJ completely ignores that the computer monitoring will cause severe deprivation of liberty with loss of occupation. The DOJ ignores the associated USSG policies (supra) that show that computer monitoring in this case is not proper. A computer and social media were not used in the trespass crime. There is no nexus with Mr. Goodwyn's computer or social media use and any crime.

6.  Page 17 is not worth the space here, but it is incredible that the DOJ would recommend conditions imposed in other cases that are not similar to this one, and where no information on appeals is available. The cases are not comparable. Mr. Brady's analogizing Mr. Goodwyn's circumstances with those of real terrorists as shown on page 16 is not relevant or just.

7.  Mr. Brady's false claim on page 18 that Mr. Goodwyn's conduct on social media before, during, and after January 6 "provides the factual basis for the Court" to impose computer monitoring misses the law. First, there is nothing of the sort on the record, despite what Mr. Brady falsely alleged and tried to fabricate in the Response. Second, we have tyranny proposing to criminalize protected speech. Mr. Goodwyn committed no speech crime, committed no crime using the internet or social media, and there is no factual basis to enact computer monitoring and searches within the legal requirements to do so. He has never asked anyone to target police and Mr. Brady is fabricating. It is a deliberate, unethical lie that Mr. Goodwyn ever encouraged "others to target" police or "encouraged the mob" "to attack police" on January 6, 2021. The allegations are unethical and worthy of Court sanction. The claims are lies.

8.  The page 18 claim that Mr. Goodwyn needs to be monitored so he does not fundraise for political violence in the future is speculative trash talk and defamation. "By implication, restrictions on computer or Internet access are not *categorically* appropriate in cases where the defendant did not use them to facilitate his crime. The government points to no facts making the computer restrictions reasonably related to the nature and circumstances of Burroughs's offense that would not also make computer restrictions appropriate for every defendant convicted of the same crimes." *Burroughs*, 613 F.3d at 243. Perhaps the DOJ aim is to set a precedent based on fabrication where every defendant convicted of any crime who commits "wrong think" has restricted, monitored computer and internet access with searches not requiring any reasonable suspicion of a crime. The Response gives the impression of serious DOJ effort to discard the First and Fourth Amendments.

9.  Page 19 shows why the undefined computer monitoring condition for misinformation will be unconstitutional: the AUSA has falsely deemed that because he is a conservative Christian then Mr. Goodwyn "views and promotes extremist media." The growing tyrannical regime then must prevent Mr. Goodwyn from viewing what many call but the government wants to censor.

## IV.   THE MONITORING ENCOMPASSES UNDEFINED STANDARDS OPEN TO ARBITRARY ABUSE

The DOJ does not define misinformation, disinformation, and extremist media because no laws or legal definitions exist. As an anointed Minister of Truth, the AUSA deemed the documentary "1000 Days of Terror" to be extremists media, when many see it as truth. It is

apparently scary for DOJ to have its false narratives exposed to the point that the DOJ solution is to curtail protected speech, isolate Mr. Goodwyn from legal association, cause him to be unemployed, and make false allegations about him to the Court.

The software programs established for child pornography, wire fraud, identity theft, and other crimes that rely on computer use are not perfect as they screen for specific types of activity, specific websites, keywords, and other known variables. The programs collect everything done on the device, with on-line alerts that can be false alerts. Massive amounts of user data and activity are collected and stored. In every case, there is a direct nexus required between the crime and the computer monitoring and searches.

What the DOJ recommends is to unjustly deprive Mr. Goodwyn of his First and Fourth Amendment rights because he holds viewpoints for what he sees as truth in video before his eyes that the DOJ does not want publicized. There is no Probation Officer qualified to be an arbiter of what will be deemed propaganda, misinformation, or disinformation. There is no Probation Officer qualified to ascertain what is extremist. There is no software to do this. As seen in the Response, the DOJ's solution is for it to tag any web site, video, social media account, and persons who oppose the current administration's policies and narratives as an extremist engaged in disseminating propaganda. The GAO, DHS and FBI's lists and reports contain the Gadson flag, the Betsy Ross flag, a veteran-led emergency prevention organization,[1] pro-life and pro-family groups, parents who argue at school boards about inappropriate classroom material, on-line gamers, and devout Catholics and Christians as extremist. And that is just what is available publicly as discovered or brought forward by whistleblowers so far. The real threat is that using

---

[1] According to a House report, the "American Contingency" led by a decorated veteran was labeled and investigated as an extremist organization.

arbitrary standards (or non-existent standards) a decision-maker who disagrees with Mr. Goodwyn's viewpoint can have him imprisoned for protected speech.

We need to make George Orwell's novel "1984" fiction again. "Once a government is committed to the principle of silencing the voice of opposition, it has only one way to go, and that is down the path of increasingly repressive measures, until it becomes a source of terror to all its citizens and creates a country where everyone lives in fear." Harry Truman [*Special Message to the Congress on the Internal Security of the United States*, August 8, 1950]

## VI.    SANCTIONS

AUSA Brady deliberately misrepresented truth, made false allegations, and twisted facts to manipulate a response that instead should have honestly addressed the 18 U.S.C. § 3583(d)(1), (2) required factors. He defamed Mr. Goodwyn and meant to prejudice this Court. It is time for a judge in this District to sanction any member of the DOJ who lies to the Court to convict or imprison a defendant by any means. It is a disgrace to the American justice system and further reduces the credibility of the DOJ as an institution across America. Sadly, the behavior continues to escalate given no accountability for lack of ethics and truth by the DOJ in January 6 cases.

## VII.   CONCLUSION.

Wherefore, as stated in his ECF No. 122 and in this Reply, the Court should not institute computer monitoring or searches because the record does not support the statutory requirements or the USSG policies; and implementation will cause a significant deprivation of liberty with loss of occupation to Mr. Goodwyn.

Dated May 30, 2024                                    Respectfully submitted,
                                                      /s/ Carolyn A. Stewart

                                                      Carolyn A. Stewart, Bar No. FL-0098
                                                      Defense Attorney
                                                      Stewart Country Law PA
                                                      1204 Swilley Rd.
                                                      Plant City, FL 33567
                                                      Tel: (813) 659-5178
                                                      E: Carolstewart_esq@protonmail.com


### CERTIFICATE OF SERVICE

I hereby certify on the 30th day of May 2024, a copy of the foregoing was served upon all

parties as forwarded through the Electronic Case Filing (ECF) System.


                         /s/ Carolyn A. Stewart
                         Carolyn A. Stewart, Esq.