UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DANIEL GOODWYN, )<br>)<br>            Defendant. )<br>) | Criminal Action No. 21-153 (RBW) |

## ORDER

As part of the defendant's conditions of supervised release, the Court imposed a computer monitoring condition whereby the defendant was directed to, in part, "allow the probation officer [assigned to him] to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1))[.]" Judgment in a Criminal Case as to Daniel Goodwyn ("Judgment") at 5, ECF No. 108. The defendant took exception to the restriction imposed by the Court and appealed the imposition of the condition to the District of Columbia Circuit. On February 1, 2024, the Circuit issued an Order that vacated "the computer-monitoring condition [imposed by this Court] . . . [and] remanded [the case to this Court] for further proceedings." Order No. 23-3106 (D.C. Cir. 2024). On remand, following a hearing, the Court reimposed the computer monitoring restriction after hearing argument from both counsel for the defendant and counsel for the government.[1] See Order at 2, ECF No. 119; Minute ("Min.") Entry (June 27, 2024). On that same date, the defendant filed a motion requesting that the Court stay its decision to reimpose the computer monitoring restriction, pending an anticipated appeal.

---

[1] The Court ordered the parties to provide additional briefing that the Court considered in rendering its decision to reimpose the computer monitoring restriction. See Defendant's Response to ECF No. 119, 121 ("Def.'s Resp."), ECF No. 122; Government's Response to Defendant's Show Cause Filing ("Gov't's Resp."), ECF No. 123; Defendant's Reply to Government's Response ("Def.'s Reply"), ECF No. 125.

See Defendant's Emergency Motion for Stay of Computer Monitoring Pending Appeal ("Def.'s Mot."), ECF No. 126. Upon consideration of all submissions submitted by the parties, and the arguments of counsel, for the following reasons, which supplement the oral explanations expressed by the Court at the conclusion of the hearing, the Court concludes that there is a factual basis to reimpose the computer monitoring restriction on the defendant and, therefore, denies his motion to stay.

Based on his conduct on January 6, 2021, the defendant was charged by indictment with: (1) Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c) ("Count One"); (2) Entering and Remaining in a restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) ("Count Two"); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) ("Count Three"); (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) ("Count Four"), and (5) Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) ("Count Five"). See Superseding Indictment as to Daniel Goodwyn ("Indictment") at 1–3, ECF No. 34. The defendant eventually pleaded guilty to Count Two of the Superseding Indictment, see Plea Agreement as to Daniel Goodwyn ("Plea Agreement") at 1, ECF No. 82, and was sentenced to a sixty-day period of incarceration with credit for time served, followed by a one-year period of supervised release, see Min. Entry (June 6, 2023); Judgment at 2, 3.

As noted above, the defendant entered a guilty plea to Count Two of the indictment. As a part of that agreement, the defendant agreed to the facts set forth in the Statement of Offense that he signed, which provided the factual basis for his guilty plea. See Statement of Offense as to Daniel Goodwyn ("Statement of Offense") at 1, ECF No. 83; Plea Agreement at 2. Included in the Statement of Offense was the defendant's internet and social media conduct prior to, during,

and after his involvement in the attack on the Capitol. Specifically, "on November 7, 2020, [the d]efendant posted a picture on Twitter ("tweeted") of the Proud Boys logo and stated, 'Stand back and stand by! Show up at your state Capitol at noon today local time. Await orders from our Commander in Chief. #StopTheSteal! StopTheSteal.US." Statement of Offense ¶ 9. The defendant's online conduct leading up the attack continued when on December 28, 2020, "the [d]efendant tweeted '#FightForTrump' and '#StopTheSteal' and linked a GiveSendGo account where he was soliciting donations to fund his travel to Washington, D.C. on January 6, 2021." Id.

On the day of the attack, the defendant attended the "Stop the Steal" rally and "then marched with other protestors to the Capitol." Id. ¶ 10. "While [on the northern Lower West Terrace], the [d]efendant utilized a bullhorn handed to him by a stranger to encourage others to enter the Capitol[, specifically stating:] 'Behind me, the door is open' and 'we need you to push forward, forward[,]' and 'we need critical mass for this to work' and 'Go behind me and go in.'" Id. ¶¶ 11–12. Once inside the Capitol, "[the d]efendant was called out as 'sfthoughtcriminal' by [media personality] Anthime Gionet aka 'Baked Alaska' who was inside the Capitol livestreaming his broadcast." Id. ¶ 13. On Gionet's livestream, "[the d]efendant slowed down and paused to identify himself . . . as 'Daniel Goodwyn' after having been told to leave the building by a law enforcement officer." Id. Concerningly, "[a]s [the d]efendant left [the Capitol], he told strangers in his vicinity that the officer was an 'Oathbreaker' and to get his badge number." Id. The defendant then confirmed his presence at the Capitol that day in text messages to his brother, Christopher Goodwyn, see id. ¶ 14, and to another woman, telling her that he believed "Patriots rushed the Capitol[,]" id. ¶ 15. Later that night, the defendant's online activity continued where he tweeted that "They WANT a revolution. They're proving our point.

3

They don't represent us. They hate us[,]" id. ¶ 16, and posted on his since-deleted Instagram that "[he] didn't break or take anything[,]" id. ¶ 17.

As the government has illuminated, the defendant's concerning online activity did not end on the day of the attack. Mere weeks after the defendant entered his guilty plea, "[he] sat for an interview with Tucker Carlson on Fox News Channel[,]" Gov't's Resp. at 4, where the defendant "identified www.stophate.com/J6 as a website where people could donate to [assist January 6] defendants[,]" id. at 5. At the top of the page on the website that the defendant identified, "[he] is listed as the first defendant that people could donate to" having already "received $27,323.25 in contributions thus far." Id. Additionally, "[the defendant] has another fundraising page on Stopthehate.com that has raised $6,465[.]" Id. According to the government, the defendant "is a team member of Stopthehate.com[ and] . . . [his biography on the page] links to his website, 'DanielGoodwyn.com[.]" Id. On his personal website, the defendant's biography states that "[he has] worked with the top investigators to collect and cur[]ate [ ] the most important January 6 evidence to ex[]onerate [ ] Trump and the election integrity protestors who the Brandon Administration has turned into POLITICAL HOSTAGES!" Id. at 6. The biography not only inquires of the reader to "[f]ind out the top 3 ways other Patriots help [January 6, 2021, defendants, also called] [(']J6ers['])] who are locked up RIGHT NOW" but also lists the defendants "current activism, 'With Stop Hate.com, I helped work on [what appear to be videos such as] Righting History, Bloody Hill, 1000 Days of Terror, and J6: A True Timeline." Id.

The defendant has also posted a significant amount on his personal social media "continu[ing] to deny responsibility for his actions . . . and push[ing] false narratives[,]" for what occurred on January 6, 2021. Id. at 9. The defendant "[posted] on his Instagram [and] he

4

referred to himself as 'kidnapped by the FBI and the DOJ and held hostage in T[exas] for [three] years." Id. The defendant also posted a caption on an Instagram post indicating that—

> [s]pending time in federal prison for being present at the election integrity protest has only radicalized and cemented my Christian faith and pushed me further towards the constitution, the political right, and activism. Meeting other J6ers in there has only strengthened my resolve to work towards the full exoneration and release of every last Patriot.

Id. at 10. Lastly, the defendant also has posted on his personal Instagram account that "rioters were 'beat to death,' that the rioters were not violent, and even statements that contradict his most recent filing to this Court." Id.; see also Def.'s Resp. at 5 ("[The defendant] was not present when and where some protestors and police acted violently.").

For several reasons, based on the above history, the Court concludes that there was a factual basis to impose the computer monitoring restriction on the defendant and that the factual basis for doing so has only been enhanced by his post-sentencing computer and social media conduct. Accordingly, the restriction "is reasonably related to the factors set forth in [§] 3553(a)(1), (a)(2)(C), and (a)(2)(D); involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a)[.]" 18 U.S.C. § 3583(d)(1)–(3).

First, the computer monitoring restriction is "reasonably related[,]" id. § 3583(d)(1), to the nature and circumstances of the offense because of the public statements the defendant made on his social media accounts leading up to his involvement in the attack on the Capitol, see Statement of Offense ¶ 9, and during the attack itself, see id. ¶¶ 11–12. As the government notes, "[the c]omputer monitoring [restriction] is necessary because it prevents [the defendant] from encouraging retribution against police officers, protects the public, prevents [him] from

5

raising funds for [potential] future crimes, and separates [the defendant] from extremist media, rehabilitating him." Gov't's Resp. at 18; see also 18 U.S.C. § 3553(a)(2)(B)–(D).

Second, the computer monitoring restriction also "involves no greater deprivation of liberty than is reasonably necessary[.]" 18 U.S.C. § 3583(d)(2). As originally imposed, the monitoring restriction involves "searches [that] shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation." Judgment at 5. The restriction does not prevent the defendant from exercising his constitutional rights or using the internet or social media—it was imposed to ensure that he does not traffic in any content that inspired the conduct that he and others engaged in on January 6, 2021.

Third, the computer monitoring restriction, ideally, will "afford adequate deterrence to criminal conduct[,]" 18 U.S.C. § 3553(a)(2)(B), and "provide the defendant with needed . . . correctional treatment in the most effective manner[,]" id. § 3553(a)(2)(D). The defendant has been treated for mental health issues in the past that appear to have contributed to his decision to engage in criminal conduct, see Presentence Investigation Report as to Daniel Goodwyn ("PSR") ¶¶ 72–74, ECF No. 99, and separating him from extreme content that inspired the attack on the Capitol is likewise "reasonably related to the permissible goals of deterrence and rehabilitation and is a common purpose of supervised release[,]" United States v. Hunt, 843 F.3d 1022, 1031 (D.C. Cir. 2016) (quoting United States v. Watson, 582 F.3d 974, 983 (9th Cir. 2009)).

Finally, the defendant moves to stay the Court's decision to reimpose the computer monitoring restriction as he intends to file an appeal. See Def.'s Mot. at 1. However, the defendant has filed an appeal once before regarding his sentence, and the Circuit Court was clear

in its order that "[i]f th[is Court] decides on remand to impose a new computer-monitoring condition, 'it should explain its reasoning,' 'develop the record in support of its decision,' and ensure that the condition accords with 18 U.S.C. § 3583(d) and constitutional protections." Order No. 23-3106 (D.C. Cir. 2024) (quoting United States v. Burroughs, 613 F.3d 233, 246 (D.C. Cir. 2010)). Having done so, for all the reasons already explained, the Court concludes that it must deny the defendant's motion to stay, as he is unlikely to succeed on the merits, and the computer monitoring restriction accordingly will remain pending the defendant's appeal.

Accordingly, it is hereby

**ORDERED** that the following condition is imposed upon the defendant:

- Computer Monitoring/Search – To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

It is further

**ORDERED** that the Defendant's Emergency Motion for Stay of Computer Monitoring Pending Appeal, ECF No. 126, is **DENIED**.

**SO ORDERED** this 10th day of July, 2024.

*/s/ Reggie B. Walton*
REGGIE B. WALTON
United States District Court Judge